JENNER & BLOCK LLP
Andrew J. Thomas (SBN CA 159533)
AJThomas@jenner.com
Lauren M. Greene (SBN CA 271397)
LGreene@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone:  213 239 5100
Facsimile:   213 239 5199

Attorneys for Plaintiffs
NBCUniversal Media, LLC,
Universal Television LLC, and Universal
Studios Licensing LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NBCUniversal Media, LLC, a Delaware limited liability company, Universal Television LLC, a New York limited liability company, Universal Studios Licensing LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Jay Kennette Media Group LLC, a Delaware limited liability company; Gooder Labs, LLC, a Delaware limited liability company; and Kenneth Talbert, an individual,<br><br>Defendants. | Case No. 2:22-cv-04541<br><br>**COMPLAINT FOR:**<br><br>**[1] TRADEMARK INFRINGEMENT [15 U.S.C. § 1125(a)(1)(A)]**<br><br>**[2] FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION [15 U.S.C. § 1125(a)(1)(A)]**<br><br>**[3] TRADEMARK DILUTION [15 U.S.C. § 1125]**<br><br>**[4] TRADEMARK CANCELLATION [15 U.S.C. § 1052(d)]**<br><br>**[5] TRADEMARK CANCELLATION [FRAUDULENT REGISTRATION**<br><br>**[6] COMMON LAW TRADEMARK INFRINGEMENT**<br><br>**[7] COMMON LAW UNFAIR COMPETITION (PASSING OFF)**<br><br>**[8] VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br><br>**[9] VIOLATION OF CAL. BUS. & PROF. CODE § 14247** |

COMPLAINT

Plaintiffs NBCUniversal Media, LLC ("NBCU Media"), Universal Television LLC ("Universal Television"), and Universal Studios Licensing LLC ("Universal Licensing" and, collectively with the other plaintiffs, "NBCU"), bring this action against Defendants Jay Kennette Media Group LLC, Gooder Labs, LLC, and Kenneth Talbert for injunctive relief, damages, and trademark cancellation, and allege as follows:

## NATURE OF THE ACTION

1.    This is a lawsuit to remedy the Defendants' deliberate and willful infringement and dilution of NBCU's intellectual property rights with respect to its critically acclaimed and highly popular and well-known television series *The Office*.

2.    Defendants have intentionally and fraudulently registered NBCU's famous common law trademark for DUNDER MIFFLIN, the name of the fictional workplace that is prominently featured in *The Office*, with the United States Patent and Trademark Office ("USPTO").  One effect of this fraudulent registration has been to prevent NBCU from obtaining a valid registration for its DUNDER MIFFLIN mark.

3.    NBCU is informed and believes, and on that basis alleges, that Defendants also have advertised and sold merchandise featuring replicas of NBCU's DUNDER MIFFLIN marks throughout the United States, including in California. In addition, Defendants have purposely interfered with NBCU's exploitation of its DUNDER MIFFLIN marks by sending takedown notices to NBCU's licensees who were selling authorized apparel and other merchandise bearing the DUNDER MIFFLIN mark nationwide on eBay and Amazon, including at least one authorized retailer based in California.

4.    Most recently, Defendants directed communications to NBCU's counsel in California threatening to pursue legal action and demanding that NBCU pay a substantial sum to Defendants for a transfer to NBCU of their fraudulent registration of NBCU's own common law DUNDER MIFFLIN mark.  Defendants

COMPLAINT

also demanded that NBCU grant them substantive rights in NBCU's DUNDER MIFFLIN mark to which they were not entitled.

5. Based on Defendants' conduct, through this action NBCU seeks relief from Defendants' trademark infringement and false designation of origin of NBCU's DUNDER MIFFLIN trademarks. NBCU also seeks cancellation of Defendants' fraudulently procured trademark Registration No. 5,235,217 for DUNDER MIFFLIN in International Class 25, and requests that Defendants' pending applications (Serial Nos. 97-096,825 and 97-096,853) to register DUNDER MIFFLIN in International Classes 21 and 16, respectively, be deemed abandoned. There is a close and substantial nexus between the pending trademark applications and existing DUNDER MIFFLIN registration and this lawsuit, as the Court will be required to determine issues relating to registrability of the mark.

## JURISDICTION AND VENUE

6. This is a civil action for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and violations of state statutory and common law.

7. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that it involves an action arising under the federal Lanham Act. This Court has supplemental jurisdiction over the state law claims pursuant to 17 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant Jay Kennette Media Group LLC ("JKM") and Defendant Gooder Labs, LLC ("Gooder") because this action arises out of conduct by these defendants that has been expressly aimed at and regularly taking place in the State of California. This conduct includes, but is not limited to, falsely registering NBCU's trademark as their own, demanding that NBCU pay Defendants to obtain Defendants' registration for NBCU's own

2

trademark, demanding that NBCU grant Defendants rights to use NBCU's DUNDER MIFFLIN mark, sending takedown requests against NBCU's licensees on eBay and Amazon, including at least one retailer based in California, threatening to further interfere with NBCU's contracts relating to its exploitation of its trademark in California, and threatening to initiate litigation against NBCU.

9.     NBCU is informed and believes, and on that basis alleges, that JKM and Gooder's conduct aimed at and regularly taking place in the State of California also includes, but is not limited to, targeting and soliciting sales of their infringing merchandise from California residents by operating online stores that offer shipping to California, selling infringing merchandise in the State of California through their online stores and through Amazon.com, and otherwise infringing NBCU's trademarks in the State of California. The infringing merchandise sold by Defendants is confusingly similar to and in direct competition with authorized merchandise sold by NBCU and its licensees throughout the United States, including in California.

10.     Through their actions, Defendants have knowingly and deliberately targeted and caused injury to the intellectual property rights of NBCU, which Defendants know to be based in California, and they have knowingly and deliberately caused injury to the reputation and goodwill of NBCU among consumers in California.

11.     This Court also has personal jurisdiction over Defendant Kenneth Talbert. NBCU is informed and believes, and on that basis alleges, that Mr. Talbert, as President and Chief of Executive Officer of both JKM and Gooder, directs and controls the activities of both organizations, including their substantial and repeated contacts with the State of California described above. Among other things, Mr. Talbert knowingly directed Gooder and JKM to register and apply for registration for a mark he knows is associated with the NBCU television series *The Office* and thus belongs to NBCU and not to Gooder or JKM. Mr. Talbert also directed Gooder

COMPLAINT

and JKM to submit takedown requests to NBCU's licensees selling authorized merchandise on eBay and Amazon bearing the DUNDER MIFFLIN mark.  Mr. Talbert also knowingly directs and/or has directed JKM and Gooder to offer infringing merchandise for sale and shipping to California through its websites and thereby has deliberately caused injury to the intellectual property rights, reputation, and goodwill of NBCU in California.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims have occurred in this district.

## THE PARTIES

13.    Plaintiff NBCU Media is a Delaware limited liability company with its principal place of business in Universal City, California.  NBCU Media, through its wholly-owned affiliates, is principally engaged in the business of entertainment and media production, distribution, and marketing.

14.    Plaintiff Universal Television is a New York limited liability company with its principal place of business in Universal City, California.  Universal Television is principally engaged in the business of television production for broadcast, cable and streaming platforms.  Universal Television is a wholly owned subsidiary of NBCU Media.

15.    Plaintiff Universal Licensing is a Delaware limited liability company with its principal place of business in Universal City, California.  Universal Licensing is principally engaged in the business of licensing and exploiting merchandising, video game and other ancillary rights for intellectual property controlled by NBCU Media and its affiliates.  Universal Licensing is a wholly owned subsidiary of NBCU Media.

16.    NBCU is an internationally known television and entertainment studio, which produces and distributes television series, feature films, and other entertainment media in the United States and around the world.  NBCU owns the exclusive rights to distribute the U.S. version of the television series *The Office* in

COMPLAINT

the United States and around the world. NBCU also has created, distributed, and owns intellectual property interests in *The Office* television series, including copyrights in the series episodes and common law trademark rights in the fictional companies, characters, locations, and other elements depicted in the series.

17.   NBCU is informed and believes, and on that basis alleges, that Defendant Gooder Labs, LLC is a Delaware limited liability company, with its principal place of business at 1348 Milligan Highway, Johnson City, Tennessee. NBCU is further informed and believes, and on that basis alleges, that Gooder Labs sometimes does business under the names "Gooder Goods" and/or "The Goozler."

18.   NBCU is informed and believes, and on that basis alleges, that Defendant Jay Kennette Media LLC is a Delaware limited liability company, with its principal place of business at 16192 Coastal Highway, Lewes, Delaware.

19.   NBCU is informed and believes, and on that basis alleges, that Defendant Kenneth Talbert is an individual residing in Tennessee.

20.   NBCU is informed and believes, and on that basis alleges, that Kenneth Talbert owns and controls both Gooder and JKM, acting as the President and Chief Executive Officer of both entities. Kenneth Talbert manages, supervises, directly participates in, and is the moving force behind all of Gooder and JKM's operations determining which marks to seek registration for, and making all decisions regarding Gooder and JKM's merchandising. Kenneth Talbert is the key decision maker of Gooder and JKM and has managed, supervised, and directly participated in the specific infringing conduct alleged in Paragraphs 45 through 68 herein. Absent the express approval and direct participation of Kenneth Talbert, no other officer, director, or employee of Gooder or JKM has the authority to choose the marks for which to seek registration, offer new merchandise for sale, or make significant changes to the registrations, merchandise offerings, or other business activities.

21.   NBCU is further informed and believes, and on that basis further alleges, that each Defendant named herein was at all times mentioned in this

5
COMPLAINT

complaint an agent of the other Defendants, and in doing the things alleged in this complaint was acting in concert with and as the agent of the other Defendants.

## FACTUAL ALLEGATIONS

### I.      NBCU's DUNDER MIFFLIN Marks

22.     The television series *The Office* is one of the most iconic and recognizable programs in television history.  The U.K. version of the series starred comedian Ricky Gervais and was created by Gervais along with writer/director Stephen Merchant.  It aired from 2001 to 2003.

23.     NBCU obtained rights to the show format from Gervais and Merchant and created a U.S. version of *The Office* , starring Steve Carell, which began airing in 2005.  Distribution and merchandising rights relating to the U.S. version of *The Office* are owned exclusively by NBCU.  (Unless otherwise indicated, as used herein "*The Office*" shall refer to the U.S. version of the series produced and distributed by NBCU.)

24.     During its nine-season run on NBC television, from March 24, 2005, to May 16, 2013, *The Office* was a critical hit.  It ranked as NBC's highest rated scripted series during its run.  It received 42 Primetime Emmy Award nominations, with 5 wins.  It also won a Peabody Award in 2006, two Screen Actors Guild Awards in 2006 and 2007, a Golden Globe for Carell's performance in 2006, and a Primetime Emmy Award for Outstanding Comedy Series in 2006.  The *Washington Post* has called *The Office* a "pop culture behemoth."

25.     In addition to being a critical success, *The Office* also was a ratings hit for NBC.  As reported in *The Hollywood Reporter*, its six-episode first season averaged 5.4 million viewers per episode.  The ratings increased substantially in the show's second and third seasons, which ran from 2005 to 2007, averaging 8.0 and 8.3 million viewers per episode, respectively.  Since its release, *The Office* has been distributed continuously on various television networks and streaming platforms worldwide.

COMPLAINT

26.     *The Office* depicts the everyday work lives of office employees in the Scranton, Pennsylvania branch of the fictional Dunder Mifflin Paper Company, which is prominently depicted in all 201 episodes of the show.  According to *The Office* canon, the Dunder Mifflin name is derived from the company's fictional founders Robert Dunder and Robert Mifflin.  While *The Office* was adapted from a television series in the U.K., the fictional Dunder Mifflin Paper Company does not appear in the U.K. version.  Accordingly, the common law trademark rights in "DUNDER MIFFLIN" that have accrued in connection with NBCU's series *The Office* belong exclusively to NBCU and its affiliated companies.

27.     The fictional Dunder Mifflin Paper Company was a focal point of the series, and both the word mark DUNDER MIFFLIN and the stylized "DUNDER MIFFLIN INC, PAPER COMPANY" logo (collectively the "DM MARKS") were prominently featured in the show's episodes.  NBCU's stylized mark, shown below, includes the words "Dunder Mifflin Inc, Paper Company" in a signature font, with the words "Dunder Mifflin" in large typeface, the "Inc" aspect of the logo sideways next to the word "Mifflin" and the words "paper company" in a smaller font below the word "Mifflin," as shown below:



28.     The Dunder Mifflin name and stylized logo are recurring features of the sets, props, and wardrobe used in the show and appear in every episode of *The Office* as illustrated below:

| Image | Season And Episode |
|---|---|
|  | Season 1<br>• Episode 3<br>*"Health Care"* |
|  | Season 1<br>• Episode 5<br>*"Basketball"* |
|  | Season 2<br>• Episode 9<br>*"E-Mail Surveillance"* |
|  | Season 2<br>• Episode 13<br>*"The Secret"* |
|  | Season 2<br>• Episode 20<br>*"Drug Testing"* |

8
COMPLAINT

| Image | Season And Episode |
|---|---|
|  | Season 3<br>• Episode 7<br>*"Branch Closing"* |
|  | Season 3<br>• Episode 13<br>*"Career Of Salesmen"* |
|  | Season 3<br>• Episode 20<br>*"Safety Training"* |
|  | Season 4<br>• Episode 5<br>*"Launch Party – Part 1"* |
|  | Season 4<br>• Episode 9<br>*"Regional Advertising"* |

9
COMPLAINT

| Image | Season And Episode |
|---|---|
|  | |
| | Season 5<br>• Episode 1<br>*"Slimming Contest"* |
| | Season 5<br>• Episode 12<br>*"The Duel"* |
| | Season 5<br>• Episode 13<br>*"The Role Of The Prince Family"* |
| | Season 5<br>• Episode 14/15<br>*"Tension Release"* |

| Image | Season And Episode |
|---|---|
|  | Season 5<br>• Episode 28<br>*"Company Picnic"* |
|  | Season 6<br>• Episode 8<br>*"Koi Pond"* |
|  | Season 6<br>• Episode 10<br>*"Murder"* |
|  | Season 6<br>• Episode 11<br>*"The Shareholders' Meeting"* |
|  | Season 6<br>• Episode 14<br>*"The Banker"* |

11

| Image | Season And Episode |
|---|---|
|  | Season 7<br>• Episode 2<br>*"The Therapy"* |
|  | Season 7<br>• Episode 3<br>*"Andy's Play"* |
|  | Season 7<br>• Episode 13<br>*"Ultimatum"* |
|  | Season 8<br>• Episode 6<br>*"Doomsday"* |
|  | Season 8<br>• Episode 7<br>*"Pam's Replacement"* |
|  | Season 8<br>• Episode 11<br>*"The Quiz Show"* |

12
COMPLAINT

1

| Image | Season And Episode |
|---|---|
|  | Season 9<br>• Episode 14<br>*"The Office Bus"* |
| | Season 9<br>• Episode 6<br>*"The Boat"* |
| | Season 9<br>• Episode 9<br>*"Dwight Christmas"* |

29.    The widespread success of NBCU's *The Office* created and cultivated a devoted fan following that endures and thrives to this day, nearly a decade after the series ended.  The official *The Office* Facebook page, maintained by NBCU, has over 9.5 million followers and "likes" to date, while its Twitter feed has over 1.3 million followers.  Additionally, NBCU's YouTube page for *The Office* has 2.84 million subscribers and over 2.2 billion video views.

30.    The popularity of *The Office* has created an enormous demand for products, services, and themed experiences related to the series.  NBCU has responded to this demand by creating consumer products and by licensing other entities to do the same.  Indeed, shortly after the series began airing, NBCU began selling merchandise featuring the fictional "DUNDER MIFFLIN" brand.  By at least

13
COMPLAINT

November 2006, NBCU was selling coffee mugs, hats and other apparel featuring the DUNDER MIFFLIN mark.

31.     By January 2007, NBCU was selling *The Office* and DUNDER MIFFLIN merchandise in its physical store at 30 Rockefeller Center in New York City and online at nbcuniversalstore.com.  The merchandise sold included t-shirts, wall calendars, hats, and mugs featuring the DM MARKS.

32.     Continuously since 2006, NBCU has engaged in numerous, varied, and ever-expanding uses in commerce of its well-known and popular intellectual property relating to *The Office*, including the DM MARKS.  In 2007, for example, NBCU created a website for the fictional Dunder Mifflin Paper Company where site visitors could learn about the company, browse products, view job postings, and contact the company.  The website prominently featured the DM MARKS.

33.     In addition, NBCU and its licensees have offered *The Office* themed merchandise bearing the DM MARKS for sale on the NBCU website and third-party websites such as Amazon and eBay, including clothing, robes, hats, beanies, mugs, wine tumblers, glassware, water bottles, blankets, phone cases, mouse pads, masks, ornaments, holiday stockings, lanyards, stickers, posters, backpacks, and tote bags.

34.     In 2011, NBCU licensed the company Quill.com to produce and distribute paper featuring the DUNDER MIFFLIN branding and eventually expanded the DUNDER MIFFLIN and *The Office* branded line to include Sharpies, self-stick notes, facial tissue, coffee cups, storage boxes, and legal pads.

35.     Demand for *The Office* themed products, services, and experiences did not end when the show ended in 2013.  Recently, *The Office* has gained a new following in the "Gen Z" generation who generally were not old enough to watch the show when it originally aired.  On April 26, 2019, Vanity Fair published an article describing *The Office*'s new-found popularity with Gen Z viewers.  Roughly a year and a half later, on August 3, 2021, Yahoo's PureWow published an article

discussing *The Office*'s popularity with Gen Z viewers.  This new demographic has helped *The Office* remain a pop culture icon long after its nine-season run ended.

36.    In or around January 2021, NBCU began streaming all episodes of *The Office* on its streaming platform Peacock.  Prior to that time, *The Office* streamed exclusively on Netflix and reportedly was the platform's most watched piece of overall content.  As a result, the series' relocation from Netflix to Peacock was a significant news story covered on major news outlets, several of which credited *The Office*'s move to Peacock for Peacock's rapid increase in subscribers from roughly 26 million to 33 million.

37.    In connection with *The Office*'s January 2021 move to Peacock, NBCU distributed promotional materials which exploited the DM MARKS, as shown in the images below:



COMPLAINT

1
2
3
4
5
6
7
8
9
10



11   38.   As part of the promotion, Peacock launched a Dunder Mifflin
12   Employee Simulator and interactive webpage which virtually transported fans of the
13   show into a Dunder Mifflin desktop computer.   The dundermifflin.com website,
14   which operated from January 1, 2021 through July 31, 2021, and is pictured below,
15   enabled fans to click on folders and icons to gain access to behind-the-scenes photos,
16   clips, and episodes of the series and experience being an employee at the famous
17   Dunder Mifflin company.

18
19
20
21
22
23
24
25
26
27
28



16
COMPLAINT

39.    On Peacock, NBCU continues to exploit the DM MARKS in unique ways, as shown in the images below:





40.    In 2021, thanks to the ongoing popularity of *The Office*, NBCU and its affiliates also began offering *The Office* Experience, an immersive experience where fans can explore various locations in the show.  *The Office* Experience was presented in Chicago from October 2021 through March 2022.  It will open in Washington, D.C. in July 2022 and will remain there through January 2023.  This experience, of course, features *The Office*'s most iconic location—the offices of the fictional company Dunder Mifflin.  *The Office* Experience also includes a retail store that sells merchandise bearing the DM MARKS including clothing, masks, and water bottles.

41.    Additionally, in January 2022, NBCU and its affiliates launched a *The Office* themed mobile game in the United States.  A substantial amount of the game

play takes place in the offices of the fictional Dunder Mifflin company, and the DM MARKS appears throughout the game.

42.     These are just some of the many uses NBCU has made of the DM MARKS throughout the years.  Through these uses, NBCU has established strong, nationwide common law rights in the unregistered word mark DUNDER MIFFLIN and in its stylized "DUNDER MIFFLIN INC, PAPER COMPANY" logo.  NBCU's rights predate any use in commerce by Defendants of the DUNDER MIFFLIN mark.

43.     Specifically, the DM MARKS are arbitrary coined terms that are inherently distinctive trademarks and symbols of NBCU and its *The Office* franchise. They also have acquired distinctiveness as a result of years of continuous use by NBCU from March 2005 to present in its well-known and beloved *The Office* television series, DVDs, video games, clothing, toys, collectibles, and other merchandise items related to *The Office*, all of which have been extensively advertised and promoted nationwide by NBCU and its licensees and have enjoyed substantial nationwide sales.

44.     The DM MARKS also are famous nationwide, and became famous before any use in commerce by Defendants, as a result of years of continuous use by NBCU in its well-known and beloved *The Office* television series, and in connection with DVDs, video games, clothing, toys, collectibles, and other merchandise items related to *The Office*, all of which have been extensively advertised and promoted nationwide by NBCU and its licensees, have enjoyed substantial nationwide sales, and have generated extensive press coverage and public awareness, such that the DM MARKS are widely recognized by the general consuming public of the United States as a designation of source as to the goods and services of NBCU.

II.     **Defendants' Pattern and Practice of Trademark Squatting**

45.     NBCU is informed and believes, and on that basis alleges, that Defendants Gooder, JKM, and Kenneth Talbert have built a business based on registering trademarks belonging to others in order either to sell them back to their

rightful owners or to profit from consumer confusion by selling branded merchandise that consumers inevitably will associate with a popular entertainment property such as a television show, movie, or videogame that has no connection whatsoever to Defendants. Indeed, Defendants have registered, or attempted to register, more than 20 marks derived from the entertainment properties of others.

46. For example, JKM owns trademark registrations for HILLMAN COLLEGE (the fictional all-black college depicted in *The Cosby Show*), TREE HILL RAVENS (the fictional basketball team from the series *One Tree Hill*), AVERAGE JOE'S (one of the fictional gyms in *Dodgeball*), DILLON FOOTBALL (a reference to the fictional Dillon High School team from *Friday Night Lights*), and NOSTROMO (the fictional spaceship in *Alien*), and it applied to register TYRELL CORPORATION (the fictional replicant-manufacturer in *Blade Runner*).

47. NBCU is informed and believes, and on that basis alleges, that the chart below details some of JKM and Gooder's registrations and applications in pursuit of this business model, the entertainment property to which each registration or application relates, and the owner of each such property:

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| DILLON FOOTBALL | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *Friday Night Lights* Universal Television TV |

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| DIPPER'S PINE | Registered | 25 | (Int. Cl. 25) hoodies; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; graphic t-shirts | *Gravity Falls* Disney TV |
| DUNDER MIFFLIN | Registered | 25 | (Int. Cl. 25) hoodies; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; graphic t-shirts | *The Office* Universal Television TV |
| HILLMAN COLLEGE | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *The Cosby Show* Carsey-Werner Productions TV |
| NO MA'AM | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and | *Married... with Children* 20th Century Fox TV |

20
COMPLAINT

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | caps, athletic uniforms; baseball caps and hats; sweatshirts; t-shirts; hooded sweatshirts | |
| NOSTROMO | Registered | 25 | (Int. Cl. 25) hoodies; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; graphic t-shirts | *Alien* 20th Century Fox Movie |
| SHADOW COMPANY | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; baby bodysuits; hoodies; sweatshirts; shirts and short-sleeved shirts | *Shadow Company* Activision Call of Duty Game |
| SKYNET | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic | *Terminator 2* 20th Century Fox Movie |

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | uniforms; baby bodysuits; hoodies; shirts and short-sleeved shirts; sweatshirts | |
| TREE HILL RAVENS | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *One Tree Hill* Warner Brothers TV |
| AVERAGE JOE'S | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts; short-sleeved or long-sleeved t-shirts | *Dodgeball: A True Underdog Story* 20th Century Fox Movie |
| HARTFORD WHALERS | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, | Former NHL Hockey Team (predecessor of |

COMPLAINT

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | footwear, hats and caps, athletic uniforms; hooded sweatshirts; t-shirts; baseball caps and hats | the current Carolina Hurricanes) |
| TYRELL CORPORATION | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *Blade Runner* Warner Brothers Movie |

48.     Several of these applications were filed in 2016, and several on the same days, evidencing a clear strategy to squat on trademarks associated with multiple different popular entertainment properties that Defendants do not own. NBCU is informed and believes, and on that basis alleges, that Defendants have registered these various marks in an attempt to squat on the marks in order either to eventually extract a fee from the actual rightsholder and/or to sell merchandise that consumers will erroneously assume to be associated with the relevant entertainment property.

49.     In 2019, for example, JKM's website, jaykennette.com, displayed images of the various trademarks it claimed to own, many of which directly referenced the entertainment property from which they were lifted:



50.   NBCU is informed and believes, and on that basis alleges, that Defendants have registered these marks with the intent to unfairly compete against the actual rightsholders, to trade upon their reputation and goodwill, and/or to sell back to them registrations for marks in which they already own common law rights.

**III.   Defendants' Infringement of The DM MARKS**

51.   Subsequent to the adoption and use by NBCU of its *The Office* intellectual property, and without any authorization or permission from NBCU, Defendants began using the DM MARKS to market and sell the same kinds of merchandise as NBCU and its licensees.

52.   On or around June 2016, Gooder filed Application Serial No. 87-076,381 with the USPTO to register DUNDER MIFFLIN in Class 25 for use in connection with "Hoodies; Athletic apparel, namely, shirts, pants, jackets, footwear, hat and caps, athletic uniforms; Graphic T-shirts."  The application claimed a first use in commerce date of January 9, 2007, and was signed by Defendant Talbert, who was identified as the President/CEO of Gooder Labs.

53.   NBCU's use of the DM MARKS predates any actual or claimed use of DUNDER MIFFLIN by Defendants.  NBCU began using the DM MARKS in March 2005 when *The Office* began airing on NBC television, and NBCU was selling

24
COMPLAINT

1  merchandise bearing the DM MARKS by at least November 2006.  This is well
2  before Gooder's claimed date of first use in commerce.

3      54.    Moreover, the specimen Gooder submitted with its application
4  appeared to be digitally altered and did not show the mark being used in commerce.
5  Shown below, Gooder submitted a specimen consisting of what appeared to be a
6  plain white t-shirt with a neck tag bearing the words DUNDER MIFFLIN in blue
7  using the same font and layout as NBCU's DM MARKS.



55.    In or around February 2017, the USPTO rejected this specimen on the
ground that it "appears to consist of a digitally altered image or a mock-up of the
intended depiction of the mark on the goods or their packaging."

56.    In or around March 2017, Gooder submitted a new specimen, shown
below, which consisted of a blue t-shirt with the words "Dunder Mifflin Paper
Company, Inc." in white, arranged in precisely the same manner as depicted in the
DM MARKS.

25
COMPLAINT

1
2
3
4
5
6
7
8
9
10



11   57.   Once again, this specimen appeared to be a mock-up and does not show
12  the shirt being advertised or offered for sale.  Following publication in April 2017,
13  the application was granted, and the registration issued on July 4, 2017 as
14  Registration Number 5,235,217.

15   58.   On or around January 14, 2017, Gooder assigned its trademark
16  registrations and applications, including the then-pending application for DUNDER
17  MIFFLIN, to JKM.  Notably, the consideration for the transfer of twelve marks from
18  Gooder to JKM was $0.00.  Kenneth Talbert signed the assignment agreement on
19  behalf of both Gooder and JKM as the CEO of both companies.

20   59.   In or around October 2021, JKM filed applications with the USPTO to
21  register DUNDER MIFFLIN as a mark in International Classes 21 and 16 for,
22  respectively, "cups, plates, coffee mugs" etc. and for "envelopes; copy paper;
23  notebook covers; notebooks;" and other office products.  Those applications are
24  currently pending with serial numbers 97-096,825 and 97-096,853 respectively.

25   60.   JKM submitted the following specimens with these applications:

26
27
28

COMPLAINT

1
2
3
4
5
6
7
8

 

9    61.    Again, these specimens included "Dunder Mifflin" arranged in

10   precisely the same manner as depicted in the DM MARKS and *The Office* television

11   series.  Additionally, neither specimen shows the goods being advertised or offered

12   for sale in commerce, and when examined, both appear to have digital alterations.

13   62.    In addition to registering NBCU's DUNDER MIFFLIN mark with the

14   USPTO, Defendants have offered and sold merchandise using the DM MARKS on

15   Amazon.com and Defendants' website www.gooderdeals.com.  NBCU is informed

16   and believes, and on that basis alleges, that through these websites, Defendants sold

17   merchandise to, and specifically targeted, consumers located in the State of

18   California, the largest market in the United States.

19   63.    From approximately 2015 to at least 2019, Defendants sold a variety of

20   unauthorized merchandise bearing the DM MARKS, including without limitation

21   shirts, hoodies, and hats.  As shown below, the merchandise offered by Defendants

22   using the DM MARKS is substantially indistinguishable from NBCU's use in

23   commerce including slavish copies of the identical logo presentation and constitutes

24   trademark infringement and false designation of origin:

25
26
27
28

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 

**Plaintiffs' Use**          **Defendants' Use**

 

**Plaintiffs' Use**          **Defendants' Use**

 

**Plaintiffs' Use**          **Defendants' Use**

64.    Defendants' use of exact replicas of the DM MARKS makes clear that
Defendants are attempting to pass off their products as those of NBCU and to trade

upon NBCU's and *The Office*'s extensive fame, unparalleled goodwill, and devoted consumer base.

65.    In addition to registering and selling merchandise bearing NBCU's DM MARKS, Defendants have specifically targeted NBCU in order effectively to hold the DM MARKS hostage.  In or around 2019, Defendants attempted to interfere with NBCU's contractual relationships in California by sending takedown demands through eBay and Amazon to NBCU's licensees.  eBay is headquartered in and has its principal place of business in San Jose, California.  Defendants' takedown notices falsely claimed that NBCU's licensees were infringing Defendants' trademarks by selling merchandise bearing the DM MARKS that related to *The Office* television series, and thereby constituted a deliberate and knowing attempt to interfere with NBCU's contractual relationships with its licensees.  One of these takedown notices targeted the activities of Smart Print, a California-based retailer selling merchandise bearing the DM MARKS on behalf of NBCU licensee T-Line.

66.    On December 8, 2021, NBCU sent JKM a cease-and-desist letter demanding that JKM cease infringing NBCU's DM MARKS.  JKM refused to stop its infringement.    Instead, Defendants communicated to NBCU's counsel in California a demand that NBCU pay a substantial sum for JKM to assign its registration for DUNDER MIFFLIN to NBCU.    In that same communication, Defendants threatened that they would seek to have all of NBCU's and its licensees' listings for merchandise bearing the DM MARKS taken down from all Internet distribution platforms, including Amazon.  Defendants also threatened to sue NBCU for trademark infringement.  Furthermore, Defendants demanded that NBCU enter into a consent agreement with them that would have given Defendants substantive rights in the DM MARKS to which Defendants are not entitled.

67.    Defendants' practice of seeking fraudulent trademark registrations to which they are not entitled has hindered NBCU's ability to protect and augment its own common law rights by obtaining valid federal trademark registrations.  On or

29
COMPLAINT

around November 20, 2020, Universal Television sought to register DUNDER MIFFLIN as a standard character mark in International Class 41, Serial No. 90-333,640, for "entertainment services in the field of comedy accessible via mobile and global communication networks." As detailed above, NBCU is clearly entitled to such a registration based on its creation and continuous usage of the DM MARKS. However, in office actions, the USPTO rejected the applications and cited JKM's registered trademark for DUNDER MIFFLIN, discussed above, as a basis for rejection. On or around June 8, 2022, the USPTO issued a final office action rejecting Universal Television's application based on a purported likelihood of confusion with JKM's registered trademark.

68.    Concurrently with the filing of this litigation, NBCU is filing with the Trademark Trial and Appeal Board of the USPTO a petition to cancel JKM's Registration No. 5,235,217 and intends to request that that proceeding be suspended pending the resolution of NBCU's claims in this case.

## FIRST CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a)(1)(A)

69.    NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

70.    NBCU and its affiliates have the exclusive right at common law to use its DM MARKS in the United States in commerce to advertise and sell various goods and services including merchandise, products, services, and themed experiences related to the television series *The Office*.

71.    NBCU's exclusive rights in and to its DM MARKS predate any rights that Defendants could establish in any mark that consists of "Dunder Mifflin" in whole or in part.

72.    NBCU's DM MARKS are arbitrary coined terms that are inherently distinctive when used in connection with NBCU's goods and services.

73.     NBCU's DM MARKS identify NBCU as the exclusive source of merchandise, services, and experiences offered using the DM MARKS. Accordingly, NBCU's DM MARKS also have acquired distinctiveness through the development of secondary meaning.

74.     As set forth above, Defendants have been and are reproducing NBCU's DM MARKS in United States commerce by offering for sale, and selling, merchandising using the DM MARKS.  NBCU has not consented to Defendants' use of NBCU's DM MARKS for any purpose.

75.     As alleged herein, and as shown in the examples above, Defendants' use of NBCU's DM MARKS in United States commerce, on and in connection with merchandise, is likely to cause confusion, cause mistake, and/or cause deception about whether NBCU is the source of Defendants' merchandise.

76.     NBCU is informed and believes, and on that basis alleges, that Defendants' conduct, as alleged herein, is in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of NBCU's DM MARKS and its extraordinarily popular television series *The Office*.

77.     Defendants' acts and conduct constitute trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A).

78.     Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

79.     Defendants' willful and deliberate acts of trademark infringement and unfair competition make this an exceptional case such that NBCU is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

80.     Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and

COMPLAINT

reputation, and pecuniary damages to NBCU and consequently have caused, and will continue to cause, a substantial impact on United States commerce. Such irreparable injury will continue unless and until Defendants are enjoined from further violation of NBCU's rights.

<u>**SECOND CLAIM FOR RELIEF**</u>

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION – 15 U.S.C. § 1125(a)(1)(A)**

81.    NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

82.    NBCU owns the unregistered DM MARKS for use in United States commerce in connection with a wide variety of goods and services including merchandise, products, services, and themed experiences related to the television series *The Office*.

83.    The DM MARKS and have been used extensively by NBCU and its licensees in commerce, are non-functional, are inherently distinctive, have acquired substantial secondary meaning in the marketplace, and have become associated in the public's mind with NBCU's products, services, experiences and its extraordinarily popular television series *The Office*.

84.    As described above in detail, the Defendants are using in commerce, without NBCU's authorization or consent and in a confusing and misleading manner, the DM MARKS and/or confusingly similar variations thereof to advertise, market, and sell their own infringing merchandise. This conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

85.    NBCU is informed and believes, and on that basis alleges, that Defendants had actual knowledge of NBCU's ownership and prior use of the DM MARKS and related merchandise prior to commencing the conduct alleged herein.

86.     NBCU is informed and believes, and on that basis alleges, that Defendants have engaged in the conduct complained of herein with the intent to compete unfairly against NBCU, to trade upon NBCU's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' infringing merchandise is associated with, sponsored by, or approved by NBCU, when it is not.

87.     As a result of the acts complained of herein, Defendants have caused injury to NBCU's business reputation and to the reputation and goodwill surrounding the DM MARKS, as well as a strong likelihood of consumer confusion as to the source of origin or relationship of NBCU's and Defendants' goods, and have otherwise competed unfairly with NBCU.

88.     Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

89.     Defendants' willful and deliberate acts of trademark infringement and unfair competition make this an exceptional case such that NBCU is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

90.     Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU and consequently have caused, and will continue to cause, a substantial impact on United States commerce.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

## THIRD CLAIM FOR RELIEF

## TRADEMARK DILUTION – 15 U.S.C. § 1125(c)

91.     NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

92.   By virtue of the enormous popularity of the DM MARKS, and the massive success, advertising and promotion of *The Office* television series, the goods, services, and experiences offered under the DM MARKS have been consumed, viewed, accessed, and purchased by millions of people.  Accordingly, as alleged herein, these marks are famous among consumers nationwide and became famous well before their use in commerce by Defendants.

93.   Defendants' use of the famous DM MARKS in their infringing merchandise has been for Defendants' own commercial gain.

94.   Defendants' use of the famous DM MARKS in their infringing merchandise will cause, or will likely cause, dilution of the distinctive quality of NBCU's DM MARKS through blurring and/or tarnishment in violation of 15 U.S.C. § 1125(c), thereby impairing the capability of these marks of identifying and distinguishing NBCU's, or its licensees', goods and services.

95.   Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

96.   Defendants' willful and deliberate acts of trademark dilution make this an exceptional case such that NBCU is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

97.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

COMPLAINT

## FOURTH CLAIM FOR RELIEF

## CANCELLATION OF TRADEMARK REGISTRATION NO. 5,235,217

## 15 U.S.C. §§ 1052(d), 1064

98.     NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

99.     Since at least March 2005, well before the first use, filing and registration dates of JKM's Registration No. 5,235,217 and its applications for registration denoted by Serial Nos. 97-096,825 and 97-096,853, NBCU has continuously used its famous DM MARKS in commerce in connection with products, services, and themed experiences related to NBCU's television series *The Office* and therefore enjoys priority of use in commerce.  By virtue of NBCU's continuous and substantial use of its DM MARKS, the DM MARKS have become a strong identifier of NBCU and its products and services and distinguish NBCU's products and services from those of others.  NBCU has built up significant and valuable goodwill and fame in its DM MARKS.  NBCU has a valid protectible common law trademark interest in its DM MARKS.

100.    NBCU will be damaged by the continued registration of JKM's Registration No. 5,235,217 and by Application Serial Nos. 97-096,825 and 97-096,853, in that the mark shown in the registration and potential registrations are confusingly similar to NBCU's famous DM MARKS.  Potential purchasers, upon seeing Defendants' mark shown in the registration and applications, are likely to mistakenly believe that such marks and goods identified in the registration and applications originate with or are connected or associated with, or sponsored, licensed or approved by, NBCU.  Thus, the registration and applications' use of the mark shown therein in connection with the goods identified therein are likely to cause confusion, or to cause mistake, or to deceive, all within the meaning of 15 U.S.C. § 1052(d).

101.   In view of NBCU's prior rights in the DM MARKS, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and Application Serial Nos. 97-096,825 and 97-096,853.  The registration should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. §§ 1052(d) and 1119.

102.   In addition, by virtue of the enormous popularity of the DM MARKS, and the massive success, advertising and promotion of *The Office* television series, the goods, services, and experiences offered under the DM MARKS have been consumed, viewed, accessed, and purchased by millions of people.  Accordingly, as alleged herein, these marks are famous among consumers nationwide and became famous before any use in commerce by Defendants.

103.   As a result, the Registration and use of the DUNDER MIFFLIN mark by Defendant JKM will cause, or will likely cause, dilution of the distinctive quality of NBCU's DM MARKS through blurring and/or tarnishment in violation of 15 U.S.C. § 1125(c), thereby impairing the capability of these marks of identifying and distinguishing NBCU's, or its licensees', goods and services, with consequent damage to NBCU and the public.

104.   For this separate and additional reason, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and in Application Serial Nos. 97-096,825 and 97-096,853.  The registration should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. §§ 1125(c), 1064, and 1119.

## FIFTH CLAIM FOR RELIEF

## CANCELLATION OF TRADEMARK REGISTRATION NO. 5,235,217– FRAUDULENT REGISTRATION / MISREPRESENTATION OF SOURCE 15 U.S.C. § 1064(3)

105.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

36
COMPLAINT

106. The Lanham Act imposes on trademark applicants the obligations not to knowingly make false, material representations and not to make knowingly inaccurate or knowingly misleading statements.

107. When Defendant JKM applied for Registration No. 5,235,217, and filed Applications Serial Nos. 97-096,825 and 97-096,853, Defendants knowingly and falsely claimed, under penalty of perjury, that JKM was the exclusive owner of the DUNDER MIFFLIN mark, that it was using the mark in connection with goods claimed in the application, and that no other persons had the right to use the mark in commerce.

108. At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that NBCU had prior, superior rights to use the DM MARKS in commerce in connection with apparel, merchandise, entertainment services, and other goods and services related to NBCU's television series *The Office*.

109. At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that that the statements in the applications were false based upon NBCU's widespread, successful, open, notorious, popular, and national use of its DM MARKS from March 2005 to the present on its nationally televised, critically acclaimed television series *The Office* and on related merchandising, services, and experiences bearing the DM MARKS, as well as upon Defendants' submission of specimens in support of registration depicting a purported DUNDER MIFFLIN mark that was in an identical font, stylization, and manner of presentation as NBCU's DM MARKS, and also upon the Defendants' applications for and registrations of numerous other marks uniquely associated with other entertainment properties not owned by Defendants.

110.   Defendants knowingly made these materially fraudulent statements in the applications with the intent to deceive the USPTO and with the intent that the USPTO rely upon them.

111.   The USPTO relied upon the materially false statements made by Defendants in its handling of the application to register the DUNDER MIFFLIN mark and in registering the DUNDER MIFFLIN mark.  But for the materially false allegations, the USPTO would never have issued Registration No. 5,235,217 to Defendant JKM.

112.   Defendants' conduct constitutes fraud on the USPTO.  NBCU has no adequate remedy at law and is being irreparably damaged by the aforesaid registration and pending applications.

113.   In view of Defendants' fraud on the USPTO, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and Application Serial Nos. 97-096,825 and 97-096,853.  The registration should be cancelled, and the applications should be deemed abandoned as authorized under 15 U.S.C. § 1119.

114.   In addition, as alleged above, Defendants have blatantly used the registered DUNDER MIFFLIN mark in a manner calculated to trade on NBCU's and *The Office*'s extensive goodwill, popularity, fame, reputation, and consumer base.  They have deliberately used the DUNDER MIFFLIN mark to pass off their own goods as those of NBCU by using the mark in a manner that is substantially indistinguishable from the highly distinctive and unique font, stylization, and manner of presentation of NBCU's DM MARKS.

115.   As a result, Defendants' use of the DUNDER MIFFLIN mark is a misrepresentation of source plainly designed to create the false impression and cause consumers mistakenly to believe that NBCU is the source of goods sold under Defendants' registered DUNDER MIFFLIN mark, all in violation of 15 U.S.C. § 1064(3).  For this separate and additional reason, Defendant JKM is not entitled to

COMPLAINT

federal registration of the mark shown in Registration No. 5,235,217 and in Application Serial Nos. 97-096,825 and 97-096,853.  The registration should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. § 1119.

### SIXTH CLAIM FOR RELIEF

### COMMON LAW TRADEMARK INFRINGEMENT

116.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

117.   NBCU owns all rights, title, and interest in and to the DM MARKS as alleged herein, including all common law rights in such marks.

118.   Defendants' acts complained of herein constitute trademark infringement in violation of the common law of the State of California.

119.   Defendants intend to continue their willfully infringing acts unless restrained by this Court.

120.   Defendants' conduct has injured NBCU and will continue to cause irreparable injury to NBCU for which NBCU has no adequate remedy at law.  In addition, Defendants are guilty of oppression, fraud, and malice.  Accordingly, NBCU is entitled to an award of punitive and/or exemplary damages pursuant to California Civil Code § 3294(a).

### SEVENTH CLAIM FOR RELIEF

### COMMON LAW UNFAIR COMPETITION (PASSING OFF)

121.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

122.   By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed with NBCU in violation of the common law of the State of California.

123.   The purpose, tendency, and effect of Defendants' use of the DM MARKS, in the manner alleged above, is to enable Defendants to deceive the public by passing off their products as being rendered, sponsored, approved, or otherwise associated with or licensed by NBCU, when in fact they are not.

124.   Defendants' use of the DM MARKS in merchandise offered for sale is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' products.   Said use constitutes infringement of NBCU rights with respect to the DM MARKS.

125.   Defendants' willful acts of unfair competition have caused injury and damage to NBCU in an amount to be determined at trial.

126.   Defendants' willful acts of unfair competition constitute acts of fraud, oppression, and malice.   Accordingly, NBCU is entitled to an award of punitive and/or exemplary damages pursuant to California Civil Code § 3294(a).

127.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU.   Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

## EIGHTH CLAIM FOR RELIEF

## CALIFORNIA STATUTORY UNFAIR COMPETITION

### Cal. Business & Professions Code § 17200, *et seq.*

128.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

129.   By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the public and have unfairly competed in violation of California Business and Professions Code § 17200, *et seq.*

130.   Defendants' aforementioned acts constitute unlawful business practices, which have injured or damaged NBCU including by causing a loss of

40
COMPLAINT

money or property. Among other violations of law, Defendants' aforementioned acts constitute trademark infringement and false designation of origin under 15 U.S.C. § 1125(a) and trademark dilution under 15 U.S.C. § 1125(c).

131. Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU. Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

## NINTH CLAIM FOR RELIEF

## CALIFORNIA STATUTORY TRADEMARK DILUTION

### Cal. Business & Professions Code § 14247, *et seq.*

132. NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 68.

133. By virtue of the enormous popularity and nationwide recognition of the DM MARKS, and the massive advertising and promotion of *The Office*, the DM MARKS are famous among consumers.

134. Defendants' use of these famous marks in commerce in connection with their businesses, products, and services has been for their own commercial gain.

135. Defendants' infringing use of these famous marks dilutes the distinctive quality of and tarnishes the public image of these marks and is likely to cause actual dilution of these marks, thereby impairing the marks' capability of identifying and distinguishing NBCU's or its licensees' goods and services including *The Office* television series and related merchandise.

136. Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

COMPLAINT

137.   Defendants' willful and deliberate acts of trademark dilution have caused, and will continue to cause, irreparable injury, loss of goodwill and reputation, and pecuniary damages.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined by this Court from further violation of NBCU's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, NBCU prays for judgment against Defendants as follows:

A.   For a preliminary and permanent injunction prohibiting Defendants and each of their agents, servants, owners, shareholders, partners, employees, attorneys, assigns, and all others in privity or acting in concert with them from committing further acts of infringement or dilution, including:

1.   Using any trademark, service mark, trade name or domain name that includes or is confusingly similar to the DM MARKS;

2.   Using in any manner any trademark, service mark, trade name, domain name, trade dress, designs, colors, arrangements, or any combination thereof that imitates, resembles, or suggests or is otherwise confusingly similar to the DM MARKS;

3.   Otherwise infringing or diluting NBCU's trademarks, service marks, trade names, or trade dress, unfairly competing with NBCU, or otherwise injuring NBCU's business reputation in any manner;

4.   Using, registering, or reserving any domain name, Twitter name, Facebook page name or other similar domain, or social networking or media name or page that includes the DM MARKS or is confusingly similar thereto;

B.   For an order that Defendants be directed to deliver up for destruction all merchandise, products, images, advertisements, signs, packages, publications,

websites, social networking or media pages, and all other material in their possession or under their control that bear any of the DM MARKS, pursuant to 15 U.S.C. § 1118.

C.     That the Court award NBCU compensatory damages in an amount according to proof, including without limitation actual damages for Defendants' violation of 15 U.S.C. §§ 1125(a) and 1125(c) pursuant to 15 U.S.C. § 1117(a), and award NBCU treble damages under 15 U.S.C. § 1117(a), and other exemplary and/or punitive damages to the extent permitted by law.

D.     That the Court award Defendants' profits derived from their infringing use of the DM MARKS, or any confusingly similar variation thereof, for Defendants' violation of 15 U.S.C. §§ 1125(a) and 1125(c) pursuant to 15 U.S.C. § 1117(a).

E.     For cancellation of JKM's Registration No. 5,235,217 pursuant to 15 U.S.C. § 1119.

F.     For an order that Application Serial Nos. 97-096,825 and 97-096,853 be deemed abandoned pursuant to 15 U.S.C. § 1119

G.     For costs of suit, attorneys' fees, prejudgment interest, and such other and further relief as the Court deems just and proper.


Dated:  July 1, 2022                         JENNER & BLOCK LLP



                                        By:   */s/ Andrew J. Thomas*
                                             Andrew J. Thomas
                                             Lauren M. Greene

                                             Attorneys for Plaintiffs
                                             NBCUniversal Media LLC, Universal
                                             Television LLC, and Universal Studios
                                             Licensing LLC

43
COMPLAINT

## **JURY DEMAND**

Plaintiffs respectfully request a jury trial on all issues so triable.

Dated:  July 1, 2022                    JENNER & BLOCK LLP


By:   */s/ Andrew J. Thomas*
Andrew J. Thomas
Lauren M. Greene

Attorneys for Plaintiffs
NBCUniversal Media LLC, Universal
Television LLC, and Universal Studios
Licensing LLC

44
COMPLAINT