1  JENNER & BLOCK LLP
   Andrew J. Thomas (SBN CA 159533)
2  AJThomas@jenner.com
   Lauren M. Greene (SBN CA 271397)
3  LGreene@jenner.com
   515 South Flower Street, Suite 3300
4  Los Angeles, CA 90071-2246
   Telephone: 213 239 5100
5  Facsimile: 213 239 5199

6  Attorneys for Plaintiffs
   NBCUniversal Media, LLC,
7  Universal Television LLC, and Universal
   Studios Licensing LLC

8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  NBCUniversal Media, LLC, a           Case No. 2:22-cv-04541
    Delaware limited liability company,
14  Universal Television LLC, a New      **FIRST AMENDED COMPLAINT FOR:**
    York limited liability company,
15  Universal Studios Licensing LLC, a   **[1] TRADEMARK INFRINGEMENT
    Delaware limited liability company,  [15 U.S.C. § 1125(a)(1)(A)]**

16                    Plaintiffs,        **[2] FALSE DESIGNATION OF ORIGIN
                                         AND UNFAIR COMPETITION [15
17       v.                              U.S.C. § 1125(a)(1)(A)]**

18  Jay Kennette Media Group LLC, a      **[3] TRADEMARK DILUTION
    Delaware limited liability company;  [15 U.S.C. § 1125]**
19  Gooder Labs, LLC, a Delaware limited
    liability company; and Kenneth       **[4] TRADEMARK CANCELLATION
20  Talbert, an individual,              [15 U.S.C. § 1052(d)]**

21                    Defendants.        **[5] TRADEMARK CANCELLATION
                                         [FRAUDULENT REGISTRATION**
22
                                         **[6] COMMON LAW TRADEMARK
23                                       INFRINGEMENT**

24                                       **[7] COMMON LAW UNFAIR
                                         COMPETITION (PASSING OFF)**
25
                                         **[8] VIOLATION OF CAL. BUS. &
26                                       PROF. CODE § 17200**

27                                       **[9] VIOLATION OF CAL. BUS. &
                                         PROF. CODE § 14247**
28

FIRST AMENDED COMPLAINT

Plaintiffs NBCUniversal Media, LLC ("NBCU Media"), Universal Television LLC ("Universal Television"), and Universal Studios Licensing LLC ("Universal Licensing" and, collectively with the other plaintiffs, "NBCU"), bring this action against Defendants Jay Kennette Media Group LLC, Gooder Labs, LLC, and Kenneth Talbert for injunctive relief, damages, and trademark cancellation, and allege as follows:

## NATURE OF THE ACTION

1.      This is a lawsuit to remedy the Defendants' deliberate and willful infringement and dilution of the intellectual property rights of Universal Television and its affiliates NBCU Media and Universal Licensing with respect to the critically acclaimed and highly popular and well-known television series *The Office* and *Friday Night Lights*.

2.      Defendants have intentionally and fraudulently registered Universal Television's famous common law trademark for DUNDER MIFFLIN, the name of the fictional workplace that is prominently featured in *The Office*, with the United States Patent and Trademark Office ("USPTO").  One effect of this fraudulent registration has been to prevent Universal Television from obtaining a valid registration for its DUNDER MIFFLIN mark.  In addition, Defendants have intentionally and fraudulently registered Universal Television's common law trademark for DILLON FOOTBALL, the name of the fictional high school football team prominently featured in the *Friday Night Lights* television series.

3.      NBCU is informed and believes, and on that basis alleges, that Defendants also have advertised and sold merchandise featuring replicas of Universal Television's DUNDER MIFFLIN and DILLON FOOTBALL marks throughout the United States, including in California.  In addition, Defendants have purposely interfered with NBCU's exploitation of Universal Television's DUNDER MIFFLIN marks by sending takedown notices to NBCU's licensees who were selling authorized apparel and other merchandise bearing the DUNDER MIFFLIN

1

FIRST AMENDED COMPLAINT

marks nationwide on eBay, and Amazon, including at least one authorized retailer based in California.

4.     Most recently, Defendants directed communications to NBCU in California, threatening to pursue legal action and demanding that NBCU pay a substantial sum to Defendants for a transfer to NBCU of the Defendants' fraudulent registration of Universal Television's own common law DUNDER MIFFLIN mark. Defendants also demanded that NBCU grant them substantive rights in Universal Television's DUNDER MIFFLIN mark to which they were not entitled.

5.     Based on Defendants' conduct, through this action NBCU seeks relief from Defendants' trademark infringement and false designation of origin of Universal Television's DUNDER MIFFLIN and DILLON FOOTBALL trademarks. NBCU also seeks cancellation of Defendants' fraudulently procured trademark Registration No. 5,235,217 for DUNDER MIFFLIN in International Class 25, and requests that Defendants' pending applications (Serial Nos. 97-096,825 and 97-096,853) to register DUNDER MIFFLIN in International Classes 21 and 16, respectively, be deemed abandoned.  NBCU also seeks cancellation of Defendants' fraudulently procured trademark Registration No. 5,222,658 for DILLON FOOTBALL in International Class 25.  There is a close and substantial nexus between the pending trademark applications, the existing DUNDER MIFFLIN registration, and the existing DILLON FOOTBALL registration, and this lawsuit, as the Court will be required to determine issues relating to registrability of the marks.

## JURISDICTION AND VENUE

6.     This is a civil action for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and violations of state statutory and common law.

FIRST AMENDED COMPLAINT

7.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that it involves an action arising under the federal Lanham Act.  This Court has supplemental jurisdiction over the state law claims pursuant to 17 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendant Jay Kennette Media Group LLC ("JKM") and Defendant Gooder Labs, LLC ("Gooder") because this action arises out of conduct by these defendants that has been expressly aimed at and regularly taking place in the State of California.  JKM and Gooder's conduct aimed at and regularly taking place in the State of California also includes, but is not limited to, targeting and soliciting sales of their infringing merchandise from California residents by operating interactive online stores that offer shipping to California, selling infringing merchandise in the State of California through their online stores and through Walmart.com and Amazon.com, and otherwise infringing NBCU's trademarks in the State of California.  The infringing merchandise sold by Defendants is confusingly similar to and in direct competition with authorized merchandise sold by NBCU and its licensees throughout the United States, including in California.

9.     JKM and Gooder's intentional conduct aimed at the State of California also includes, but is not limited to, falsely registering Universal Television's trademarks as their own, demanding that NBCU pay Defendants to obtain Defendants' registration for Universal Television's own DUNDER MIFFLIN mark, demanding that NBCU grant Defendants rights to use Universal Television's DUNDER MIFFLIN mark, sending takedown requests against NBCU's licensees on eBay and Amazon, including at least one retailer based in California, threatening to further interfere with NBCU's contracts relating to its exploitation of its trademark in California, and threatening to initiate litigation against NBCU.

10.     Through their actions, Defendants have knowingly and deliberately targeted and caused injury to the intellectual property rights of NBCU, which

3
FIRST AMENDED COMPLAINT

Defendants know to be based in California, and they have knowingly and deliberately caused injury to the reputation and goodwill of NBCU among consumers in California.

11.     This Court also has personal jurisdiction over Defendant Kenneth Talbert.  NBCU is informed and believes, and on that basis alleges, that Mr. Talbert, as President and Chief of Executive Officer of both JKM and Gooder, directs and controls the activities of both organizations, including their substantial and repeated contacts with the State of California described above.  Among other things, Mr. Talbert knowingly directed Gooder and JKM to register and apply for registration for a mark he knows is associated with the NBCU television series *The Office* and thus belongs to NBCU and not to Gooder or JKM.  Mr. Talbert also directed Gooder and JKM to submit takedown requests to NBCU's licensees selling authorized merchandise on eBay and Amazon bearing the DUNDER MIFFLIN mark.  Mr. Talbert also knowingly directs and/or has directed JKM and Gooder to offer infringing merchandise for sale and shipping to California through its websites and thereby has deliberately caused injury to the intellectual property rights, reputation, and goodwill of NBCU in California.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims have occurred in this district.

## THE PARTIES

13.     Plaintiff NBCU Media is a Delaware limited liability company with its principal place of business in Universal City, California.  NBCU Media, through its subsidiaries and affiliates, is principally engaged in the business of entertainment and media production, distribution, and marketing.  NBCU Media has a material, concrete, and real commercial interest in the intellectual property rights derived from the television series *The Office* and *Friday Night Lights*.

14.     Plaintiff Universal Television is a New York limited liability company with its principal place of business in Universal City, California.  Universal

4
FIRST AMENDED COMPLAINT

Television is principally engaged in the business of television production for broadcast, cable and streaming platforms.  Universal Television is a wholly owned subsidiary of NBCU Media.  Universal Television is the owner of the common law trademark rights developed and created in *The Office* and *Friday Night Lights*.

15.     Plaintiff Universal Licensing is a Delaware limited liability company with its principal place of business in Universal City, California.   Universal Licensing is principally engaged in the business of licensing and exploiting merchandising, video game and other ancillary rights for intellectual property controlled by NBCU Media and its affiliates including intellectual property rights in *The Office* and *Friday Night Lights*.   Universal Licensing is a wholly owned subsidiary of NBCU Media.  Universal Licensing has a material, concrete, and real commercial interest in the including intellectual property rights in the television series *The Office* and *Friday Night Lights*.

16.     Together with its subsidiaries and affiliates, NBCU is an internationally known television and entertainment studio, which produces and distributes television series, feature films, and other entertainment media in the United States and around the world.  NBCU owns the exclusive rights to distribute the U.S. version of the television series *The Office* in the United States and around the world.  Universal Television owns intellectual property interests in *The Office* television series, including common law trademark rights in the fictional companies, characters, locations, and other elements depicted in the series.  In addition, NBCU owns the exclusive rights to distribute the television series *Friday Night Lights* in the United States and around the world.  Universal Television owns intellectual property interests in the *Friday Night Lights* television series, including common law trademark rights in the fictional companies, characters, locations, and other elements depicted in the series.

17.     NBCU is informed and believes, and on that basis alleges, that Defendant Gooder Labs, LLC is a Delaware limited liability company, with its

5
**FIRST AMENDED COMPLAINT**

principal place of business at 1348 Milligan Highway, Johnson City, Tennessee. NBCU is further informed and believes, and on that basis alleges, that Gooder Labs sometimes does business under the names "Gooder Deals," "Gooder Gifts," "Gooder Goods" and/or "The Goozler."

18.    NBCU is informed and believes, and on that basis alleges, that Defendant Jay Kennette Media LLC is a Delaware limited liability company, with its principal place of business at 16192 Coastal Highway, Lewes, Delaware.

19.    NBCU is informed and believes, and on that basis alleges, that Defendant Kenneth Talbert is an individual residing in Tennessee.

20.    NBCU is informed and believes, and on that basis alleges, that Kenneth Talbert owns and controls both Gooder and JKM, acting as the President and Chief Executive Officer of both entities.  Kenneth Talbert manages, supervises, directly participates in, and is the moving force behind all of Gooder and JKM's operations determining which marks to seek registration for, and making all decisions regarding Gooder and JKM's merchandizing.  Kenneth Talbert is the key decision maker of Gooder and JKM and has managed, supervised, and directly participated in the specific infringing conduct alleged in Paragraphs 61 through 92 herein.  Absent the express approval and direct participation of Kenneth Talbert, no other officer, director, or employee of Gooder or JKM has the authority to choose the marks for which to seek registration, offer new merchandise for sale, or make significant changes to the registrations, merchandise offerings, or other business activities.

21.    NBCU is further informed and believes, and on that basis further alleges, that each Defendant named herein was at all times mentioned in this complaint an agent of the other Defendants, and in doing the things alleged in this complaint was acting in concert with and as the agent of the other Defendants.

6
FIRST AMENDED COMPLAINT

# FACTUAL ALLEGATIONS

## I.     NBCU's DUNDER MIFFLIN Marks

22.    The television series *The Office* is one of the most iconic and recognizable programs in television history.  The U.K. version of the series starred comedian Ricky Gervais and was created by Gervais along with writer/director Stephen Merchant.  It aired from 2001 to 2003.

23.    NBCU obtained rights to the show format from Gervais and Merchant and created a U.S. version of *The Office*, starring Steve Carell, which began airing in 2005.  The show was produced by NBCU, and merchandising rights relating to the U.S. version of *The Office* are owned by Universal Television.  (Unless otherwise indicated, as used herein "*The Office*" shall refer to the U.S. version of the series produced and distributed by NBCU.)  Universal Television licenses rights to *The Office*, including intellectual property rights, to NBCU Media and its affiliates and subsidiaries, including Universal Licensing.

24.    During its nine-season run on NBC television, from March 24, 2005, to May 16, 2013, *The Office* was a critical hit.  It ranked as NBC's highest rated scripted series during its run.  It received 42 Primetime Emmy Award nominations, with 5 wins.  It also won a Peabody Award in 2006, two Screen Actors Guild Awards in 2006 and 2007, a Golden Globe for Carell's performance in 2006, and a Primetime Emmy Award for Outstanding Comedy Series in 2006.  The *Washington Post* has called *The Office* a "pop culture behemoth."

25.    In addition to being a critical success, *The Office* also was a ratings hit for NBC.  As reported in *The Hollywood Reporter*, its six-episode first season averaged 5.4 million viewers per episode.  The ratings increased substantially in the show's second and third seasons, which ran from 2005 to 2007, averaging 8.0 and 8.3 million viewers per episode, respectively.  Since its release, *The Office* has been distributed continuously on various television networks and streaming platforms worldwide.

7
FIRST AMENDED COMPLAINT

26.   *The Office* depicts the everyday work lives of office employees in the Scranton, Pennsylvania branch of the fictional Dunder Mifflin Paper Company, which is prominently depicted in all 201 episodes of the show.  According to *The Office* canon, the Dunder Mifflin name is derived from the company's fictional founders Robert Dunder and Robert Mifflin.  While *The Office* was adapted from a television series in the U.K., the fictional Dunder Mifflin Paper Company does not appear in the U.K. version.  Accordingly, the common law trademark rights in "DUNDER MIFFLIN" that have accrued in connection with NBCU's series *The Office* belong to Universal Television.

27.   The fictional Dunder Mifflin Paper Company was a focal point of the series, and both the word mark DUNDER MIFFLIN and the stylized "DUNDER MIFFLIN INC, PAPER COMPANY" logo (collectively the "DM MARKS") were prominently featured in the show's episodes.  Universal Television's stylized mark, shown below, includes the words "Dunder Mifflin Inc, Paper Company" in a signature font, with the words "Dunder Mifflin" in large typeface, the "Inc" aspect of the logo sideways next to the word "Mifflin" and the words "paper company" in a smaller font below the word "Mifflin," as shown below:



28.   The Dunder Mifflin name and stylized logo are recurring features of the sets, props, and wardrobe used in the show and appear in every episode of *The Office* as illustrated below:

8
FIRST AMENDED COMPLAINT

| Image | Season And Episode |
|---|---|
|  | Season 1<br>• Episode 3<br>*"Health Care"* |
|  | Season 1<br>• Episode 5<br>*"Basketball"* |
|  | Season 2<br>• Episode 9<br>*"E-Mail Surveillance"* |
|  | Season 2<br>• Episode 13<br>*"The Secret"* |
|  | Season 2<br>• Episode 20<br>*"Drug Testing"* |

9
FIRST AMENDED COMPLAINT

| Image | Season And Episode |
|---|---|
|  | Season 3<br><br>• Episode 7<br><br>*"Branch Closing"* |
| | Season 3<br><br>• Episode 13<br><br>*"Career Of Salesmen"* |
| | Season 3<br><br>• Episode 20<br><br>*"Safety Training"* |
| | Season 4<br><br>• Episode 5<br><br>*"Launch Party – Part 1"* |
| | Season 4<br><br>• Episode 9<br><br>*"Regional Advertising"* |

FIRST AMENDED COMPLAINT

| Image | Season And Episode |
|-------|--------------------|
|  | |
|  | Season 5<br>• Episode 1<br>*"Slimming Contest"* |
|  | Season 5<br>• Episode 12<br>*"The Duel"* |
|  | Season 5<br>• Episode 13<br>*"The Role Of The Prince Family"* |
|  | Season 5<br>• Episode 14/15<br>*"Tension Release"* |

11
FIRST AMENDED COMPLAINT

| Image | Season And Episode |
|---|---|
|  | Season 5<br>    • Episode 28<br>*"Company Picnic"* |
|  | Season 6<br>    • Episode 8<br>*"Koi Pond"* |
|  | Season 6<br>    • Episode 10<br>*"Murder"* |
|  | Season 6<br>    • Episode 11<br>*"The Shareholders' Meeting"* |
|  | Season 6<br>    • Episode 14<br>*"The Banker"* |

12
FIRST AMENDED COMPLAINT

| Image | Season And Episode |
|-------|--------------------|
|  | Season 7<br>• Episode 2<br>*"The Therapy"* |
|  | Season 7<br>• Episode 3<br>*"Andy's Play"* |
|  | Season 7<br>• Episode 13<br>*"Ultimatum"* |
|  | Season 8<br>• Episode 6<br>*"Doomsday"* |
|  | Season 8<br>• Episode 7<br>*"Pam's Replacement"* |
|  | Season 8<br>• Episode 11<br>*"The Quiz Show"* |

13

FIRST AMENDED COMPLAINT



| Image | Season And Episode |
|-------|--------------------|
| | Season 9<br>• Episode 14<br>*"The Office Bus"* |
| | Season 9<br>• Episode 6<br>*"The Boat"* |
| | Season 9<br>• Episode 9<br>*"Dwight Christmas"* |

29.     The widespread success of NBCU's *The Office* created and cultivated a devoted fan following that endures and thrives to this day, nearly a decade after the series ended.  The official *The Office* Facebook page, maintained by NBCU, has over 9.5 million followers and "likes" to date, while its Twitter feed has over 1.3 million followers.  Additionally, NBCU's YouTube page for *The Office* has 2.84 million subscribers and over 2.2 billion video views.

30.     The popularity of *The Office* has created an enormous demand for products, services, and themed experiences related to the series.  NBCU has responded to this demand by creating consumer products and by licensing other entities to do the same.  Indeed, shortly after the series began airing, NBCU began selling merchandise featuring the fictional "DUNDER MIFFLIN" brand.  By at least

14

FIRST AMENDED COMPLAINT

November 2006, NBCU was selling coffee mugs, hats and other apparel featuring the DUNDER MIFFLIN mark to identify the source of the goods as originating from or under the sponsorship or approval of NBCU.

31.     By January 2007, NBCU was selling *The Office* and DUNDER MIFFLIN merchandise in its physical store at 30 Rockefeller Center in New York City and online at nbcuniversalstore.com.  The merchandise sold included t-shirts, wall calendars, hats, and mugs featuring the DM MARKS.  As shown below, NBCU includes the DUNDER MIFFLIN mark on hang tags to identify the source of the goods as originating from or under the sponsorship or approval of NBCU:

 

32.     Continuously since 2006, NBCU has engaged in numerous, varied, and ever-expanding uses in commerce of Universal Television's well-known and popular intellectual property relating to *The Office*, including the DM MARKS.  In 2007, for example, NBCU created a website for the fictional Dunder Mifflin Paper Company where site visitors could learn about the company, browse products, view job postings, and contact the company.  The website prominently featured the DM MARKS.

33.     In addition, NBCU and its licensees have offered *The Office* themed merchandise bearing the DM MARKS for sale on the NBCU website and third-party

15
FIRST AMENDED COMPLAINT

websites such as Amazon and eBay, including clothing, robes, hats, beanies, mugs, wine tumblers, glassware, water bottles, blankets, phone cases, mouse pads, masks, ornaments, holiday stockings, lanyards, stickers, posters, backpacks, and tote bags.

34.    In 2011, NBCU licensed the company Quill.com to produce and distribute paper featuring the DUNDER MIFFLIN branding and eventually expanded the DUNDER MIFFLIN and *The Office* branded line to include Sharpies, self-stick notes, facial tissue, coffee cups, storage boxes, and legal pads.

35.    Demand for *The Office* themed products, services, and experiences did not end when the show ended in 2013.  Recently, *The Office* has gained a new following in the "Gen Z" generation who generally were not old enough to watch the show when it originally aired.  On April 26, 2019, Vanity Fair published an article describing *The Office*'s new-found popularity with Gen Z viewers.  Roughly a year and a half later, on August 3, 2021, Yahoo's PureWow published an article discussing *The Office*'s popularity with Gen Z viewers.  This new demographic has helped *The Office* remain a pop culture icon long after its nine-season run ended.

36.    In or around January 2021, NBCU began streaming all episodes of *The Office* on its streaming platform Peacock.  Prior to that time, *The Office* streamed exclusively on Netflix and reportedly was the platform's most watched piece of overall content.  As a result, the series' relocation from Netflix to Peacock was a significant news story covered on major news outlets, several of which credited *The Office*'s move to Peacock for Peacock's rapid increase in subscribers from roughly 26 million to 33 million.

37.    In connection with *The Office*'s January 2021 move to Peacock, NBCU distributed promotional materials which exploited the DM MARKS, as shown in the images below:

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



 

 

17

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7

38.    As  part  of  the  promotion,  Peacock  launched  a  Dunder  Mifflin Employee Simulator and interactive webpage which virtually transported fans of the show  into  a  Dunder  Mifflin  desktop  computer.   The  dundermifflin.com  website, which operated from January 1, 2021 through July 31, 2021, and is pictured below, enabled fans to click on folders and icons to gain access to behind-the-scenes photos, clips, and episodes of the series and experience being an employee at the famous Dunder Mifflin company.

8
9
10
11
12
13
14
15
16
17



18
19

39.    On Peacock, NBCU continues to exploit the DM MARKS in unique ways, as shown in the images below:

20
21
22
23
24
25
26
27
28



FIRST AMENDED COMPLAINT



40.     In 2021, thanks to the ongoing popularity of *The Office*, NBCU and its affiliates also began offering *The Office* Experience, an immersive experience where fans can explore various locations in the show.  *The Office* Experience was presented in Chicago from October 2021 through March 2022.  It will open in Washington, D.C. in July 2022 and will remain there through January 2023.  This experience, of course, features *The Office*'s most iconic location—the offices of the fictional company Dunder Mifflin.  *The Office* Experience also includes a retail store that sells merchandise bearing the DM MARKS including clothing, masks, and water bottles.

41.     Additionally, in January 2022, NBCU and its affiliates launched a *The Office* themed mobile game in the United States.  A substantial amount of the game play takes place in the offices of the fictional Dunder Mifflin company, and the DM MARKS appears throughout the game.

42.     These are just some of the many uses NBCU has made of the DM MARKS throughout the years.  Through these uses, Universal Television has established strong, nationwide common law rights in the unregistered word mark DUNDER MIFFLIN and in its stylized "DUNDER MIFFLIN INC, PAPER COMPANY" logo.  Universal Television's rights predate any use in commerce by Defendants of the DUNDER MIFFLIN mark.

43.     Specifically, the DM MARKS are arbitrary coined terms that are inherently distinctive trademarks and symbols of Universal Television and *The Office* franchise.  They also have acquired distinctiveness as a result of years of continuous use by NBCU from March 2005 to present in its well-known and beloved

19

FIRST AMENDED COMPLAINT

*The Office* television series, DVDs, video games, clothing, toys, collectibles, and other merchandise items related to *The Office*, all of which have been extensively advertised and promoted nationwide by NBCU and its licensees and have enjoyed substantial nationwide sales.

44.     The DM MARKS also are famous nationwide, and became famous before any use in commerce by Defendants, as a result of years of continuous use by NBCU in its well-known and beloved *The Office* television series, and in connection with DVDs, video games, clothing, toys, collectibles, and other merchandise items related to *The Office*, all of which have been extensively advertised and promoted nationwide by NBCU and its licensees, have enjoyed substantial nationwide sales, and have generated extensive press coverage and public awareness, such that the DM MARKS are widely recognized by the general consuming public of the United States as a designation of source as to the goods and services of NBCU.

## II.   NBCU's *Friday Night Lights* Marks

45.     *Friday Night Lights* is another one of NBCU's iconic television series. The show follows high school football teams in the fictional small town of Dillon, Texas. *Friday Night Lights* was inspired by the 1990 non-fiction book *Friday Night Lights: a Town, a Team, and a Dream* and a 2004 feature film titled *Friday Night Lights* based on the book. The book and movie are based on the real 1988 Permian High School football team, the Permian Panthers, located in Odessa, Texas.

46.     *Friday Night Lights* was produced by NBCU and merchandising rights relating to *Friday Night Lights* are owned exclusively by Universal Television, which licenses its rights in the show to NBCU Media and Universal Licensing.

47.     The first three seasons of *Friday Night Lights* focuses on the stories of the new head coach of the Dillon Panthers, the players on the football team, the Dillon High School students, and the residents of the small town of Dillon. In the fourth and fifth seasons of the show, the coach moves to newly reopened East Dillon High School as the head coach of its football team, the East Dillon Lions.

FIRST AMENDED COMPLAINT

48.    *Friday Night Lights* ran for five seasons from October 3, 2006 to February 9, 2011.  The show was a critical success during its run.  *Friday Night Lights* was nominated for eight Emmy awards and in 2011, Kyle Chandler, who played head coach Eric Taylor, won an Emmy for Outstanding Lead Actor in a Drama Series.

49.    In addition to being a critical success, *Friday Night Lights* enjoyed positive ratings.  In its first two seasons, the show averaged six million viewers per episode.  The third season garnered roughly 4.6 million viewers per episode and the fourth and fifth seasons had over 3.6 million viewers per episode.

50.    *Friday Night Lights* heavily featured the Dillon High School football team, the Panthers, and the East Dillon football team, the Lions, in numerous episodes.  In doing so, Universal Television featured several marks including the word marks DILLON PANTHERS, PANTHERS FOOTBALL, DILLON PANTHERS FOOTBALL, EAST DILLON FOOTBALL and stylized logos for each mark (together, the "FNL MARKS") in the show's episodes.

51.    Universal Television created and owns the stylized version of the DILLON PANTHERS MARK, shown below, which features the words "Dillon Panthers" in distressed all caps lettering in an arc with an image of a panther between the two words:



52.    Universal Television created and owns the stylized version of the PANTHERS FOOTBALL MARK, shown below, which features the words

"Panthers Football" in distressed all caps lettering with the word "panthers" in an arc, an image of a panther between the two words, and the letters "TX" on both sides of the panther:



53.    Universal Television created and owns the stylized version of the DILLON PANTHERS FOOTBALL MARK, shown below, which features the word "Dillon" in cursive above the words "Panthers Football" in distressed all caps lettering with the word "panthers" in an arc, an image of a football in between the two words, and the words "2007 state champions" inside the football.  The logo also includes the words "Friday Night Lights" below the word football:



54.    Universal Television created and owns the stylized version of the EAST DILLON FOOTBALL MARK, shown below, which features the words "East Dillon Football" in distressed all caps lettering in an arc with an image of a panther in between the words East Dillon and Football:

FIRST AMENDED COMPLAINT



55.     While *Friday Night Lights* was inspired by a book and movie, the fictional town of Dillon, Texas, the fictional Dillon Panthers football team, and the fictional East Dillon Lions football team do not appear in the book or movie. Accordingly, the common law trademark rights in marks relating to those fictional football teams that have accrued in connection with Universal Television's series *Friday Night Lights* belong exclusively to Universal Television.

56.     The popularity of *Friday Night Lights* has created an enormous demand for products, services, and themed experiences related to the series.  NBCU has responded to this demand by creating consumer products and by licensing other entities to do the same.  Indeed, shortly after the series began airing, NBCU began selling merchandise featuring the FNL MARKS.  By at least February 2011, NBCU was selling apparel and magnets featuring the FNL MARKS to identify the source, sponsorship or approval of these goods by NBCU.

57.     In addition, NBCU and its licensees have offered *Friday Night Lights* - themed merchandise bearing the FNL MARKS for sale on the NBCU website and third-party websites such as Amazon and eBay, including on clothing, hats, mugs, magnets, blankets, ornaments, and water bottles.

58.     In 2018, the series was again in the news when it began streaming on Amazon Prime and Hulu after previously being available on Netflix.  In or around January 2021, NBCU began streaming the series on Peacock.

FIRST AMENDED COMPLAINT

59.     Additionally, entertainment magazines and websites continue to discuss and promote the show.  In July 2021, *Variety* ranked its ten best episodes of *Friday night Lights*.  In August 2021, *TV Insider* posted an article with reasons to binge-watch the television series.  And, in August 2021, *Cosmopolitan* published a list of "26 Things You Never Knew About *Friday Night Lights*."  These are just a few examples of recent public interest in the series.

60.     Through these varied and ongoing uses of the FNL MARKS over many years, and the enduring popularity and public interest that has resulted, Universal Television has established strong, nationwide common law rights in the unregistered FNL MARKS.  Universal Television's rights predate any use in commerce by Defendants of the DILLON FOOTBALL mark.

### III.   Defendants' Pattern and Practice of Trademark Squatting

61.     NBCU is informed and believes, and on that basis alleges, that Defendants Gooder, JKM, and Kenneth Talbert have built a business based on registering trademarks belonging to others in order either to sell them back to their rightful owners or to profit from consumer confusion by selling branded merchandise that consumers inevitably will associate with a popular entertainment property such as a television show, movie, or videogame that has no connection whatsoever to Defendants.  Indeed, Defendants have registered, or attempted to register, more than 20 marks derived from the entertainment properties of others.

62.     For example, JKM owns trademark registrations for HILLMAN COLLEGE (the fictional all-black college depicted in *The Cosby Show*), TREE HILL RAVENS (the fictional basketball team from the series *One Tree Hill*), AVERAGE JOE'S (one of the fictional gyms in *Dodgeball*), and NOSTROMO (the fictional spaceship in *Alien*), and it applied to register TYRELL CORPORATION (the fictional replicant-manufacturer in *Blade Runner*).

63.     NBCU is informed and believes, and on that basis alleges, that the chart below details some of JKM and Gooder's other registrations and applications

24

FIRST AMENDED COMPLAINT

in pursuit of this business model, the entertainment property to which each

registration or application relates, and the owner of each such property:

| Trademark | Status | Class | Goods and services | Property/Owner |
|-----------|--------|-------|--------------------|----------------|
| DIPPER'S PINE | Registered | 25 | (Int. Cl. 25) hoodies; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; graphic t-shirts | *Gravity Falls* Disney TV |
| HILLMAN COLLEGE | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *The Cosby Show* Carsey-Werner Productions TV |
| NO MA'AM | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; baseball caps and hats; | *Married... with Children* 20th Century Fox TV |

FIRST AMENDED COMPLAINT

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | sweatshirts; t-shirts; hooded sweatshirts | |
| NOSTROMO | Registered | 25 | (Int. Cl. 25) hoodies; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; graphic t-shirts | *Alien* 20th Century Fox Movie |
| SHADOW COMPANY | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; baby bodysuits; hoodies; sweatshirts; shirts and short-sleeved shirts | *Shadow Company* Activision Call of Duty Game |
| SKYNET | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; baby bodysuits; hoodies; | *Terminator 2* 20th Century Fox Movie |

26

FIRST AMENDED COMPLAINT

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | shirts and short-sleeved shirts; sweatshirts | |
| TREE HILL RAVENS | Registered | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *One Tree Hill* Warner Brothers TV |
| AVERAGE JOE'S | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts; short-sleeved or long-sleeved t-shirts | *Dodgeball: A True Underdog Story* 20th Century Fox Movie |
| HARTFORD WHALERS | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and | Former NHL Hockey Team (predecessor of the current |

27
FIRST AMENDED COMPLAINT

| Trademark | Status | Class | Goods and services | Property/Owner |
|---|---|---|---|---|
| | | | caps, athletic uniforms; hooded sweatshirts; t-shirts; baseball caps and hats | Carolina Hurricanes) |
| TYRELL CORPORATION | Abandoned | 25 | (Int. Cl. 25) athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; headwear; hoodies; t-shirts; caps; graphic t-shirts | *Blade Runner* Warner Brothers Movie |

64.    Several of these applications were filed in 2016, and several on the same days, evidencing a clear strategy to squat on trademarks associated with multiple different popular entertainment properties that Defendants do not own. NBCU is informed and believes, and on that basis alleges, that Defendants have registered these various marks in an attempt to squat on the marks in order either to eventually extract a fee from the actual rightsholder and/or to sell merchandise that consumers will erroneously assume to be associated with the relevant entertainment property.

65.    In 2019, for example, JKM's website, jaykennette.com, displayed images of the various trademarks it claimed to own, many of which directly referenced the entertainment property from which they were lifted:

FIRST AMENDED COMPLAINT



66.    NBCU is informed and believes, and on that basis alleges, that Defendants have registered these marks with the intent to unfairly compete against the actual rightsholders, to trade upon their reputation and goodwill, and/or to sell back to them registrations for marks in which they already own common law rights.

**IV.    Defendants' Infringement of The DM MARKS and The FNL MARKS**

67.    Subsequent to the adoption and use by NBCU of its *The Office* and *Friday Night Lights* intellectual property, and without any authorization or permission from NBCU, Defendants began using the DM MARKS and FNL MARKS to market and sell the same kinds of merchandise as NBCU and its licensees.

68.    On or around June 2016, Gooder filed Application Serial No. 87-076,381 with the USPTO to register DUNDER MIFFLIN in Class 25 for use in connection with "Hoodies; Athletic apparel, namely, shirts, pants, jackets, footwear, hat and caps, athletic uniforms; Graphic T-shirts."  The application claimed a first use in commerce date of January 9, 2007, and was signed by Defendant Talbert, who was identified as the President/CEO of Gooder Labs.

69.    NBCU's use of the DM MARKS predates any actual or claimed use of DUNDER MIFFLIN by Defendants.  NBCU began using the DM MARKS in March

29

FIRST AMENDED COMPLAINT

2005 when *The Office* began airing on NBC television, and NBCU was selling merchandise bearing the DM MARKS by at least November 2006.  This is well before Gooder's claimed date of first use in commerce.

70.     Moreover, the specimen Gooder submitted with its application appeared to be digitally altered and did not show the mark being used in commerce. Shown below, Gooder submitted a specimen consisting of what appeared to be a plain white t-shirt with a neck tag bearing the words DUNDER MIFFLIN in blue using the same font and layout as Universal Television's DM MARKS.



71.     In or around February 2017, the USPTO rejected this specimen on the ground that it "appears to consist of a digitally altered image or a mock-up of the intended depiction of the mark on the goods or their packaging."

72.     In or around March 2017, Gooder submitted a new specimen, shown below, which consisted of a blue t-shirt with the words "Dunder Mifflin Paper Company, Inc." in white, arranged in precisely the same manner as depicted in the DM MARKS.

FIRST AMENDED COMPLAINT

73.     Once again, this specimen appeared to be a mock-up and does not show the shirt being advertised or offered for sale.  Following publication in April 2017, the application was granted, and the registration issued on July 4, 2017 as Registration Number 5,235,217.

74.     On or around January 14, 2017, Gooder assigned its trademark registrations and applications, including the then-pending application for DUNDER MIFFLIN, to JKM.  Notably, the consideration for the transfer of twelve marks from Gooder to JKM was $0.00.  Kenneth Talbert signed the assignment agreement on behalf of both Gooder and JKM as the CEO of both companies.

75.     In or around October 2021, JKM filed applications with the USPTO to register DUNDER MIFFLIN as a mark in International Classes 21 and 16 for, respectively, "cups, plates, coffee mugs" etc. and for "envelopes; copy paper; notebook covers; notebooks;" and other office products.  Those applications are currently pending with serial numbers 97-096,825 and 97-096,853 respectively.

76.     JKM submitted the following specimens with these applications:

31

FIRST AMENDED COMPLAINT

 

77.    Again, these specimens included "Dunder Mifflin" arranged in precisely the same manner as depicted in the DM MARKS and *The Office* television series.  Additionally, neither specimen shows the goods being advertised or offered for sale in commerce, and when examined, both appear to have digital alterations.

78.    In addition to registering Universal Television's DUNDER MIFFLIN mark with the USPTO, Defendants have offered and sold merchandise using the DM MARKS on Walmart.com, Amazon.com, and Defendants' interactive websites www.gooderdeals.com, www.goodergifts.com, and www.gooderlabs.com. Through these websites, Defendants sold merchandise to California, and NBCU is informed and believes, and on that basis alleges, that Defendants specifically targeted, consumers located in the State of California, the largest market in the United States.

79.    Starting in approximately 2015 and continuing to this day, Defendants have sold a variety of unauthorized merchandise bearing the DM MARKS, including without limitation shirts, hoodies, and hats.  As shown below, the merchandise offered by Defendants using the DM MARKS is substantially indistinguishable from NBCU's use in commerce including slavish copies of the identical logo presentation and constitutes trademark infringement and false designation of origin:

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




**Plaintiffs' Use**        **Defendants' Use**




**Plaintiffs' Use**        **Defendants' Use**




**Plaintiffs' Use**        **Defendants' Use**

80.    Defendants' use of exact replicas of the DM MARKS makes clear that
Defendants are attempting to pass off their products as those of NBCU and to trade

33
FIRST AMENDED COMPLAINT

upon NBCU's and *The Office*'s extensive fame, unparalleled goodwill, and devoted consumer base.

81.     On or around November 4, 2016, JKM filed Application Serial No. 87-227,047 with the USPTO to register DILLON FOOTBALL in Class 25 for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Headwear; Hoodies; T-shirts; Caps; Graphic T-shirts."  The application claimed a first use in commerce date of January 27, 2012.

82.     NBCU's use of the FNL MARKS predates any actual or claimed use of DILLON PANTHERS by Defendants.  NBCU began using the FNL MARKS in October 2006 when *Friday Night Lights* began airing on NBC television, and NBCU was selling merchandise bearing the FNL MARKS by at least February 2011.  This is before JKM's claimed date of first use in commerce.

83.     Moreover, the specimen JKM submitted with its application appeared to be digitally altered and did not show the mark being used in commerce.  Shown below, JKM submitted a specimen consisting of what appeared to be a plain white t-shirt with a neck tag printed with the words DILLON FOOTBALL.



84.     Following publication in March 2017, the application was granted, and the registration issued on June 13, 2017 as Registration Number 5,222,658.

85.     In addition to registering Universal Television's DILLON FOOTBALL mark with the USPTO, Defendants have offered and sold merchandise using the

34
FIRST AMENDED COMPLAINT

FNL MARKS on Amazon.com and Defendants' interactive websites www.gooderdeals.com, www.goodergifts.com, and www.gooderlabs.com. NBCU is informed and believes, and on that basis alleges, that through these websites, Defendants sold merchandise to, and specifically targeted, consumers located in the State of California, the largest market in the United States.

86.     Starting in approximately 2015 and continuing to this day, Defendants have sold a variety of unauthorized merchandise bearing the FNL MARKS, including without limitation shirts, hoodies, and hats. As shown below, the merchandise offered by Defendants using the FNL MARKS is substantially indistinguishable from NBCU's use in commerce including slavish copies of the identical logo presentation and constitutes trademark infringement and false designation of origin:





**Plaintiffs' Use**                    **Defendants' Use**




**Plaintiffs' Use**                          **Defendants' Use**

87.     Defendants' use of nearly exact replicas of the FNL MARKS makes clear that Defendants are attempting to pass off their products as those of NBCU and to trade upon NBCU's and *Friday Night Lights'* extensive fame, goodwill, and devoted consumer base.

88.     Defendants have expressly aimed their wrongful conduct at the State of California by operating an interactive website which allowed residents of California to conduct transactions thereon and purchase infringing goods, selling infringing merchandise in the State of California through their own website, Walmart.com, and Amazon.com, and, beyond merely selling merchandise, specifically targeting NBCU.  As recently as 2022, Defendants sold merchandise through Amazon.com and Walmart.com which infringed on the DM MARKS and FNL MARKS into the State of California.

89.     In addition to registering and selling merchandise bearing NBCU's DM MARKS and FNL MARKS, Defendants have specifically targeted NBCU in order effectively to hold the DM MARKS hostage.  In or around 2019, Defendants attempted to interfere with NBCU's contractual relationships in California by sending takedown demands through eBay and Amazon to NBCU's licensees.  eBay is headquartered in and has its principal place of business in San Jose, California. Defendants' takedown notices falsely claimed that NBCU's licensees were infringing Defendants' trademarks by selling merchandise bearing the DM MARKS

36
FIRST AMENDED COMPLAINT

that related to *The Office* television series, and thereby constituted a deliberate and knowing attempt to interfere with NBCU's contractual relationships with its licensees.   One of these takedown notices targeted the activities of Smart Print, a California-based retailer selling merchandise bearing the DM MARKS on behalf of NBCU licensee T-Line.

90.   On December 8, 2021, NBCU sent JKM a cease-and-desist letter demanding that JKM cease infringing NBCU's DM MARKS.  JKM refused to stop its infringement.   Instead, Defendants communicated to NBCU's counsel in California a demand that NBCU pay a substantial sum for JKM to assign its registration for DUNDER MIFFLIN to NBCU.   In that same communication, Defendants threatened that they would seek to have all of NBCU's and its licensees' listings for merchandise bearing the DM MARKS taken down from all Internet distribution platforms, including Amazon.  Defendants also threatened to sue NBCU for trademark infringement.  Furthermore, Defendants demanded that NBCU enter into a consent agreement with them that would have given Defendants substantive rights in the DM MARKS to which Defendants are not entitled.

91.   Defendants' practice of seeking fraudulent trademark registrations to which they are not entitled has hindered NBCU's ability to protect and augment its own common law rights by obtaining valid federal trademark registrations.  On or around November 20, 2020, Universal Television sought to register DUNDER MIFFLIN as a standard character mark in International Class 41, Serial No. 90-333,640, for "entertainment services in the field of comedy accessible via mobile and global communication networks."  As detailed above, Universal Television is clearly entitled to such a registration based on its creation and continuous usage of the DM MARKS.  However, in office actions, the USPTO rejected the applications and cited JKM's registered trademark for DUNDER MIFFLIN, discussed above, as a basis for rejection.  On or around June 8, 2022, the USPTO issued a final office

FIRST AMENDED COMPLAINT

action rejecting Universal Television's application based on a purported likelihood of confusion with JKM's registered trademark.

92.   On July 1, 2022, concurrently with the filing of this litigation, NBCU filed with the Trademark Trial and Appeal Board of the USPTO a petition to cancel JKM's Registration No. 5,235,217.  On July 19, 2022, NBCU filed a request that that proceeding be suspended pending the resolution of NBCU's claims in this case. On September 1, 2022, the Trademark Trial and Appeal Board granted NBCU's request and suspended those proceedings pending the resolution of this action.

## FIRST CLAIM FOR RELIEF

### TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a)(1)(A)

### (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

93.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

94.   Universal Television and its affiliates have the exclusive right at common law to use its DM MARKS in the United States in commerce to advertise and sell various goods and services including merchandise, products, services, and themed experiences related to the television series *The Office*.

95.   Universal Television's exclusive rights in and to its DM MARKS predate any rights that Defendants could establish in any mark that consists of "Dunder Mifflin" in whole or in part.

96.   Universal Television's DM MARKS are arbitrary coined terms that are inherently distinctive when used in connection with NBCU's goods and services.

97.   Universal Television's DM MARKS identify NBCU as the exclusive source of merchandise, services, and experiences offered using the DM MARKS. Accordingly, Universal Television's DM MARKS also have acquired distinctiveness through the development of secondary meaning.

98.   As alleged above, NBCU Media and Universal Licensing have used and exploited the DM MARKS and have a material, concrete, and real commercial interest in the DM MARKS and in protecting the DM MARKS from Defendants' infringement.

99.   Universal Television and its affiliates have the exclusive right at common law to use its FNL MARKS in the United States in commerce to advertise and sell various goods and services including merchandise, products, services, and themed experiences related to the television series *Friday Night Lights*.

100.   Universal Television's exclusive rights in and to its FNL MARKS predate any rights that Defendants could establish in any mark that consists of "Dillon Football" in whole or in part.

101.   Universal Television's FNL MARKS are arbitrary coined terms that are inherently distinctive when used in connection with NBCU's goods and services.

102.   Universal Television's FNL MARKS identify NBCU as the exclusive source of merchandise, services, and experiences offered using the FNL MARKS. Accordingly, Universal Television's FNL MARKS also have acquired distinctiveness through the development of secondary meaning.

103.   As alleged above, NBCU Media and Universal Licensing have used and exploited the FNL MARKS and have a material, concrete, and real commercial interest in the FNL Marks and in protecting the FNL MARKS from Defendants' infringement.

104.   As set forth above, Defendants have been and are reproducing Universal Television's DM MARKS and FNL MARKS in United States commerce by offering for sale, and selling, merchandising using the DM MARKS and the FNL MARKS.  NBCU has not consented to Defendants' use of Universal Television's DM MARKS or FNL MARKS for any purpose.

105.   As alleged herein, and as shown in the examples above, Defendants' use of Universal Television's DM MARKS and FNL MARKS in United States

39
FIRST AMENDED COMPLAINT

commerce, on and in connection with merchandise, is likely to cause confusion, cause mistake, and/or cause deception about whether NBCU is the source of Defendants' merchandise.

106.   NBCU is informed and believes, and on that basis alleges, that Defendants' conduct, as alleged herein, is in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of Universal Television's DM MARKS and FNL MARKS and its extraordinarily popular television series *The Office* and *Friday Night Lights*.

107.   Defendants' acts and conduct constitute trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A).

108.   Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

109.   Defendants' willful and deliberate acts of trademark infringement and unfair competition make this an exceptional case such that NBCU is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

110.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU and consequently have caused, and will continue to cause, a substantial impact on United States commerce.   Such irreparable injury will continue unless and until Defendants are enjoined from further violation of NBCU's rights.

FIRST AMENDED COMPLAINT

## <u>SECOND CLAIM FOR RELIEF</u>

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION –

## 15 U.S.C. § 1125(a)(1)(A)

## (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

111.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

112.   Universal Television owns the unregistered DM MARKS for use in United States commerce in connection with a wide variety of goods and services including merchandise, products, services, and themed experiences related to the television series *The Office*.

113.   The DM MARKS and have been used extensively by Universal Television and its affiliates, NBCU Media and Universal Licensing, and licensees in commerce, are non-functional, are inherently distinctive, have acquired substantial secondary meaning in the marketplace, and have become associated in the public's mind with NBCU's products, services, experiences and its extraordinarily popular television series *The Office*.

114.   As alleged above, NBCU Media and Universal Licensing have used and exploited the DM Marks and have a material, concrete, and real commercial interest in the DM MARKS and in protecting the DM MARKS from Defendants' infringement.

115.   Universal Television owns the unregistered FNL MARKS for use in United States commerce in connection with a wide variety of goods and services including merchandise, products, services, and themed experiences related to the television series *Friday Night Lights*.

116.   The FNL MARKS and have been used extensively by Universal Television and its affiliates, NBCU Media and Universal Licensing, and licensees in commerce, are non-functional, are inherently distinctive, have acquired

41

FIRST AMENDED COMPLAINT

1  substantial secondary meaning in the marketplace, and have become associated in
2  the public's mind with NBCU's products, services, experiences and its
3  extraordinarily popular television series *Friday Night Lights*.

4       117.   As alleged above, NBCU Media and Universal Licensing have used
5  and exploited the FNL Marks and have a material, concrete, and real commercial
6  interest in the FNL MARKS and in protecting the FNL MARKS from Defendants'
7  infringement.

8       118.   As described above in detail, the Defendants are using in commerce,
9  without NBCU's authorization or consent and in a confusing and misleading
10  manner, the DM MARKS and the FNL MARKS and/or confusingly similar
11  variations thereof to advertise, market, and sell their own infringing merchandise.
12  This conduct constitutes false designation of origin and unfair competition in
13  violation of 15 U.S.C. § 1125(a)(1)(A).

14      119.   NBCU is informed and believes, and on that basis alleges, that
15  Defendants had actual knowledge of Universal Television's ownership and NBCU's
16  prior use of the DM MARKS and the FNL MARKS and related merchandise prior
17  to commencing the conduct alleged herein.

18      120.   NBCU is informed and believes, and on that basis alleges, that
19  Defendants have engaged in the conduct complained of herein with the intent to
20  compete unfairly against NBCU, to trade upon NBCU's reputation and goodwill by
21  causing confusion and mistake among customers and the public, and to deceive the
22  public into believing that Defendants' infringing merchandise is associated with,
23  sponsored by, or approved by NBCU, when it is not.

24      121.   As a result of the acts complained of herein, Defendants have caused
25  injury to NBCU's business reputation and to the reputation and goodwill
26  surrounding the DM MARKS and the FNL MARKS, as well as a strong likelihood
27  of consumer confusion as to the source of origin or relationship of NBCU's and
28  Defendants' goods, and have otherwise competed unfairly with NBCU.

42

FIRST AMENDED COMPLAINT

122.   Defendants' acts complained of herein were willful and deliberate and have caused damage to NBCU in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

123.   Defendants' willful and deliberate acts of trademark infringement and unfair competition make this an exceptional case such that NBCU is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

124.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU and consequently have caused, and will continue to cause, a substantial impact on United States commerce.   Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

## THIRD CLAIM FOR RELIEF

### TRADEMARK DILUTION – 15 U.S.C. § 1125(c)

### (Universal Television against all Defendants)

125.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

126.   By virtue of the enormous popularity of the DM MARKS, and the massive success, advertising and promotion of *The Office* television series, the goods, services, and experiences offered under the DM MARKS have been consumed, viewed, accessed, and purchased by millions of people.   Accordingly, as alleged herein, these marks are famous among consumers nationwide and became famous well before their use in commerce by Defendants.

127.   Defendants' use of the famous DM MARKS in their infringing merchandise has been for Defendants' own commercial gain.

128.   Defendants' use of the famous DM MARKS in their infringing merchandise will cause, or will likely cause, dilution of the distinctive quality of

43
FIRST AMENDED COMPLAINT

Universal Television's DM MARKS through blurring and/or tarnishment in violation of 15 U.S.C. § 1125(c), thereby impairing the capability of these marks of identifying and distinguishing Universal Television's, or its affiliates', or its licensees', goods and services.

129.   Defendants' acts complained of herein were willful and deliberate and have caused damage to Universal Television in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

130.   Defendants' willful and deliberate acts of trademark dilution make this an exceptional case such that Universal Television is entitled to an award of profits and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

131.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to Universal Television's business, substantial loss of goodwill and reputation, and pecuniary damages to Universal Television.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of Universal Television's rights.

## FOURTH CLAIM FOR RELIEF

### CANCELLATION OF TRADEMARK REGISTRATION NO. 5,235,217 AND TRADEMARK REGISTRATION NO. 5,222,658

### 15 U.S.C. §§ 1052(d), 1064

### (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

132.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

133.   Since at least March 2005, well before the first use, filing and registration dates of JKM's Registration No. 5,235,217 and its applications for registration denoted by Serial Nos. 97-096,825 and 97-096,853, Universal Television, and its affiliates, NBCU Media and Universal Licensing, have

44

FIRST AMENDED COMPLAINT

1  continuously used Universal Television's famous DM MARKS in commerce in

2  connection with products, services, and themed experiences related to NBCU's

3  television series *The Office* and therefore enjoys priority of use in commerce.  By

4  virtue of NBCU's continuous and substantial use of Universal Television's DM

5  MARKS, the DM MARKS have become a strong identifier of NBCU and its

6  products and services and distinguish NBCU's products and services from those of

7  others.  NBCU has built up significant and valuable goodwill and fame in Universal

8  Television's DM MARKS.  Universal Television has a valid protectible common

9  law trademark interest in its DM MARKS.  NBCU Media and Universal Television

10  have a material, concrete, and real commercial interest in Universal Television's DM

11  Marks and the protection thereof.

12  134.  Since at least October 2006, well before the first use, filing and

13  registration dates of JKM's Registration No. 5,222,658, Universal Television, and

14  its affiliates, NBCU Media and Universal Licensing, have continuously used

15  Universal Television's FNL MARKS in commerce in connection with products,

16  services, and themed experiences related to NBCU's television series *Friday Night*

17  *Lights* and therefore enjoys priority of use in commerce.  By virtue of NBCU's

18  continuous and substantial use of Universal Television's FNL MARKS, the FNL

19  MARKS have become a strong identifier of NBCU and its products and services and

20  distinguish NBCU's products and services from those of others.  NBCU has built up

21  significant and valuable goodwill and fame in Universal Television's FNL MARKS.

22  Universal Television has a valid protectible common law trademark interest in its

23  FNL MARKS.  NBCU Media and Universal Television have a material, concrete,

24  and real commercial interest in Universal Television's FNL Marks and the

25  protection thereof.

26  135.  NBCU will be damaged by the continued registration of JKM's

27  Registration No. 5,235,217 and by Application Serial Nos. 97-096,825 and 97-

28  096,853, in that the mark shown in the registration and potential registrations are

45

FIRST AMENDED COMPLAINT

confusingly similar to Universal Television's famous DM MARKS.  NBCU will also be damaged by the continued registration of JKM's Registration No. 5,222,658, in that the mark shown in the registration and potential registrations are confusingly similar to Universal Television's FNL MARKS.  Potential purchasers, upon seeing Defendants' marks shown in the registrations and applications, are likely to mistakenly believe that such marks and goods identified in the registration and applications originate with or are connected or associated with, or sponsored, licensed or approved by, NBCU.  Thus, the registration and applications' use of the mark shown therein in connection with the goods identified therein are likely to cause confusion, or to cause mistake, or to deceive, all within the meaning of 15 U.S.C. § 1052(d).

136.   In view of NBCU's prior rights in the DM MARKS and FNL MARKS, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and Application Serial Nos. 97-096,825 and 97-096,853, or to federal registration of the mark show in Registration No. 5,222,658.  The registrations should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. §§ 1052(d) and 1119.

137.   In addition, by virtue of the enormous popularity of the DM MARKS, and the massive success, advertising and promotion of *The Office* television series, the goods, services, and experiences offered under the DM MARKS have been consumed, viewed, accessed, and purchased by millions of people.  Accordingly, as alleged herein, these marks are famous among consumers nationwide and became famous before any use in commerce by Defendants.

138.   As a result, the Registration and use of the DUNDER MIFFLIN mark by Defendant JKM will cause, or will likely cause, dilution of the distinctive quality of Universal Television's DM MARKS through blurring and/or tarnishment in violation of 15 U.S.C. § 1125(c), thereby impairing the capability of these marks of

46
FIRST AMENDED COMPLAINT

identifying and distinguishing NBCU's, or its licensees', goods and services, with consequent damage to NBCU and the public.

139.   For this separate and additional reason, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and in Application Serial Nos. 97-096,825 and 97-096,853.   The registration should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. §§ 1125(c), 1064, and 1119.

## FIFTH CLAIM FOR RELIEF

## CANCELLATION OF TRADEMARK REGISTRATION NO. 5,235,217 AND REGISTRATION NO. 5,222,658 – FRAUDULENT REGISTRATION / MISREPRESENTATION OF SOURCE 15 U.S.C. § 1064(3)
### (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

140.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

141.   The Lanham Act imposes on trademark applicants the obligations not to knowingly make false, material representations and not to make knowingly inaccurate or knowingly misleading statements.

142.   When Defendant JKM applied for Registration No. 5,235,217, and filed Applications Serial Nos. 97-096,825 and 97-096,853, Defendants knowingly and falsely claimed, under penalty of perjury, that JKM was the exclusive owner of the DUNDER MIFFLIN mark, that it was using the mark in connection with goods claimed in the application, and that no other persons had the right to use the mark in commerce.

143.   At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that NBCU had prior, superior rights to use the DM MARKS in commerce in

FIRST AMENDED COMPLAINT

connection with apparel, merchandise, entertainment services, and other goods and services related to NBCU's television series *The Offic*e.

144. At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that that the statements in the applications were false based upon NBCU's widespread, successful, open, notorious, popular, and national use of Universal Television's DM MARKS from March 2005 to the present on its nationally televised, critically acclaimed television series *The Office* and on related merchandising, services, and experiences bearing the DM MARKS, as well as upon Defendants' submission of specimens in support of registration depicting a purported DUNDER MIFFLIN mark that was in an identical font, stylization, and manner of presentation as Universal Television's DM MARKS, and also upon the Defendants' applications for and registrations of numerous other marks uniquely associated with other entertainment properties not owned by Defendants.

145. In addition, when Defendant JKM applied for Registration No. 5,222,658 Defendants knowingly and falsely claimed, under penalty of perjury, that JKM was the exclusive owner of the DILLON FOOTBALL mark, that it was using the mark in connection with goods claimed in the application, and that no other persons had the right to use the mark in commerce.

146. At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that NBCU had prior, superior rights to use the FNL MARKS in commerce in connection with apparel, merchandise, entertainment services, and other goods and services related to NBCU's television series *Friday Night Lights*.

147. At all relevant times, and at the time of making the aforesaid applications for registration, Defendants, and each of them, had actual knowledge that that the statements in the applications were false based upon NBCU's widespread, successful, open, notorious, popular, and national use of Universal

Television's FNL MARKS from October 2006 to the present on its nationally televised, critically acclaimed television series *Friday Night Lights* and on related merchandising, services, and experiences bearing the FNL MARKS, as well as upon Defendants' submission of specimens in support of registration depicting a purported DILLON FOOTBALL mark that was in an identical font, stylization, and manner of presentation as Universal Television's FNL MARKS, and also upon the Defendants' applications for and registrations of numerous other marks uniquely associated with other entertainment properties not owned by Defendants.

148.   Defendants knowingly made these materially fraudulent statements in the applications with the intent to deceive the USPTO and with the intent that the USPTO rely upon them.

149.   The USPTO relied upon the materially false statements made by Defendants in its handling of the applications to register the DUNDER MIFFLIN and DILLON FOOTBALL marks and in registering the DUNDER MIFFLIN and DILLON FOOTBALL marks.  But for the materially false allegations, the USPTO would never have issued Registration No. 5,235,217 and Registration No. 5,222,658 to Defendant JKM.

150.   Defendants' conduct constitutes fraud on the USPTO.  NBCU has no adequate remedy at law and is being irreparably damaged by the aforesaid registration and pending applications.

151.   In view of Defendants' fraud on the USPTO, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and Application Serial Nos. 97-096,825 and 97-096,853 or to federal registration of the mark shown in Registration No. 5,222,658.  The registrations should be cancelled, and the applications should be deemed abandoned as authorized under 15 U.S.C. § 1119.

152.   In addition, as alleged above, Defendants have blatantly used the registered DUNDER MIFFLIN and DILLON FOOTBALL marks in a manner

FIRST AMENDED COMPLAINT

calculated to trade on NBCU's, *The Office*'s, and *Friday Night Lights's* extensive goodwill, popularity, fame, reputation, and consumer base.  They have deliberately used the DUNDER MIFFLIN and DILLON FOOTBALL marks to pass off their own goods as those of NBCU by using the mark in a manner that is substantially indistinguishable from the highly distinctive and unique font, stylization, and manner of presentation of Universal Television's DM MARKS and FNL MARKS.

153.   As a result, Defendants' use of the DUNDER MIFFLIN mark is a misrepresentation of source plainly designed to create the false impression and cause consumers mistakenly to believe that NBCU is the source of goods sold under Defendants' registered DUNDER MIFFLIN and DILLON FOOTBALL marks, all in violation of 15 U.S.C. § 1064(3).   For this separate and additional reason, Defendant JKM is not entitled to federal registration of the mark shown in Registration No. 5,235,217 and in Application Serial Nos. 97-096,825 and 97-096,853 or to federal registration of the mark shown in Registration No. 5,222,658. The registrations should be cancelled, and the applications should be deemed abandoned, as authorized under 15 U.S.C. § 1119.

## SIXTH CLAIM FOR RELIEF

## COMMON LAW TRADEMARK INFRINGEMENT

## (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

154.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

155.   Universal Television owns all rights, title, and interest in and to the DM MARKS and the FNL MARKS as alleged herein, including all common law rights in such marks.

156.   NBCU Media and Universal Licensing have used and exploited the DM MARKS and have a material, concrete, and real commercial interest in the DM MARKS and in protecting the DM MARKS from Defendants' infringement

157.   NBCU Media and Universal Licensing have used and exploited the FNL MARKS and have a material, concrete, and real commercial interest in the FNL Marks and in protecting the FNL MARKS from Defendants' infringement.

158.   Defendants' acts complained of herein constitute trademark infringement in violation of the common law of the State of California.

159.   Defendants intend to continue their willfully infringing acts unless restrained by this Court.

160.   Defendants' conduct has injured NBCU and will continue to cause irreparable injury to NBCU for which NBCU has no adequate remedy at law.   In addition, Defendants are guilty of oppression, fraud, and malice.   Accordingly, NBCU is entitled to an award of punitive and/or exemplary damages pursuant to California Civil Code § 3294(a).

## SEVENTH CLAIM FOR RELIEF

### COMMON LAW UNFAIR COMPETITION (PASSING OFF)

### (NBCU Media, Universal Television, and Universal Licensing against all Defendants)

161.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

162.   By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed with NBCU in violation of the common law of the State of California.

163.   The purpose, tendency, and effect of Defendants' use of the DM MARKS and the FNL MARKS, in the manner alleged above, is to enable Defendants to deceive the public by passing off their products as being rendered, sponsored, approved, or otherwise associated with or licensed by NBCU, when in fact they are not.

FIRST AMENDED COMPLAINT

164.    Defendants' use of the DM MARKS and the FNL MARKS in merchandise offered for sale is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' products.  Said use constitutes infringement of NBCU rights with respect to the DM MARKS and the FNL MARKS.

165.    Defendants' willful acts of unfair competition have caused injury and damage to NBCU in an amount to be determined at trial.

166.    Defendants' willful acts of unfair competition constitute acts of fraud, oppression, and malice.  Accordingly, NBCU is entitled to an award of punitive and/or exemplary damages pursuant to California Civil Code § 3294(a).

167.    Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

<u>**EIGHTH CLAIM FOR RELIEF**</u>

**CALIFORNIA STATUTORY UNFAIR COMPETITION**

**Cal. Business & Professions Code § 17200,** *et seq.*

<u>**(NBCU Media, Universal Television, and Universal Licensing against all**</u>

<u>**Defendants)**</u>

168.    NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

169.    By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the public and have unfairly competed in violation of California Business and Professions Code § 17200, *et seq.*

170.    Defendants' aforementioned acts constitute unlawful business practices, which have injured or damaged NBCU including by causing a loss of money or property.  Among other violations of law, Defendants' aforementioned

FIRST AMENDED COMPLAINT

acts constitute trademark infringement and false designation of origin under 15 U.S.C. § 1125(a) and trademark dilution under 15 U.S.C. § 1125(c).

171.   Defendants' acts complained of herein have caused, and will continue to cause, irreparable injury to NBCU's business, substantial loss of goodwill and reputation, and pecuniary damages to NBCU.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined from further violation of NBCU's rights.

## NINTH CLAIM FOR RELIEF

### CALIFORNIA STATUTORY TRADEMARK DILUTION

### Cal. Business & Professions Code § 14247, *et seq.*

### (Universal Television against all Defendants)

172.   NBCU repeats, realleges, and incorporates herein by reference every allegation contained in paragraphs 1 through 92.

173.   By virtue of the enormous popularity and nationwide recognition of Universal Television's DM MARKS, and the massive advertising and promotion of *The Office*, Universal Television's DM MARKS are famous among consumers.

174.   Defendants' use of these famous marks in commerce in connection with their businesses, products, and services has been for their own commercial gain.

175.   Defendants' infringing use of these famous marks dilutes the distinctive quality of and tarnishes the public image of these marks and is likely to cause actual dilution of these marks, thereby impairing the marks' capability of identifying and distinguishing Universal Television's, its affiliates NBCU Media's and Universal Licensing's, or its licensees' goods and services including *The Office* television series and related merchandise.

176.   Defendants' acts complained of herein were willful and deliberate and have caused damage to Universal Television in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants are enjoined from their wrongful actions.

FIRST AMENDED COMPLAINT

177.   Defendants' willful and deliberate acts of trademark dilution have caused, and will continue to cause, irreparable injury, loss of goodwill and reputation, and pecuniary damages.  Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined by this Court from further violation of Universal Television's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, NBCU prays for judgment against Defendants as follows:

A.   For a preliminary and permanent injunction prohibiting Defendants and each of their agents, servants, owners, shareholders, partners, employees, attorneys, assigns, and all others in privity or acting in concert with them from committing further acts of infringement or dilution, including:

1.   Using any trademark, service mark, trade name or domain name that includes or is confusingly similar to the DM MARKS or FNL MARKS;

2.   Using in any manner any trademark, service mark, trade name, domain name, trade dress, designs, colors, arrangements, or any combination thereof that imitates, resembles, or suggests or is otherwise confusingly similar to the DM MARKS or FNL MARKS;

3.   Otherwise infringing or diluting NBCU's trademarks, service marks, trade names, or trade dress, unfairly competing with NBCU, or otherwise injuring NBCU's business reputation in any manner;

4.   Using, registering, or reserving any domain name, Twitter name, Facebook page name or other similar domain, or social networking or media name or page that includes the DM MARKS or the FNL MARKS or is confusingly similar thereto;

54
FIRST AMENDED COMPLAINT

B.      For an order that Defendants be directed to deliver up for destruction all merchandise, products, images, advertisements, signs, packages, publications, websites, social networking or media pages, and all other material in their possession or under their control that bear any of the DM MARKS or the FNL MARKS, pursuant to 15 U.S.C. § 1118.

C.      That the Court award NBCU compensatory damages in an amount according to proof, including without limitation actual damages for Defendants' violation of 15 U.S.C. §§ 1125(a) and 1125(c) pursuant to 15 U.S.C. § 1117(a), and award NBCU treble damages under 15 U.S.C. § 1117(a), and other exemplary and/or punitive damages to the extent permitted by law.

D.      That the Court award Defendants' profits derived from their infringing use of the DM MARKS or the FNL MARKS, or any confusingly similar variation thereof, for Defendants' violation of 15 U.S.C. §§ 1125(a) and 1125(c) pursuant to 15 U.S.C. § 1117(a).

E.      For cancellation of JKM's Registration No. 5,235,217 and Registration No. 5,222,658 pursuant to 15 U.S.C. § 1119.

F.      For an order that Application Serial Nos. 97-096,825 and 97-096,853 be deemed abandoned pursuant to 15 U.S.C. § 1119.

//
//
//
//
//
//
//
//
//
//

55
FIRST AMENDED COMPLAINT

G.      For costs of suit, attorneys' fees, prejudgment interest, and such other and further relief as the Court deems just and proper.

Dated:  October 5, 2022                    JENNER & BLOCK LLP


By:   */s/ Andrew J. Thomas*
Andrew J. Thomas
Lauren M. Greene

Attorneys for Plaintiffs
NBCUniversal Media LLC, Universal
Television LLC, and Universal Studios
Licensing LLC

56
FIRST AMENDED COMPLAINT

## <u>JURY DEMAND</u>

Plaintiffs respectfully request a jury trial on all issues so triable.

Dated:  October 5, 2022                    JENNER & BLOCK LLP


By:  _/s/ Andrew J. Thomas_
                                           Andrew J. Thomas
                                           Lauren M. Greene

                                           Attorneys for Plaintiffs
                                           NBCUniversal Media LLC, Universal
                                           Television LLC, and Universal Studios
                                           Licensing LLC

57
FIRST AMENDED COMPLAINT