Jeanette M. Braun
Pro Hac Vice Admission
IL Bar No. 6332483
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
T: (773) 504-4036
Email: docket@brauniplaw.com

Jordanna G. Thigpen (SBN 232642)
Thigpen Legal, P.C.
9595 Wilshire Blvd. Suite 961
Beverly Hills, CA 90212
T: (310) 210-7491
F: (310) 263-0456
Email: jt@thigpenlegal.com

Attorneys for Defendants
Jay Kennette Media Group LLC,
Gooder Labs, LLC, and
Kenneth Talbert

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

NBCUniversal Media, LLC, a Delaware limited liability company; Universal Television LLC, a New York limited liability company; and Universal Studios Licensing LLC, a Delaware limited liability company,

Plaintiffs,

v.

Jay Kennette Media Group LLC, a Delaware limited liability company; Gooder Labs, LLC, a Delaware limited liability company; and Kenneth Talbert, an individual,

Defendants.

Case No. 2:22-cv-04541-SB-JPR

The Hon. Stanley Blumenfeld, Jr.

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Request for Judicial Notice and Declaration of Kenneth Talbert filed concurrently herewith]**

First Amended Complaint filed: October 05, 2022

**Hearing**
Date: November 18, 2022
Time: 8:30 a.m.
Location: Courtroom 6C

Action Filing Date: October 19, 2022

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, November 18, 2022, at 8:30 a.m. in the courtroom of the Honorable Stanley Blumenfeld, Jr., located at 350 West 1st Street, Courtroom 6C, Los Angeles, California, 90012, Defendants Jay Kennette Media Group LLC ("Defendant JKMG"), Gooder Labs, LLC ("Defendant Gooder"), and Kenneth Talbert ("Defendant Talbert") (collectively "Defendants") will and hereby move this honorable Court to dismiss Plaintiffs' NBCUniversal Media, LLC ("NBC"), Universal Television LLC (Universal TV"), and Universal Studios Licensing LLC ("Universal Licensing") (collectively "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as well as Article III of the Constitution. Defendants' Motion is brought on the grounds that Plaintiffs' FAC should be dismissed in its entirety due to Plaintiffs' failure to adequately state any such claim upon which relief could be granted, lack of personal jurisdiction by this honorable Court over the Defendants, Plaintiffs' lack of standing, and all claims alleged in Plaintiffs' FAC being barred under the Doctrine of Laches.

The Defendants' Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Kenneth Talbert and Defendants' Request for Judicial Notice ("RJN") in Support of Defendants' Motion to Dismiss Plaintiffs' FAC, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 18, 2022, via videoconference, and a subsequent conference of counsel after the filing of the Plaintiffs' First Amended Complaint pursuant to L.R. 7-3, which took place on October 13, 2022, via video conference.

Dated:  October 19, 2022

BRAUN IP LAW, LLC

By: /s/Jeanette M. Braun

Jeanette M. Braun

Pro Hac Vice Admission
IL Bar No. 6332483
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
(773) 504-4036
docket@brauniplaw.com

Jordanna Thigpen
Thigpen Legal, P.C.
9595 Wilshire Blvd. Suite 961
Beverly Hills, CA 90212
310-210-7491
jt@thigpenlegal.com

Attorneys for Defendants
Jay Kennette Media Group LLC,
Gooder Labs, LLC, and
Kenneth Talbert

3

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ....................................................................................9

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY................9

III.   LEGAL STANDARD.............................................................................12

IV.    ARGUMENT ........................................................................................13

    *A.*   *Plaintiffs Have Failed to State a Claim for Trademark Infringement and Common Law Trademark Infringement*.............................................*13*

        1.   Plaintiffs have failed to state a claim for federal trademark infringement under the Lanham Act.............................................13

        2.   Plaintiffs have failed to state a claim for common law trademark infringement under California law...............................................22

    *B.*   *This Honorable Court Lacks Personal Jurisdiction Over the Defendants* 22

        1.   Defendants have not targeted advertising or content specifically towards California.............................................................................26

        2.   Federally Registering a Trademark Does not Create Minimum Contacts with the Forum of An Alleged Prior Common Law User ............30

        3.   Settlement Negotiations Do Not Create Minimum Contacts for the Exercise of Personal Jurisdiction ................................................30

        4.   Enforcing Defendant JKMG's Federally Registered Trademarks Against Infringers on Ebay and Amazon, Even if the Infringer is in California, Do Not Create Minimum Contacts Required for Personal Jurisdiction ................................................................................32

    *C.*   *Plaintiffs Lack Standing to Bring the Claims Contained in the First Amended Complaint*...............................................................................*33*

        1.   Plaintiffs Lack Standing to be Collectively the Real Party in Interest 34

        2.   Plaintiffs Do Not Meet the Irreducible Constitutional Minimum Requirement Set Out by the Doctrine of Standing .......................36

    *D.*   *Plaintiffs' Claims are Time Barred by the Doctrine of Laches*..............*37*

        1.   Plaintiffs Had Constructive Notice of JKMG's Claim of Ownership of the DUNDER MIFFLIN Trademark Since its Publication and Subsequent Registration in 2017 ......................................................37

        2.   Plaintiffs' Unreasonable Delay in Bringing Their Action Has Unduly Prejudiced Defendants ................................................................40

    *E.*   *Plaintiffs Improperly Name Defendants Gooder Labs, LLC and Kenneth*

4

*Talbert in Their Action*.........................................................................41

V.   CONCLUSION.............................................................................42

5

# TABLE OF AUTHORITIES

**Federal Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores*, Inc., 237 F.3d 198 (3rd Cir. 2000) ................................................................13

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) ............. 26, 28, 29

*Apple Inc. v. Zipit Wireless, Inc.*, Appeal No. 2021-1760 (Fed. Cir. Apr. 18, 2022) ........................................................31

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ................................................................24

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) ..............................................................................23

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ........................................................23

*Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994) ..............................................................................23

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977) ......................................................... 12, 23

*Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519, 524-525 (8th Cir.1996)........................................31

*Hammond Packing Co. v. Dickey*, 183 F.977, 978 (8th Cir. 1911) ..............................................................................31

*In re Shipowners Litigation*, 361 N.W.2d 112 (Minn.App. 1985) ..............................................................................30

*Juan Pollo Fran., Inc. v. B & K Pollo Enterprises*, Inc., EDCV132010JGBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) ................................................................22

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ......................................................... 26, 29

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001).........................12

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ......................................................................... 23, 24

*Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, No. 17-55325 (9th Cir. 2018) ...................................................... 37, 38

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998) ..........................................31

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)..............................................................................23

*Sengoku Works Ltd. v. RMC, Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)................................................................ 14, 15

*Smith Architectural Metals, LLC v. Am. Railing Sys., Inc.*, 698 S.E.2d 752, 756 (Ct. App. N.C. 2010) ..........................................31

*Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002)......................................................... 13, 14, 20

6

*Viacom Int'l, Inc. v. IJR Capital Investments*, LLC, 891 F.3d 178
  (5th Cir. 2018). ........................................................................... 13, 20

*Washington Sci. Indus., Inc. v. Polan Indus., Inc.*, 302 F.Supp.
  1354, 1358 (D.Minn. 1969) ....................................................... 30

*Wood v. Apodaca*, 375 F.Supp.2d 942, 947-48 (N.D.Cal.2005) ........................... 22

*Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995) ..................... 12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.
  Pa. 1997) ................................................................................ 24, 29

**Federal Statutes**

15 U.S.C. § 1115(a) ........................................................................ 14

**Other Authorities**

2   MCCARTHY   ON   TRADEMARKS   AND   UNFAIR
  COMPETITION § 16:1 (5th ed. 2022 Update) .......................... 13, 18

*In re Wella A.G.*, 5 USPQ2d 1359, 1361 (T.T.A.B. 1987)
  (emphasis in original), rev'd on other grounds, 858 F.2d 725,
  8 USPQ2d 1365 (Fed. Cir. 1988) .......................................... 34, 35

*Noble House Home Furnishings, LLC v. Floorco Enterprises,
  LLC*, 118 U.S.P.Q.2d 1413 (T.T.A.B. 2016) ........................... 34, 35

Ornamental Refusal and How to Overcome this Refusal", United
  States Patent and Trademark Office - An Agency of the
  Department   of   Commerce   (2022),
  https://www.uspto.gov/trademarks/laws/ornamental-refusal-
  and-how-overcome-refusal (last visited Oct 18, 2022). ............. 16, 18

*Robert Doyle v. Al Johnson's Swedish Restaurant & Butik, Inc.*,
  101 USPQ2d 1780, 1782 (T.T.A.B. 2012) ............................... 35, 36

TMEP 1201.07 ............................................................................ 35

**Federal Rules**

15 U.S.C. § 1114 ......................................................................... 13

15 U.S.C. § 1125(a ....................................................................... 13

15 U.S.C. § 1127(a) .................................................................. 34, 35

Fed. R. Civ. P. 12(b)(2) ............................................................ 9, 12, 22

Fed. R. Civ. P. 12(b)(6) ................................................................. 9

Fed. R. Civ. P. 21 ....................................................................... 41

**Regulations**

U.S. Patent & Trademark Office, U.S. Dep't of Commerce,
  Trademark   Manual   of   Examining   Procedure
  § 1201 (Jul. 2022) ................................................................ 15, 16

**Constitutional Provisions**

U.S. Const. art. III, §§ 1-2 .......................................................... 12

**U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................... 12, 33

7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006) ...............................................12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-476 (1985) ...........................24

*Calder v. Jones*, 465 U.S. 783, 789 – 90, 104 ........................................................33

*Clapper v. Amnesty Int'l USA*, 133 U.S. 1138, 1155 (2013) ...................................33

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) ..................................36

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003) .............................................................................................................21

*Davis v. FEC*, 554 U.S. 724, 734 (2008) ................................................................36

*Iancu v. Brunetti*, 139 U.S. 2294, 2297 (2019) ......................................................14

*Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945) .................................................................23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ....................................... 12, 36

*Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) ...........................................37

*SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 ....................................................................................................38

*SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017) ...................................................................................... 37, 38

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ............................... 13, 29, 30

*Walden v. Fiore*, 571 S. Ct. 277, 284 (2014) ............................................. 23, 24, 33

**State Statutes**

Cal. Civ. Proc. Code § 410.10 ................................................................................23

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Defendants, by and through their attorneys, move this court to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and Article III of the Constitution. Defendants also contend that Plaintiffs' claims are barred by the Doctrine of Laches.

## II.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

On June 18, 2016, Defendant JKMG filed its trademark application to register DUNDER MIFFLIN in class 025 for "Hoodies; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Graphic T-shirts" with a first use date of January 9, 2007.

On November 4, 2016, Defendant JKMG filed its federal trademark application to register DILLON FOOTBALL in class 025 for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Headwear; Hoodies; T-shirts; Caps; Graphic T-shirts" with a first use date of January 27, 2021.

On March 28, 2017, Defendant JKMG's DILLON FOOTBALL federal trademark application was published in the USPTO's *Official Gazette* and open for the public to oppose the registration. (Dkt. No. 23 ¶ 84; RJN Ex. A-2).

On April 18, 2017, Defendant JKMG's DUNDER MIFFLIN federal trademark application was published in the USPTO's *Official Gazette* that open for the public to oppose the registration. (Dkt. No. 23 ¶ 73; RJN Ex. A-1).

On June 13, 2017, no opposition for registration was filed by any member of the public and Defendant JKMG's trademark DILLON FOOTBALL was registered by the USPTO and published again in the USPTO's *Official Gazette*. (Dkt. No. 23 ¶ 84 RJN Ex. A-2).

On July 4, 2017, no opposition for registration was filed by any member of the public and Defendant JKMG's trademark DUNDER MIFFLIN was registered by

9

the USPTO and published again in the USPTO's *Official Gazette*. (Dkt. No. 23 ¶ 73, RJN Ex. A-1).

On November 20, 2020, Plaintiff Universal TV, filed a 1(a) (in-use) trademark application for DUNDER MIFFLIN (Ser. No. 90333640) in class 041 for "Entertainment services, namely, a multimedia program series in the field of comedy accessible via mobile and global communication networks." (Dkt. No. 23 ¶ 91; RJN Ex. A-3).

On May 4, 2021, the USPTO rejected Universal TV's application Ser. No. 90333640 for four (4) reasons: 1) Section 2(d) – Likelihood of Confusion with JKMG's Mark; 2) Unacceptable Specimen of Use; 3) Identification and Classification of Goods and Services; and 4) Multi-Class Application Requirements. (Dkt. No. 23 ¶ 91; RJN Ex. A-4).

On November 4, 2021, Universal TV responded to the May 4, 2021, Office Action by arguing rejections 2, 3, and 4, above, and stating that it would address issue 1 (likelihood of confusion) at a later date. (RJN Ex. A-5)

On December 2, 2021, the USPTO issued a second rejection of Universal TV's application Ser. No. 90333640 after not finding Universal TV's arguments persuasive for three (3) of the rejections: 1) Section 2(d) –3 Likelihood of Confusion with JKMG's Mark; 2) Unacceptable Specimen of Use; and 3) NEW - Mark Differs in Drawing and Specimen. (Dkt. No. 23 ¶ 91, RJN Ex. A-6).

On or about January 2022, Defendant JKMG engaged in settlement negotiations protected under FRE 408 with NBCUniversal: ADV/NBCUniversal, the particularities of which are omitted here as per the protections afforded under FRE 408.  See Talbert Decl. ¶ 18-20.

On June 1, 2022, Plaintiff Universal TV responded to the May 4, 2021, Office Action by amending the basis for filing to 1(b) (intend to use) to set aside issues 2, and 3, above, did not provide evidence of use from its alleged first date of use of

10

March 24, 2005, and stated it would address 1) (likelihood of confusion) at a later date. (RJN Ex. A-7)

On June 8, 2022, the USPTO issued a final rejection for one (1) reason: 1) Section 2(d) – Likelihood of Confusion with Plaintiff JKMG's federally registered DUNDER MIFFLIN mark. (Dkt. No. 23 ¶ 91; RJN Ex. A-8).

On July 1, 2022, Plaintiff Universal TV filed its Petition for Cancellation of Defendant JKMG's registered DUNDER MIFFLIN trademark, which was not indexed by the USPTO or served on JKMG until July 7, 2022. (Dkt. No. 23 ¶ 92; RJN Ex. A-9)

On July 1, 2022, Plaintiffs filed their Complaint with the United States District Court, Central District of California (Case No. 2:22-cv-04541), which was not served on Defendants until July 25, 2022. Dkt. Nos. 14, 15, 16.

On July 4, 2022, JKMG filed its Combined Declarations under Section 8 & 15 with the USPTO for its DUNDER MIFFLIN trademark.

On July 6, 2022, a Notice of Suit Incoming was filed with the USPTO for JKMG's registered trademark.

On July 7, 2022, the TTAB indexed and instituted the cancellation proceeding, set trial dates, and made the cancellation proceeding available to the public.

On July 25, 2022, Defendants waived service of Plaintiffs' Complaint filed with the United States District Court, Central District of California (Case No. 2:22-cv-04541). Dkt. Nos. 14, 15, 16.

On October 05, 2022, Plaintiffs filed their First Amended Complaint with the United States District Court, Central District of California (Case No. 2:22-cv-04541). Dkt. No. 23.

As of October 19, 2022, Plaintiffs have not filed any federal trademark applications for their claimed Friday Night Lights trademarks (DILLON

11

PANTHERS, PANTHERS FOOTBALL, DILLON PANTHERS FOOTBALL, EAST DILLON FOOTBALL and stylized logos for each mark).  *Id.* ¶¶ 50.

## III.   **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*.  A plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully," but show that plausible entitlement to relief. *Id.* An entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Pursuant to Fed. R. Civ. P. 12(b)(2), a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).  The plaintiff bears the burden to show that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

Under Article III of the U.S. Constitution, the judicial power of the United States, vested in the federal courts, extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2.  Courts have developed the doctrine of standing because the U.S. Constitution does not precisely define the reach of this judicial power. While some aspects of standing doctrine are "merely prudential considerations," it also contains a "core component," the case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To prevent "federal courts [from] exceed[ing] their authority," the law of Article III standing "confines the federal

12

courts to a properly judicial role" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted).

## IV.   ARGUMENT

### A.   Plaintiffs Have Failed to State a Claim for Trademark Infringement and Common Law Trademark Infringement

#### 1.   Plaintiffs have failed to state a claim for federal trademark infringement under the Lanham Act

To establish trademark infringement under the Lanham Act for either a registered mark under 15 U.S.C. § 1114, or an unregistered mark under 15 U.S.C. § 1125(a), the plaintiff must demonstrate that (1) the plaintiff has a valid and legally protectable mark; (2) the plaintiff owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000). Common law trademark rights are not automatically awarded to a fictional place, character, or other element of an entertainment entity. *Viacom Int'l, Inc. v. IJR Capital Investments, LLC*, 891 F.3d 178 (5th Cir. 2018). For common law trademark rights to be awarded to an element of an entertainment entity, the element of the entertainment entity must be used to indicate origin because the purpose of trademark law is to "prevent competitors from copying a source-identifying mark." *Id.* The burden of proof in infringement and owning common law trademark rights rests with the plaintiff. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). There can be no infringement of an invalid mark." *Id.* "All common law and registration rights" rest on the use-based rule of "first-in-time, first-in-right." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:1 (5th ed. 2022 Update) (hereinafter "MCCARTHY ON TRADEMARKS"). "Registration constitutes 'prima facie evidence' of the mark's validity." *Iancu v. Brunetti*, 139

13

U.S. 2294, 2297 (2019) (quoting 15 U.S.C. § 1115(a)); it provides "'constructive notice of the registrant's claim of ownership,' which forecloses some defenses in infringement actions...". *Id.*. "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC, Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

Plaintiffs have the burden of proving they have common law rights to any mark and have failed to meet their burden. *Tie Tech Inc.*, 296 at 783. Plaintiffs have failed to properly plead the elements required to claim common law rights as either a prior in-commerce user or an element of an entertainment entity, which is the basis for Plaintiffs' FAC. Dkt. No. 23 *et seq.* Defendant JKMG is the owner of the federally registered trademark DUNDER MIFFLIN, as Plaintiffs have pled. Dkt. No. 23 ¶ 74 (FAC), RJN Ex. A-1. Defendant JKMG is the owner of the federally registered trademark DILLON FOOTBALL, as Plaintiffs have pled. *Id.* ¶ ¶ 81, 84, RJN Ex. A-2. Defendant JKMG's trademark registrations are presumed valid and Plaintiff has the burden of proving invalidity. *Iancu*, 139 U.S. at 2297. Plaintiffs do not have either mark federally registered for any goods or services. Dkt. No. 23 ¶ 94. Plaintiffs have applied for federal trademark registration for DUNDER MIFFLIN but not for any of the FNL marks (e.g. DILLON FOOTBALL). *Id.* ¶¶ 50, 91; RJN Ex. A-3. Plaintiffs claim common law trademark rights to DUNDER MIFFLIN and FNL marks for two reasons:

1) selling merchandise that displays the mark in an ornamental fashion across the front of apparel, merchandise, products, services, and themed experiences related to the television series *The Office* (Dkt. No. 23 ¶ 94) for DUNDER MIFFLIN and selling merchandise that displays the mark in

14

an ornamental fashion across the front of apparel for the FNL marks (*Id.* ¶¶ 50, 85); and

2)  use as an element of an entertainment entity (*Id.* ¶¶ 1).

Plaintiffs have not met their burden and have failed to plead sufficient facts to support the claims summarized above.  This honorable Court can look to Plaintiffs' FAC for proof that Plaintiffs are not using either of the marks in a proper manner to have common law trademark rights for apparel, merchandise, products, services and themed experiences.  To have trademark rights, a user must use the mark so that it functions as a mark.  *Sengoku Works Ltd.*, 96 F.3d at 1219; U.S. Patent & Trademark Office, U.S. Dep't of Commerce, Trademark Manual of Examining Procedure § 1201 (Jul. 2022) [hereinafter TMEP].  The use cannot be ornamental or merely descriptive and must indicate the source of the goods or services.  *Id.*  Plaintiffs provided photographs of a t-shirt and a tote bag in their FAC as evidence of use of DUNDER MIFFLIN for merchandise.  Dkt. 23 ¶ 31.  The hang tag shown in the photos displays "THE SHOP AT NBC STUDIOS" at the top of the tag, in color, along with the NBC peacock logo.  *Id.*  A barcode is shown in the middle of the tag, and below the barcode is a color description for the product.  *Id.*  Below the color description are the words "THE OFFICE DUNDER MIFFL" and "DUNDER MIFFLIN TOTE," respectively.  *Id.*  These product tags do not evidence that Plaintiffs are using DUNDER MIFFLIN as the source of the goods.  The source identifier shown on these tags is clearly "THE SHOP AT NBC STUDIOS" emblazoned across the top of the tag with the NBC peacock logo next to the words.  The small print descriptors containing the words "THE OFFICE DUNDER MIFFL" (the alleged mark being truncated and not fully spelled out) and "DUNDER MIFFLIN TOTE," serve as product descriptions similar to the color description on both tags reading "navy."  This area of a product tag is typically information that mirrors what would be printed on a customer's receipt and is merely descriptive of

15

the item purchased.  Even if the descriptors did rise to the level of trademark use, which they do not, the mark would be "THE OFFICE DUNDER MIFFL" brand t-shirts and the tote would be "DUNDER MIFFLIN TOTE" brand totes.

Turning to Dkt. No. 23 ¶ 79, Plaintiffs provide a side-by-side comparison of their use and Defendants' alleged use of the DUNDER MIFFLIN mark.  *Id.* Plaintiffs' pled use is ornamental and does not give rise to trademark rights.  TMEP § 1201.  The United States Patent and Trademark Office provides examples of ornamental use: Examples of ornamental use of a mark:

- **A quote prominently displayed across the front of a t-shirt, such as "The Pen is Mightier than the Sword."** Most purchasers would perceive the quote as a decoration, and would not think that it identifies the manufacturer of the t-shirts (the source of the t-shirts could be Hanes® or Champion®, for example, as shown by the neck-tag).
- **A logo on the front of a hat.** The logo is associated with an organization, like a sports team, which did not manufacture the hat.
- **Stitching designs on the back pocket of a pair of jeans**. Purchasers are accustomed to seeing embellishments on jean pockets and would not think this embroidery design identifies the source of the jeans.
- **A floral pattern on tableware or silverware.** A purchaser would likely see this pattern as merely decorative and would not think it identifies the source of the tableware or silverware.
- **The phrase "Have a Nice Day" or a smiley face logo.** Everyday expressions and symbols that commonly adorn products are normally not perceived as identifying the source of the goods. Ornamental Refusal and How to Overcome this Refusal", United States Patent and Trademark Office - An Agency of the Department of Commerce (2022), https://www.uspto.gov/trademarks/laws/ornamental-refusal-and-how-overcome-refusal (last visited Oct 18, 2022).

Plaintiffs' use of DUNDER MIFFLIN on the t-shirt, ball cap, and coffee mug is purely ornamental when compared with the list above and does not rise to use that indicates a source identifier.  *Id.*  Defendant JKMG's federally registered and valid trademark words DUNDER MIFFLIN are decoratively displayed across the front of the merchandise, which is ornamental use, and none of the merchandise has a tag,

16

label, or packaging to displays the words in a fashion to be a source indicator.  *Id.* The source indicator on these items is clearly "THE SHOPS AT NBC STUDIOS" and not DUNDER MIFFLIN.  Therefore, Plaintiffs do not have common law rights for using DUNDER MIFFLIN for merchandise because they are not using the mark as a source identifier.   Defendants could not be infringing any of Plaintiffs' trademark rights because they have none for prior in-commerce use. *Tie Tech, Inc.*, 296 at 783.

Additionally, the barcodes shown in these photographs are not registered with any nationally recognized barcode databases, such as https://www.barcodelookup.com/.  Searching for Plaintiffs' t-shirt code 400012142932 yielded a result for Eddie Bauer's Cabin Fleece Throw (blanket).  RJN Ex. D-1.  Searching for Plaintiffs' tote code 488881041457 yielded no results.   RJN Ex. D-2.  The lack of the bar code being registered with a national bar code database evidences that these barcodes are simply internal barcodes used by Plaintiffs within their only physical location, which is in New York, NY.  RJN Ex B-5. The tags shown are not used to sell goods nationally and can only potentially evidence Plaintiffs' sales in the state of New York.  (Defendants will assume, though not admit, that these barcodes are internal and not fabricated for the purposes of this Motion).

Plaintiffs do have an online store through which they sell THE SHOPS AT NBC STUDIOS merchandise that can be accessed through their domain https://www.theshopatnbcstudios.com/.  This website redirects a consumer to www.nbcstore.com if the consumer wishes to purchase THE SHOPS AT NBC STUDIOS brand merchandise. (RJN Exs. B-1 through B-4).  It is well settled in case law that selling online does not automatically provide national common law rights to any mark.  Plaintiffs have failed to provide proof of national usage of their purported mark to claim national common law rights, which is required.

17

Nothing on Plaintiffs' www.nbcstore.com website immediately takes you to anything using the words DUNDER MIFFLIN as a brand or trademark.  From the www.nbcstore.com home page, a web user must navigate to the "shop by show" section, select "THE OFFICE," and the scroll to find relevant listings.  (RJN Ex. B-1). The products listings on www.nbcstore.com show merely ornamental use of the purported mark by splashing DUNDER MIFFLIN across the front of t-shirts, sweatshirts, and the like.  (RJN Ex. B-2). When zooming in on the necklines of those shirts, it is clear that they are branded "THE OFFICE." (RJN Ex. B-3). Plaintiffs are using two different trademarks to sell merchandise having Defendant JMKG's federally registered trademark emblazoned across the front of said merchandise: THE SHOPS AT NBC STUDIOS and THE OFFICE.  It has long been established tradition that placing branding in the neckline or on the tag of apparel is the appropriate way to show proper usage of a trademark as a source identifier in connection with the sale of those goods. See "Ornamental Refusal and How to Overcome this Refusal," USPTO.

According to The Wayback Machine (www.archive.org), the first capture of the www.nbcstore.com THE OFFICE collection of products webpage that sells merchandise was in 2020.  (RJN Ex. C).  The archival tool found nothing prior to 2020. It is hard to believe that The Wayback Machine would not have captured an image of Plaintiffs' website prior to 2020 if they were selling THE OFFICE collection merchandise at least as early as 2007.  Without providing evidence that Plaintiffs were "first in time," they cannot be "first in right." MCARTHY ON TRADEMARKS.  Defendant JKMG is first in time, first in right, and owns federal registrations to said marks.

Also, if Plaintiffs were using DUNDER MIFFLIN as the trademark for the merchandise, the collection would be named DUNDER MIFFLIN and not THE OFFICE.  There is no information in the public record or in Plaintiffs' FAC that

18

supports their claim of trademark common law rights that predates Defendants JKMG's first date of use of January 09, 2007, sworn to in its original DUNDER MIFFLIN trademark application under penalty of perjury.  Without proof that Plaintiffs properly used DUNDER MIFFLIN as a source identifier.  It is plainly obvious that Plaintiffs' common law marks are THE SHOPS AT NBC STUDIOS and THE OFFICE, and not DUNDER MIFFLIN, for said merchandise as can be seen in their FAC.

Plaintiffs' FAC contains the same deficiencies for their common law trademark claims for the FNL marks.  Plaintiffs provide pictures of use of their alleged FNL marks and a side-by-side comparison of their use with Defendants' use. Dkt. No. 23 ¶ 51-53, 86.  In the photos, the words DILLON PANTHERS and EAST DILLON FOOTBALL are displayed across the front of the t-shirt in an ornamental fashion and not in any way that rises to the level of a source indicator for the goods. Even if the use was proper use for common law trademark rights, which it is not, Plaintiffs' mark would be DILLON PANTHERS or EAST DILLON FOOTBALL and not DILLON FOOTBALL, as they allege in their FAC.  *Id.* ¶¶ 50.

Finally, under the third element required to show trademark infringement under the Lanham Act, there can be no likelihood of confusion caused by Defendant JKMG's use of its own DUNDER MIFFLIN and DILLON FOOTBALL registered marks with Plaintiffs alleged common law rights for sales in commerce.  Plaintiffs are not using the marks as a source identifier and have no common law rights to it. There is no likelihood of confusion when there is no infringement.  There is no infringement because Plaintiffs have no common law trademark rights to the DUNDER MIFFLIN or FNL marks.

Turning to using the marks as a source identifier based on it allegedly being an element of an entertainment entity, Plaintiffs have failed to establish proper use for this type of common law trademark right as well.

19

Common law trademark rights are not automatically awarded to a fictional place, character, or other element of an entertainment entity. *Viacom Int'l, Inc.*, 891 at 178. For common law trademark rights to be awarded to an element of an entertainment entity, the element of the entertainment entity must be used to indicate origin because the purpose of trademark law is to "prevent competitors from copying a source-identifying mark." *Id.* The burden of proof in infringement and owning common law trademark rights rests with the plaintiff. *Tie Tech, Inc.*, 296 at 783 (9th Cir. 2002). There can be no infringement of an invalid mark." *Id.*

Plaintiffs allege that the "Dunder Mifflin name and stylized logo are recurring features of the sets, props, and wardrobe used in the show and appear in every episode of *The Office* as illustrated below" and then provide a chart comprising stills from the show and Season and Episode information. Dkt. No. 23 ¶ 20. The chart does not comprise stills from every episode of the show. For instance, the chart only contains stills from Season 1, Episodes 3 and 5. Stills from Season 1, Episodes 1, 2, and 4 are missing. The still provided for Season 1, Episode 5, and Season 3 Episode 13 do not comprise a legible display of the words DUNDER MIFFLIN. The stills provided for Season 2, Episode 9 and 20, Season 6, Episode 11, and more, do not display the words DUNDER MIFFLIN in their entirety and therefore cannot function as use of the mark. To obtain trademark rights to an element of an entertainment entity, the element must be "regularly" featured. *Viacom Int'l, Inc.*, 891 at 178. If an element occasionally appears, even in a successful television series, "the indication-of-origin requirement may not be met." *Id.* Plaintiffs have not met their burden of showing that any DUNDER MIFFLIN element that exists in its *The Office* series appears enough times in a manner that indicates DUNDER MIFFLIN is origin of a specific product or service. *Id.* The stills Plaintiffs provide in their FAC do not rise to the level of proving trademark rights apply here. Rather the still accomplish the opposite: they illustrate that the words are used in almost a

20

1    subliminal manner, being hidden by people and things on the set, being in a small

2    font, etc.  Plaintiffs also failed to provide the number of minutes or hours the words

3    are displayed compared to the total airtime of the show, or provide consumer

4    surveys, as Viacom had to do to prove it achieved a common law trademark to *Krusty*

5    *Krab*.  *Id. et seq*. Plaintiffs do not have a common law trademark right to the words

6    DUNDER MIFFLIN as an element of an entertainment entity.

7         Plaintiffs claim Defendants' federally registered trademarks have created a

8    false designation of origin.  *Id.* ¶¶ 6.  Plaintiffs assert that the words DUNDER

9    MIFFLIN originated from a UK TV show, and that Plaintiffs acquired the rights to

10   the show in the US.  *Id.* ¶¶ 22-23.  Plaintiffs assert that this is the origin of the words

11   and therefore their alleged common law element of an entertainment entity

12   trademark rights.  *Id. et seq*. "The phrase 'origin of goods' in the Lanham Act is

13   incapable of connoting the person or entity that originated the ideas that 'goods'

14   embody or contain." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.

15   23, 38 (2003).  In *Dastar Corp.,* the U.S. Supreme Court held that "[t]he consumer

16   typically does not care about such origination, and § 43(a) should not be stretched

17   to cover matters that are of no consequence to purchasers." *Id.* at 38.  Even if it is

18   true that the words DUNDER MIFFLIN originated in the UK based on a show, and

19   Plaintiffs purchased the right to that show in the US, this does not afford them any

20   trademark rights because of where the name originated.  Justice Scalia ruled that

21   "[b]ecause we conclude that Dastar was the 'origin' of the products it sold as its

22   own, respondents cannot prevail on their Lanham Act claim." *Id.*  Defendants

23   respectfully request that this honorable Court also find that Plaintiffs cannot prevail

24   on their Lanham Act claim.

25

26

27

28
     21

### 2. Plaintiffs have failed to state a claim for common law trademark infringement under California law

To state a claim of trademark infringement under California common law, a plaintiff need allege only (1) their prior use of the trademark, and (2) the likelihood of the infringing mark being confused with their mark. *Wood v. Apodaca*, 375 F.Supp.2d 942, 947-48 (N.D.Cal.2005). See also, *Juan Pollo Fran., Inc. v. B & K Pollo Enterprises*, Inc., EDCV132010JGBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) .

As stated above, Plaintiffs fail to properly allege their prior use of their purported trademark by providing pictures of non-use in their FAC.  Dkt. N. 23 ¶ 31, 51-53.  Plaintiffs have also failed to provide sufficient proof of likelihood of confusion between JKMG's registered DUNDER MIFFLIN and DILLON FOOTBALL brands and Plaintiffs' purported trademark.

Plaintiffs have not met their burden for stating a prima facie case of either federal trademark infringement under the Lanham Act or common law trademark infringement under the laws of California.  Plaintiffs have not pled sufficient facts to show they have common law rights to the words DUNDER MIFFLIN or DILLION FOOTBALL for actual use in commerce or an element of an entertainment entity.  Defendant JKMG owns federal trademark registrations for both marks an those registrations are presumed valid.  For the foregoing reasons, this action should be dismissed for failure to state a claim upon which relief can be granted.

### B. This Honorable Court Lacks Personal Jurisdiction Over the Defendants

A defendant can raise lack of personal jurisdiction as a defense by motion. Fed. R. Civ. P. (12)(b)(2). "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of

22

establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). A court may consider the pleadings and any declarations submitted by the parties when deciding a motion to dismiss for lack of personal jurisdiction. *Data Disc. Inc.*, 557 at 1285. Courts typically examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comport[s] with federal due process when determining if it has personal jurisdiction over a nonresident defendant. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). "Because California permits the exercise of personal jurisdiction to the full extent permitted by due process, [courts] need only determine whether jurisdiction over [a defendant] comports with due process." *Id.* (internal quotations omitted). "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. State of Wash.*, *Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945)).

To exercise jurisdiction over out-of-state defendants, courts typically must have specific jurisdiction, or "case-linked" jurisdiction, which requires a "relationship among the defendant, the forum, and the litigation" that arises out of contacts that the "defendant himself creates with the forum." *Walden v. Fiore*, 571 S. Ct. 277, 284 (2014). A court can exercise specific jurisdiction only when "the

23

defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Id.*  The Ninth Circuit applies a three-pronged test for assessing whether the necessary relationship is present: (1) "the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017); see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-476 (1985).

Before the Supreme Court of the United States articulated the foregoing jurisdictional framework in *Walden*, courts analyzing jurisdiction over website operators typically used an "interactivity" test that considers the degree of interaction between a website and its users.  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  The *Zippo* court held that, where a website does business over the internet or contracts with residents of a foreign jurisdiction, the exercise of jurisdiction over the website is proper.  *Id.* at 1124.  By contrast, the *Zippo* court held that "passive" websites, or those that merely post information that is accessible to out-of-forum viewers, are not subject to jurisdiction in the forums in which users access them.  *Zippo Mfg. Co.*, 952 at 1119.  For websites in the "middle ground," or those where users can exchange information with the host computer, the court examined "the level of interactivity and commercial nature of the exchange of information" that occurs on the site to determine whether exercising jurisdiction would be proper.  *Id.*

Plaintiffs plead in their FAC that none of the Defendants are located in California.  Dkt. No. 23 ¶ 17-19.  Therefore, Defendants must have made minimum contact with California for this honorable Court to have personal jurisdiction over them.  *Pebble Beach*, 453 F.3d at 1155.  Defendants have not made the required

24

minimum contacts with California for this honorable Court to have personal jurisdiction over them.

Plaintiffs claim this honorable Court has personal jurisdiction over the Defendants JKMG and Gooder because "the action arises out of conduct by these defendants that has been expressly aimed at and regularly taking place in the State of California." Dkt. No. 23 ¶ 8. Plaintiffs claim this honorable Court has personal jurisdiction over Defendant Talbert because "Mr. Talbert is the President and Chief of Executive Officer of both JKM[G] and Gooder, directs and controls their activities of both organizations...". *Id.* ¶¶ 11. Plaintiffs allege Defendants' conduct targeted California when they engaged in:

1) Selling products comprising Defendant JKMG's registered mark on-line through Walmart.com and Amazon.com, which are third party ecommerce platforms (*Id.* ¶¶ 8)

2) Defendant JKMG registering trademarks for DUNDER MIFFLIN and DILLON FOOTBALL with the United States Patent Office (*Id.* ¶¶ 9);

3) settlement negotiations with NBCUniversal: ADV/NBCUniversal, the only named party in a Cease and Desist received by only Defendant JKMG (*Id.*); and

4) Enforcing Defendant JKMG's federally registered trademarks against infringers on Ebay and Amazon, and at least one infringer is allegedly based in California (*Id.*).

None of the conduct alleged by Plaintiffs and summarized above, or any of Defendants' conduct creates minimum contacts with California. Plaintiffs have not established a prima facie case that Defendants purposefully availed themselves of the privilege of conducing activities in California, as would be required to support a lawsuit against them here.

25

### 1.   Defendants have not targeted advertising or content specifically towards California

In the Ninth Circuit's previous decision in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), the court concluded that an out-of-state website operator, Brand Technologies, was subject to personal jurisdiction in California where it managed a website devoted to celebrity gossip. *Id.* The court held that Brand Technologies "expressly aimed" its conduct at the forum because the website contained "a specific focus on the California-centered celebrity and entertainment industries." *Id.* at 1230. The *Mavrix* court's conclusion, in significant part, was "[b]ased on the website's subject matter." *Id.* By contrast, in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), a case in which the court held that it could not exercise jurisdiction over a foreign website operator, the court stated that "the market for adult content is global," as evidenced by the fact that 80% of the viewers of the website at issue were outside the United States. *Id.*

The website in *AMA Multimedia* did not maintain a specific focus on the United States, the court concluded, it did not "expressly aim" its web activities there. *Id.* Additionally, the court ruled that finding jurisdiction based on location-based advertising would result in the website operator being subject to jurisdiction anywhere its site was accessible. *Id.* The court explained that such targeting meant that "[the operator of the website's] geo-located advertisements...are always directed at the forum"(emphasis in original). *Id.* "If such geo-located advertisements constituted express aiming," the court held, "[the operator of the website] could be said to expressly aim at any forum in which a user views the website" (emphasis in original). *Id.* The court concluded that such a finding would run afoul of jurisdictional and due process principles. *Id.*

Plaintiffs' allege in their FAC that "JKM[G] and Gooder's conduct aimed at and regularly taking place in the State of California also includes, but is not limited

26

to, targeting and soliciting sales of their infringing merchandise from California residents by operating interactive online stores that offer shipping to California, selling infringing merchandise in the State of California through their online stores and through Walmart.com and Amazon.com, and otherwise infringing NBCU's trademarks in the State of California." Dkt. No. 23 ¶ 8.

Plaintiffs' claims regarding Defendant Gooder are unfounded because Defendant Gooder does not have an ownership interest or any other such interest in the DUNDER MIFFLIN or DILLON FOOTBALL federally registered trademarks. JKMG is the owner of said federally registered trademarks. Defendant JKMG indemnified Defendant Gooder against actions such as the instant action and Defendant Gooder should be dismissed from this action because it is an improper party. See Talbert Decl. ¶ 15, Ex. A.

Plaintiffs' claims regarding Defendant Talbert are unfounded because, as Plaintiffs pled in the FAC, Defendant Talbert was "was at all times mentioned in this complaint an agent of the other Defendants, and in doing the things alleged in this complaint was acting in concert with and as the agent of the other Defendants." *Id.* ¶¶ 21. Plaintiffs have pled that "[a]bsent the express approval and direct participation of Kenneth Talbert, no other officer, director, or employee of Gooder or JKM has the authority to choose the marks for which to seek registration, offer new merchandise for sale...". *Id.* ¶¶ 20. Plaintiffs have pled that Defendant JKMG and Defendant Gooder are registered LLCs in the State of Delaware. *Id.* ¶¶ 17-18. Defendant Talbert was acting as an agent and in accordance with his duties as a member of JKMG and Gooder and was not the only decision maker for the companies. See Talbert Decl. ¶ 15, Ex. A. Plaintiffs have not pled sufficient facts to pierce the corporate veil under Delaware law. Defendant Talbert should be dismissed as a party to this matter because he as an individual is an improper party. This issue is addressed in more detail below.

27

Defendant JKMG (nor do the other Defendants) does not expressly target advertisements to or solicit sales of its products from the State of California. See Talbert Decl. ¶ 14.  Plaintiffs allege that Defendants operate interactive websites www.gooderdeals.com, www.goodergifts.com, and www.gooderlabs.com and sold goods comprising Defendant JKMG's federally registered trademarks through said websites.  Dkt. No. 23 ¶ 78.  Defendant Gooder operated www.goodergifts.com and www.gooderdeals.com as test sites, stopped operating them on or about 2017 and 2020 respectively.   See Talbert Decl. ¶ 10.   Defendant Gooder operated www.gooderlabs.com but never sold any goods through the website as it is an "about us" type of website and has the ability to collect payments.  See Talbert Decl. ¶ 12. Even so, Plaintiffs cannot secure jurisdiction in California based solely on the Defendants' operation of a website.  *AMA Multimedia, LLC*, 970 *et seq*.  The law is settled that a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there."  *Id.*  Even websites with greater levels of interactivity than the website at issue here, do not necessarily provide a basis for jurisdiction in a particular forum state when they do not target the forum state specifically.  *Id.*

Defendant JKMG sells its products online through multiple third-party ecommerce platforms, e.g., Amazon.com, that are accessible to any individual in the United States.  It is well known that sellers on third-party platforms cannot control where advertising is directed.  A seller simply creates a listing for an item to sell online and the third-party platform controls the rest, e.g., SEO, advertising, ranking on Google, etc.  Just as in *AMA Multimedia*, the websites that Defendant JKMG lists its products for sale on do not "expressly aim" their web activities to the State of California.  Even if purchasers were from California, as Plaintiffs allege, minimum contacts with California are not created by those sales.  If this were the case, personal jurisdiction over Defendant JKMG would be proper in every state in the United

28

States of America, and such a finding would destroy the entire public policy behind requiring minimum contacts with a forum to establish personal jurisdiction along with due process rights. *AMA Multimedia*, 970 et seq.

Unlike in *Mavrix*, Defendant JKMG's content on its third-party hosted ecommerce websites does not relate to anything specifically within the State of California. *Mavrix Photo, Inc.*, 647 at 1218. It does not comment on celebrity engagements, Hollywood-related matters, or the state of California's national parks. *Id.* Its reach to California-based consumers is incidental because California residents can access these third-party hosted ecommerce websites via the internet. Plaintiffs' claims are insufficient to show minimum contacts in the forum state.

Under the *Zippo* test, Defendant JKMG's conduct would fall under the "middle ground" category on the sliding scale. *Zippo Mfg. Co.*, 952 at 1119. Residents of California are part of the consumers that can purchase Defendant JKMG's products through the third party hosted ecommerce websites. However, Defendant JKMG does not own or operate the third-party ecommerce stores through which its products are listed. They serve as third-party marketplaces for purchasers to be able to access and buy Defendant JKMG's products, and anyone anywhere can access those websites. If, under *Zippo*, this honorable Court found that it has personal jurisdiction over Defendant JKMG, then personal jurisdiction could be exercised over Defendant JKMG by any court in the country, which would again be an unreasonable and erroneous finding. *Spokeo, Inc*, 136 at 1547.

Defendants conduct fails the first two prongs of the Ninth Circuit's three-pronged test for assessing whether the necessary relationship is present for the court to exercise personal jurisdiction over a defendant:

1) Defendants neither purposefully directed their activities toward the forum state, and

29

2) Defendants did not purposefully avail themselves of the privileges of conducting activities in the forum.

Plaintiffs' allegations that Defendants, including Defendant JKMG, intentionally engaged in forum-related activities are not grounded in facts that create minimum contacts with California. Finally, for all of the reasons stated above, exercising personal jurisdiction over the defendant, would not comport with fair play and substantial justice. It would indeed be unreasonable.

### 2. Federally Registering a Trademark Does not Create Minimum Contacts with the Forum of An Alleged Prior Common Law User

No case law exists that supports federally registering a trademark with the U.S. Patent and Trademark Office located in Alexandria, VA, would establish minimum contacts with the forum state of an alleged prior common law user.  Such a ruling would destroy the public policy behind requiring minimum contacts for establishing personal jurisdiction over a non-resident business or individual.   It would also violate due process rights, as explained above. *Spokeo, Inc.*, 136 S. Ct. *et seq.*

### 3. Settlement Negotiations Do Not Create Minimum Contacts for the Exercise of Personal Jurisdiction

Multiple jurisdictions have held that settlement negotiations and accompanying correspondence do not suffice to create sufficient contact for the exercise of personal jurisdiction.  *In re Shipowners Litigation*, 361 N.W.2d 112 (Minn.App. 1985) (citing *Washington Sci. Indus., Inc. v. Polan Indus., Inc.*, 302 F.Supp. 1354, 1358 (D.Minn. 1969). The court in *In re Shipowners* found that to allow personal jurisdiction to attach when the defendants came to the forum state at the request of the plaintiff to discuss a possible settlement of their contract difference would amount to a form of civil entrapment.  *Id.* at 115.  Other jurisdictions have

30

also held that an out of state defendant's contacts with the forum state for purposes of settlement negotiations does not amount to "purposeful availment" for purposes of finding personal jurisdiction over the defendant. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998) (Offer for a license within a cease and desist letter likened to offer of settlement, and alone, does not confer personal jurisdiction); *Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519, 524-525 (8th Cir.1996) ("courts have hesitated to use unsuccessful settlement discussions as "contacts' for jurisdictional purposes"); *Smith Architectural Metals, LLC v. Am. Railing Sys., Inc.*, 698 S.E.2d 752, 756 (Ct. App. N.C. 2010)("[I]f every offer to compromise and promote peace is used as a contact to establish personal jurisdiction in this State over the party who presents it, "many settlements would be prevented, and unnecessary litigation would be produced and prolonged.'" *Id.* (citing *Hammond Packing Co. v. Dickey*, 183 F.977, 978 (8th Cir. 1911)).

In the recent case of *Apple Inc. v. Zipit Wireless, Inc.*, Appeal No. 2021-1760 (Fed. Cir. Apr. 18, 2022), the United States Court of Appeals for the Federal Circuit stated that Zipit was subject to specific personal jurisdiction in the Northern District of California for purposes of Apple's declaratory judgment action due to minimum contact being established with the forum state on account multiple letters and claim charts being exchanged by the parties with regard to a patent infringement claim, as well Zipit physically travelling to Apple's Offices in California to discuss the infringement accusations. *Id.* Such overt contact is not present in the instant case. Defendant JKMG did not have extensive contact with NBC via communications, nor did any agents of Defendant JKMG travel to California on behalf of Defendant JKMG to discuss settlement negotiations with NBC. The present case does not present nearly the level of contact required for minimum contacts to have occured.

31

Plaintiffs allege that "[d]efendants directed communications to NBCU in California, threatening to pursue legal action and demanding that NBCU pay a substantial sum to Defendants for a transfer to NBCU of the Defendants' fraudulent registration of Universal Television's own common law DUNDER MIFFLIN mark. Dkt. 23 ¶ 4. Plaintiffs further allege that Defendants also demanded that NBCU grant them substantive rights in Universal Television's DUNDER MIFFLIN mark to which they were not entitled." *Id*. This is a gross mischaracterization of what actually transpired in the referenced communications. Additionally, the foregoing allegations raised by Plaintiffs are riddled with conclusory language and not much else. Defendants engaged in settlement negotiations that are entirely protected by FRE 408, and will therefore not address the particularities of those communications. All statements made by Defendant JKMG were for the purpose of settlement. However, Defendant JKMG made no demands or threats in those protected communications. Defendants emphatically draw attention to Plaintiffs misappropriating information shared under FRE408. Making references to the content of those protected settlement communications as Plaintiffs have done in their FAC is a direct violation of FRE 408 and an underhanded tactic to make false allegations about Defendant JKMG while knowing that such communications cannot be entered into evidence as proof of what Plaintiffs are alleging.

The settlement discussions conducted under FRE 408 do not constitute "purposeful availment" for the purposes of exercising personal jurisdiction over any of the Defendants, or the single proper defendant for this action, Defendant JKMG.

### 4. Enforcing Defendant JKMG's Federally Registered Trademarks Against Infringers on eBay and Amazon, Even if the Infringer is in California, Do Not Create Minimum Contacts Required for Personal Jurisdiction

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."

32

*Walden*, 134 at 1122. Plaintiffs allege that because Defendant JKMG enforced its federally registered and valid trademarks against a person in California, it has made minimum contacts with California, thereby availing itself to personal jurisdiction in California. The U.S. Supreme Court has ruled this cannot be so. *Id.* Defendants respectfully request that this honorable Court dismiss this action for at least lack of personal jurisdiction.

The proper jurisdiction would be a federal court in Delaware because both Plaintiffs and Defendant JKMG are registered entities in that jurisdiction.

## C.   Plaintiffs Lack Standing to Bring the Claims Contained in the First Amended Complaint

To bring an action in federal court, a plaintiff must meet two minimum thresholds: (1) he or she must have standing to bring a legal claim; and (2) his or her complaint must "state a claim to relief that is plausible on its face" containing factual allegations to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clapper v. Amnesty Int'l USA*, 133 U.S. 1138, 1155 (2013);. *Iqbal*, 556 at 678 (2009).

Plaintiffs cannot salvage jurisdiction in California by pleading barebone conclusions that Defendants "knowingly" and "fraudulently" took trademark rights away from them. Dkt. No. 23 ¶ *et seq.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to prove standing]." *Iqbal*, 556 U.S. at 678. Plaintiffs must demonstrate that Defendants committed an intentional tort, that they expressly aimed the tort at California, and that Plaintiffs suffered foreseeable injuries in the State as a result. *Calder v. Jones*, 465 U.S. 783, 789 – 90, 104.

### 1. Plaintiffs Lack Standing to be Collectively the Real Party in Interest

A trademark is a source-identifier used "to identify and distinguish … goods, including a unique product, from those manufactured or sold by others and to indicate **the** source of the goods" (emphasis added). 15 U.S.C. § 1127(a). The owner of a trademark is the person who controls the use of a mark "...with respect to the nature and quality of the goods or services on or in connection with which the mark is used..." and a wholly owned subsidiary's use of a mark can destroy trademark rights if the parent company is the named owner and not controlling the mark. *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413 (T.T.A.B. 2016). "The existence of a related company relationship between Wella U.S. and Wella A.G. is not, in itself, a basis for finding that any 'WELLA' product emanating from either of the two companies emanates from the same source." *In re Wella A.G.*, 5 USPQ2d 1359, 1361 (T.T.A.B. 1987) (emphasis in original), rev'd on other grounds, 858 F.2d 725, 8 USPQ2d 1365 (Fed. Cir. 1988).  "Besides the existence of a legal relationship, there must also be a unity of control over the use of the trademarks. 'Control' and 'source' are inextricably linked." *Id.*

Plaintiffs lack the capacity to bring this action because they, as a collective, cannot all have common law rights to the DUNDER MIFFLIN or DILLON FOOTBALL marks. A trademark is a source-identifier used "to identify and distinguish … goods, including a unique product, from those manufactured or sold by others and to indicate the source of **the** goods." 15 U.S.C. § 1127(a). (emphasis added). Plaintiffs, as a collective, plead they have common law rights to the DUNDER MIFFLIN and DILLON FOOTBALL marks. The public policy behind trademarks is to identify **the** source of the goods or services sold so consumers can identify **the** source. *Id.* (emphasis added). The bolded word "the" taken from 15

34

U.S.C. 1127(a) is significant and requires a trademark to identify a single source from where the goods/services originate.  *Id.*

Plaintiffs identify themselves as three entities: NBCUniversal Media, LLC being the parent company of Universal Television LLC and Universal Studios Licensing LLC.  Dkt. No. 23 ¶ 13-15.  Plaintiffs plead that Universal Television LLC and Universal Studios Licensing are both wholly owned subsidiaries of NBCUniversal Media Inc. *Id.* All three companies cannot have common law trademark rights to the same phrases because trademarks identify a single source. See TMEP 1201.07.  The owner of a trademark, common law or registered, is the person or entity who controls the "nature and quality of the goods or services on or in connection with which the mark is used." *Noble House Home Furnishings*, 118 at 1413. Plaintiffs have not pled, or provided any evidence, to identify which of the three entities named as Plaintiffs controls the use of the words DUNDER MIFFLIN or DILLON FOOTBALL.  Plaintiffs have pled that there is a relationship among the entities, but a relationship is not basis for determining whether a product emanates from the same source. Dkt. No. 23 ¶ 13-16; *In re Wella*, 5 at 1361. Only a person or entity that has a real interest and can be damaged by Defendant JKMG's mark has capacity to bring this action.  *Robert Doyle v. Al Johnson's Swedish Restaurant & Butik, Inc.*, 101 USPQ2d 1780, 1782 (T.T.A.B. 2012). Without Plaintiffs providing evidence that as a collective they constitute a single source, none of the Plaintiffs have the capacity to bring this action because none of them could be damaged by Defendant JKMG's federally registered trademarks.  As argued above, Plaintiffs have no common law or other trademark rights to the DUNDER MIFFLIN or DILLON FOOTBALL marks. A multi-source is incapable of owning any trademark rights because it would violate the public policy behind trademarks: to allow consumers to identify **the** (e.g., single) source of the goods/services sold in

35

commerce. *Id.* Therefore, this action brought by Plaintiffs is ripe to be, and should be, dismissed on the ground of lack of standing.

### 2. Plaintiffs Do Not Meet the Irreducible Constitutional Minimum Requirement Set Out by the Doctrine of Standing

The "irreducible constitutional minimum" for the Doctrine of Standing has three requirements. First, the plaintiff must have suffered a concrete and particularized injury in fact, which must be actual or imminent, rather than speculative. Second, the injury must be fairly traceable to the defendant's alleged conduct. Third, the injury must be likely redressable by a favorable decision by the court. *Lujan*, 504 U.S. at 560-61 (1992). These requirements must be met for each claim the plaintiff brings, and for each remedy sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). The burden of proof for establishing standing, which rests with the party seeking federal jurisdiction, must be met with adequate support at each stage of the litigation. *Lujan*, 504 U.S. at 561.

Under the element test set out in *Lujan*, (1) Plaintiffs have not suffered a particularized injury in fact because they do not retain common law trademark rights nor federal trademark rights to the DUNDER MIFFLIN and DILLON FOOTBALL trademarks combined with, as discussed above, Plaintiffs cannot collectively be the real party in interest in this case, and therefore cannot suffer from a particularized injury in fact; (2) Plaintiffs allege their purported injury has been caused by Defendant JKMG's conduct; however, since there cannot be a particularized injury in this case, then there is no injury to relate back to any alleged conduct; and (3) Plaintiffs gain nothing of value by a favorable decision in this case other than bragging rights. *Id.* They do not gain any protection by cancelling JKMG's registration because Plaintiffs applied for federal trademark protection for DUNDER MIFFLIN for services in a completely different class from the goods protected by

36

Defendant JKMG's registration. (RJN Exs. A-1, A-2) (emphasis added). Defendant JKMG has operated its business with continuous usage of its registered DUNDER MIFFLIN mark for five years and has never been confronted by Plaintiff for a trademark issue prior to receiving the Cease and Desist from NBCUniversal: ADV/NBCUniversal.  It is not clear if NBCUniversal: ADV/NBCUniversal is a party to this action or not.

Plaintiffs lack standing to bring this action and Defendants respectfully request this honorable Court dismiss this action in its entirety with prejudice.

**D.   Plaintiffs' Claims are Time Barred by the Doctrine of Laches**

The Ninth Circuit has previously held that because the Lanham Act expressly authorizes laches as a defense and does not contain a statute of limitations provision, the concerns addressed by the Supreme Court in its *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) and *SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017) decisions do not apply to Lanham Act claims. Thus, laches remains available as an equitable defense in trademark infringement and cancellation claims.

The equitable doctrine of laches serves to protect parties who may be prejudiced by the unreasonable delay of a plaintiff in making his legal claim. Laches prevents a plaintiff from unreasonably postponing the assertion of a legal claim when material conditions change, witnesses or evidence are lost, or the defendant changes his position as a result of the delay, such that allowing the claims to proceed would be unjust to the defendant.  Put simply, laches prevents plaintiffs from exercising a lack of diligence in bringing a claim.

**1.   Plaintiffs Had Constructive Notice of JKMG's Claim of Ownership of the DUNDER MIFFLIN Trademark Since its Publication and Subsequent Registration in 2017**

Plaintiffs have lacked diligence in bringing this action.  In *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, No. 17-55325 (9th Cir. 2018), Cosmetics

37

Warriors Limited ("CWL") petitioned the TTAB in 2015 to cancel Pinkette's 2010 registration of the LUSH trademark for its clothing line after CWL's LUSH trademark registration for clothing was rejected. *Id.* Pinkette sought a declaratory judgment that it did not infringe on CWL's trademark rights, or alternatively that laches barred CWL from asserting its rights against Pinkette. *Id.* After reviewing additional evidence regarding laches, the district court issued an oral decision holding that laches barred CWL's claims and entered judgment for Pinkette. *Id.* On appeal, CWL argued that laches cannot bar its claims, and relied on *Perella v. Metro-Goldwin-Mayer, Inc.* (involving the Copyright Act) and *SCA Hygiene Products*, 137 at 954 (involving the Patent Act), which held that laches could not bar infringement claims brought within the statute of limitations provided by the Copyright Act and the Patent Act. *Id.* The Ninth Circuit distinguished these cases, reasoning that the concern in those cases — laches overriding a statute of limitations — did not apply. *Id.* Finding that the laches defense could apply, the Ninth Circuit then used a two-step process to determine whether laches barred CWL's claims. *Id.*.

First, the Ninth Circuit assessed CWL's delay by looking to whether the most analogous statute of limitation had expired. If it had, then there would be a strong presumption in favor of laches. The Ninth Circuit found that there was a strong presumption in favor of laches because CWL did not bring its claim within California's four-year statute of limitations for trademark infringement claims, the most analogous state statute of limitations. Second, citing Ninth Circuit precedent in *E-Sys., Inc. v. Monitek, Inc.*, the panel also found that the equity of applying laches weighed in favor of *Pinkette*. The E-Systems factors are (1) "strength and value of trademark rights asserted"; (2) "plaintiff's diligence in enforcing mark"; (3) "harm to senior user if relief denied"; (4) "good faith ignorance by junior user"; (5) "competition between senior and junior users"; and (6) "extent of harm suffered by junior user because of senior user's delay." The Ninth Circuit stated that there was

38

no opposition to Pinkette's application, but since Pinkette's LUSH mark was registered in July 2010, the registration effectively put CWL on constructive notice of Pinkette's claim to ownership. See 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof.").  *Id.*

The Ninth Circuit found that while CWL's marks are strong, CWL was not diligent in enforcing its mark because it "should have known about its claims no later than when Pinkette's registration was issued in 2010," nearly five years before the cancellation petition was filed; that CWL would not suffer harm if the injunction was denied; that Pinkette acted in good faith; and that Pinkette was harmed by CWL's delay. *Id.*

The facts in the present case are analogous to those in *Pinkette*. In the present case, due to the Lanham Act not stating a statute of limitations for bringing infringement actions, the courts in the Ninth Circuit have historically looked to the most analogous statute of limitation. Here, that would be California's statute of limitations for bringing an action for common law trademark infringement, which has a statute of limitations of 4 years from the time that Plaintiffs knew or should have known of an alleged infringement.

Plaintiffs state in their FAC that the U.S. version of *The Office* began airing in 2005. Dkt. No. 23 ¶ 23. Plaintiffs go on to allege that "Dunder Mifflin Paper Company" was "prominently depicted in all 201 episodes of the show." *Id.* ¶¶ 26). Plaintiffs had four years from when they knew or should have known of Defendant JKMG's trademark to bring an action alleging infringement. As per *Pinkette* and 15 U.S.C. § 1072, Plaintiffs were on constructive notice of Defendant JKMG's DUNDER MIFFLIN trademark from the date it published in the USPTO's *Official Gazette*, which was April 18, 2017.  (RJN Ex. A-1).  Plaintiffs were on constructive notice of Defendant JKMG's DILLON FOOTBALL trademark from the date it

39

published in the USPTO's *Official Gazette*, which was on March 28, 2017. (RJN Ex. A-2).

Pursuant to the first step of the two-step process laid out by the Ninth Circuit in *Pinkette*, Plaintiffs did not bring their claim within California's four-year statute of limitations for trademark infringement claims, the most analogous state statute of limitations. Plaintiffs would have had to have brought this action by March 28, 2021, to assert claims to both DILLON FOOTBALL and DUNDER MIFFLIN. Plaintiffs would have had to have brought this action by April 18, 2021, to assert claims to DUNDER MIFFLIN. This honorable Court is respectfully requested to find that there is a strong presumption in favor of laches. Applying the second step of the process laid out by the Ninth Circuit in *Pinkette*, which utilizes Ninth Circuit precedent from and application of factors from *E-Systems*, Plaintiffs do not have a strong mark as they do not have common law or federal rights to the Defendant JKMG's federally registered DUNDER MIFFLIN and DILLON FOOTBALL trademarks; Plaintiffs have not been diligent in enforcing their purported mark because Plaintiffs should have known about their claims no later than when Defendant JKMG's trademark applications were first published in the USPTO's *Official Gazette*, and again when the registrations were issued for the trademarks in 2017, about five years before this action was filed by Plaintiffs; Defendant JKMG has acted in good faith; and Defendant JKMG has been harmed by Plaintiffs' delay in bringing these actions.

### 2. Plaintiffs' Unreasonable Delay in Bringing Their Action Has Unduly Prejudiced Defendants

Plaintiffs did not file their petition for cancellation for Defendant JKMG's DUNDER MIFFLIN trademark registration with the TTAB until Friday, July 1, 2022, three calendar days (including a weekend and the July 4, 2022, holiday on Monday) before the deadline for Defendant JKMG to file its Combined Declarations

40

under Section 8 & 15 of the Trademark Act. Plaintiffs waited until the very last second to act and have effectively bar Defendant JKMG from attaining incontestability with a mark it is has used properly and consistently for the past five years. Plaintiffs were put on constructive notice about both of Defendant JKMG's potential trademark registrations in 2017. (RJN Exs. A-1, A-2).

Plaintiffs' significant tardiness in asserting their alleged rights should not subsequently harm Defendants' JKMG's ability to retain its proper and appropriately obtained trademark registration for DUNDER MIFFLIN. There is a presumption that had Plaintiffs been diligent in asserting and enforcing the rights they believe they have, it would be reasonable to believe they would not have waited until the proverbial last minute to file a cancellation proceeding as well as this civil suit. Plaintiffs' actions have unduly prejudiced Defendant JKMG both in this civil suit as well as in Defendant JKMG's pursuit to obtain the incontestability status it has justly achieved over the course of the past five years.

### E. Plaintiffs Improperly Name Defendants Gooder Labs, LLC and Kenneth Talbert in Their Action

As part of their First Amended Complaint, Plaintiffs name Gooder Labs, LLC and Kenneth Talbert as Party-Defendants to the action. Under Fed. R. Civ. P. 21, "On motion or on its own, the court may at any time, on just terms, add or drop a party." *Id.*

The correct defendant and party-in-interest is JKMG. Defendant Talbert was at all times and instances of occurrence acting as an agent of JKMG, a limited liability company organized under the state laws of Delaware and is accordingly not personally liable for any alleged actions as an individual. Dkt. No. 23 ¶ 17-18; Talbert Decl. ¶ 2-3. Gooder has no ownership interest or any other such interest in the trademarks at issue in this case. Further, JKMG has indemnified Gooder against

41

these types of actions.  See Talbert Decl. ¶ 15, Ex. A.  Both Talbert and Gooder were therefore improperly joined as parties in this matter.

Given the above, Plaintiffs' naming of Talbert and Gooder as Defendants in this case is improper. If this Court decides not to grant Defendants' Motion to Dismiss, in the alternative Defendants respectfully request that Defendants Talbert and Gooder be dismissed as parties from the matter.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs have failed to state a claim for which relief can be granted, this honorable Court lacks personal jurisdiction over Defendants, Plaintiffs lack standing to bring the claims they allege, and the Plaintiffs' claims are time barred by the doctrine of laches.  Plaintiffs have failed to make a prima facie case against Defendants.  Defendants respectfully request this court to dismiss all claims alleged against Defendants with prejudice as a matter of law, and granting such other and further relief as this court deems just and proper, including awarding attorneys' fees, if appropriate, if this Motion is granted, in whole or in part. In the alternative, if this court denies Defendants' Motion to Dismiss, Defendants respectfully request that the court dismiss Defendants Gooder Labs, LLC and Kenneth Talbert as parties to this case.

42

Dated:  October 19, 2022

BRAUN IP LAW, LLC

By:  /s/Jeanette M. Braun
     Jeanette M. Braun

Pro Hac Vice Admission
IL Bar No. 6332483
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
(773) 504-4036
jmbraun@brauniplaw.com

Jordanna Thigpen
Thigpen Legal, P.C.
9595 Wilshire Blvd. Suite 961
Beverly Hills, CA 90212
310-210-7491
jt@thigpenlegal.com

Attorneys for Defendants
Jay Kennette Media Group LLC,
Gooder Labs, LLC, and
Kenneth Talbert

43