Jeanette M. Braun
Pro Hac Vice Admission
IL Bar No. 6332483
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
T: (773) 504-4036
Email: docket@brauniplaw.com

Jordanna G. Thigpen (SBN 232642)
Thigpen Legal, P.C.
9595 Wilshire Blvd. Suite 961
Beverly Hills, CA 90212
T: (310) 210-7491
F: (310) 263-0456
Email: jt@thigpenlegal.com

Attorneys for Defendants
Jay Kennette Media Group LLC,
Gooder Labs, LLC, and
Kenneth Talbert

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

NBCUniversal Media, LLC, a Delaware limited liability company; Universal Television LLC, a New York limited liability company; and Universal Studios Licensing LLC, a Delaware limited liability company,

Plaintiffs,

v.

Jay Kennette Media Group LLC, a Delaware limited liability company; Gooder Labs, LLC, a Delaware limited liability company; and Kenneth Talbert, an individual,

Defendants.

Case No. 2:22-cv-04541-SB-JPR

The Hon. Stanley Blumenfeld, Jr.

**DEFENDANTS' CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES**

**[Corrected Request for Judicial Notice and Declaration of Kenneth Talbert filed concurrently herewith]**

First Amended Complaint filed: October 05, 2022

**Hearing**
Date: November 18, 2022
Time: 8:30 a.m.
Location: Courtroom 6C

Action Filing Date: October 21, 2022

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, November 18, 2022, at 8:30 a.m. in the courtroom of the Honorable Stanley Blumenfeld, Jr., located at 350 West 1st Street, Courtroom 6C, Los Angeles, California, 90012, Defendants Jay Kennette Media Group LLC ("Defendant JKMG"), Gooder Labs, LLC ("Defendant Gooder"), and Kenneth Talbert ("Defendant Talbert") (collectively "Defendants") will and hereby move this honorable Court to dismiss Plaintiffs' NBCUniversal Media, LLC ("NBC"), Universal Television LLC (Universal TV"), and Universal Studios Licensing LLC ("Universal Licensing") (collectively "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as well as Article III of the Constitution. Defendants' Motion is brought on the grounds that Plaintiffs' FAC should be dismissed in its entirety due to Plaintiffs' failure to adequately state any such claim upon which relief could be granted, lack of personal jurisdiction by this honorable Court over the Defendants, and all claims alleged in Plaintiffs' FAC being barred under the Doctrine of Laches.

The Defendants' Motion is based upon this Corrected Notice of Motion and Motion, the accompanying Corrected Memorandum of Points and Authorities, the concurrently filed Declaration of Kenneth Talbert and Defendants' Request for Judicial Notice ("RJN") in Support of Defendants' Motion to Dismiss Plaintiffs' FAC, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 18, 2022, via videoconference, and a subsequent conference of counsel after the filing of the Plaintiffs' First Amended Complaint pursuant to L.R. 7-3, which took place on October 13, 2022, via video conference.

Defendants submit this Corrected Notice of Motion, Motion to Dismiss; Corrected Memorandum Points of Authority to correct the clerical error of uploading

2

the wrong version of the documents on October 19, 2022, (Dkt. No. 31).   It is believed no new matter has been added to the instant filing.

Dated:  October 21, 2022                     BRAUN IP LAW, LLC

                                        By:  /s/Jeanette M. Braun
                                             Jeanette M. Braun

                                             Pro Hac Vice Admission
                                             IL Bar No. 6332483
                                             Braun IP Law, LLC
                                             1600 W. Lake Street, Suite 103B
                                             Addison, IL 60101
                                             (773) 504-4036
                                             docket@brauniplaw.com

                                             Jordanna Thigpen
                                             Thigpen Legal, P.C.
                                             9595 Wilshire Blvd. Suite 961
                                             Beverly Hills, CA 90212
                                             310-210-7491
                                             jt@thigpenlegal.com

                                             Attorneys for Defendants
                                             Jay Kennette Media Group LLC,
                                             Gooder Labs, LLC, and
                                             Kenneth Talbert

3

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................7

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY.................7

III.  LEGAL STANDARD ............................................................................9

IV.  ARGUMENT ......................................................................................10

   *A.   Plaintiffs Have Failed to State a Claim for Trademark Infringement and Common Law Trademark Infringement*...........................................*10*

      1.   Plaintiffs have failed to state a claim for federal trademark infringement under the Lanham Act ............................................10

      2.   Plaintiffs have failed to state a claim for common law trademark infringement under California law.................................................18

   *B.   This Honorable Court Lacks Personal Jurisdiction Over the Defendants* 19

      1.   Defendants have not targeted advertising or content specifically towards California.........................................................................21

      2.   Federally Registering a Trademark Does not Create Minimum Contacts with the Forum of An Alleged Prior Common Law User ...........25

      3.   Settlement Negotiations Do Not Create Minimum Contacts for the Exercise of Personal Jurisdiction................................................25

      4.   Enforcing Defendant JKMG's Federally Registered Trademarks Against Infringers in California Do Not Create Minimum Contacts Required for Personal Jurisdiction............................................27

   *C.   Plaintiffs' Claims are Time Barred by the Doctrine of Laches*...............*27*

      1.   Plaintiffs Had Constructive Notice of JKMG's Claim of Ownership of the DUNDER MIFFLIN Trademark Since its Publication and Subsequent Registration in 2017 .................................................28

      2.   Plaintiffs' Unreasonable Delay in Bringing Their Action Has Unduly Prejudiced Defendants .................................................................30

   *D.   Plaintiffs Improperly Name Defendants Gooder Labs, LLC and Kenneth Talbert in Their Action*................................................................*31*

V.   CONCLUSION...................................................................................31

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

# TABLE OF AUTHORITIES

**Federal Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores*, Inc., 237 F.3d 198 (3rd Cir. 2000) ............................................................. 11

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) ................... 23, 24

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ............................................................. 21

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) ............................................................. 20

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ............................................................. 20

*Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994) ............................................................. 20

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977) ....................................................... 11, 20

*Hammond Packing Co. v. Dickey*, 183 F.977, 978 (8th Cir. 1911) ............................................................. 26

*In re Shipowners Litigation*, 361 N.W.2d 112 (Minn.App. 1985) ............................................................. 26

*Juan Pollo Fran., Inc. v. B & K Pollo Enterprises*, Inc., EDCV132010JGBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) ............................................................. 19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ....................................................... 22, 23, 25

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). ............................................................. 10

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ....................................................... 20, 21, 22

*Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, No. 17-55325 (9th Cir. 2018) ............................................................. 29

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) ............................................................. 20

*Sengoku Works Ltd. v. RMC, Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ....................................................... 12, 13

*Smith Architectural Metals, LLC v. Am. Railing Sys., Inc.*, 698 S.E.2d 752, 756 (Ct. App. N.C. 2010) ............................................................. 26

*Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ....................................................... 12, 17

*Viacom Int'l, Inc. v. IJR Capital Investments*, LLC, 891 F.3d 178 (5th Cir. 2018). ....................................................... 11, 12, 17, 18

*Washington Sci. Indus., Inc. v. Polan Indus., Inc.*, 302 F.Supp. 1354, 1358 (D.Minn. 1969) ............................................................. 26

*Wood v. Apodaca*, 375 F.Supp.2d 942, 947-48 (N.D.Cal.2005) ............................................................. 19

5

*Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995) ...............................11

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ......................................................................................... 21, 22, 25

**Federal Statutes**

15 U.S.C. § 1115(a) ...................................................................................12

**Other Authorities**

2   MCCARTHY   ON   TRADEMARKS   AND   UNFAIR COMPETITION § 16:1 (5th ed. 2022 Update)............................... 12, 16

Ornamental Refusal and How to Overcome this Refusal", United States Patent and Trademark Office - An Agency of the Department   of   Commerce   (2022), https://www.uspto.gov/trademarks/laws/ornamental-refusal-and-how-overcome-refusal (last visited Oct 18, 2022)........................14

**Federal Rules**

15 U.S.C. § 1114 .......................................................................................11

15 U.S.C. § 1125(a .....................................................................................11

Fed. R. Civ. P. 12(b)(2) ....................................................................... 8, 11, 20

Fed. R. Civ. P. 12(b)(6) ................................................................................8

Fed. R. Civ. P. 21 ......................................................................................32

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 *et seq.* (2016) .........................................26

**Regulations**

U.S. Patent & Trademark Office, U.S. Dep't of Commerce, Trademark   Manual   of   Examining   Procedure § 1201 (Jul. 2022)................................................................... 13, 14

**U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................ 10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)................................... 10, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-476 (1985) ..........................21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003)................................................................................... 18, 19

*Iancu v. Brunetti*, 139 U.S. 2294, 2297 (2019).................................................12

*Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945) .....................................................21

*Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) ........................................28

*SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 ............................................................................................29

*SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017) .......................................................................... 28, 29

*Walden v. Fiore*, 571 S. Ct. 277, 284 (2014) ............................................. 21, 28

6

**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants, by and through their attorneys, move this court to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and Article III of the Constitution. Defendants also contend that Plaintiffs' claims are barred by the Doctrine of Laches.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 18, 2016, Defendant JKMG filed its trademark application to register DUNDER MIFFLIN in class 025 for "Hoodies; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Graphic T-shirts" with a first use date of January 9, 2007.

On November 4, 2016, Defendant JKMG filed its federal trademark application to register DILLON FOOTBALL in class 025 for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Headwear; Hoodies; T-shirts; Caps; Graphic T-shirts" with a first use date of January 27, 2021.

On March 28, 2017, Defendant JKMG's DILLON FOOTBALL federal trademark application was published in the USPTO's *Official Gazette* and open for the public to oppose the registration. (Dkt. No. 23 ¶ 84; RJN Ex. A-2).

On April 18, 2017, Defendant JKMG's DUNDER MIFFLIN federal trademark application was published in the USPTO's *Official Gazette* that open for the public to oppose the registration. (Dkt. No. 23 ¶ 73; RJN Ex. A-1).

On June 13, 2017, no opposition for registration was filed by any member of the public and Defendant JKMG's trademark DILLON FOOTBALL was registered by the USPTO and published again in the USPTO's *Official Gazette*. (Dkt. No. 23 ¶ 84 RJN Ex. A-2).

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

On July 4, 2017, no opposition for registration was filed by any member of the public and Defendant JKMG's trademark DUNDER MIFFLIN was registered by the USPTO and published again in the USPTO's *Official Gazette*. (Dkt. No. 23 ¶ 73, RJN Ex. A-1).

On November 20, 2020, Plaintiff Universal TV, filed a 1(a) (in-use) trademark application for DUNDER MIFFLIN (Ser. No. 90333640) in class 041 for "Entertainment services, namely, a multimedia program series in the field of comedy accessible via mobile and global communication networks." (Dkt. No. 23 ¶ 91; RJN Ex. A-3).

On May 4, 2021, the USPTO rejected Universal TV's application Ser. No. 90333640 for four (4) reasons: 1) Section 2(d) – Likelihood of Confusion with JKMG's Mark; 2) Unacceptable Specimen of Use; 3) Identification and Classification of Goods and Services; and 4) Multi-Class Application Requirements. (Dkt. No. 23 ¶ 91; RJN Ex. A-4).

On November 4, 2021, Universal TV responded to the May 4, 2021, Office Action by arguing rejections 2, 3, and 4, above, and stating that it would address issue 1 (likelihood of confusion) at a later date. (RJN Ex. A-5)

On December 2, 2021, the USPTO issued a second rejection of Universal TV's application Ser. No. 90333640 after not finding Universal TV's arguments persuasive for three (3) of the rejections: 1) Section 2(d) –3 Likelihood of Confusion with JKMG's Mark; 2) Unacceptable Specimen of Use; and 3) NEW - Mark Differs in Drawing and Specimen. (Dkt. No. 23 ¶ 91, RJN Ex. A-6).

On or about January 2022, Defendant JKMG engaged in settlement negotiations protected under FRE 408 with NBCUniversal: ADV/NBCUniversal, the particularities of which are omitted here as per the protections afforded under FRE 408.  See Talbert Decl. ¶ 18-20.

On June 1, 2022, Plaintiff Universal TV responded to the May 4, 2021, Office Action by amending the basis for filing to 1(b) (intend to use) to set aside issues 2, and 3, above, did not provide evidence of use from its alleged first date of use of March 24, 2005, and stated it would address 1) (likelihood of confusion) at a later date. (RJN Ex. A-7)

On June 8, 2022, the USPTO issued a final rejection for one (1) reason: 1) Section 2(d) – Likelihood of Confusion with Plaintiff JKMG's federally registered DUNDER MIFFLIN mark. (Dkt. No. 23 ¶ 91; RJN Ex. A-8).

On July 1, 2022, Plaintiff Universal TV filed its Petition for Cancellation of Defendant JKMG's registered DUNDER MIFFLIN trademark, which was not indexed by the USPTO or served on JKMG until July 7, 2022. (Dkt. No. 23 ¶ 92; RJN Ex. A-9).

On July 25, 2022, Defendants waived service of Plaintiffs' Complaint filed with the United States District Court, Central District of California (Case No. 2:22-cv-04541). Dkt. Nos. 14, 15, 16.

On October 05, 2022, Plaintiffs filed their First Amended Complaint with the United States District Court, Central District of California (Case No. 2:22-cv-04541). Dkt. No. 23.

As of October 19, 2022, Plaintiffs have not filed any federal trademark applications for their claimed Friday Night Lights trademarks. *Id.* ¶¶ 50.

## III.   **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that

9

the defendant is liable for the misconduct alleged." *Id.* A plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully," but show that plausible entitlement to relief. *Id.* An entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Pursuant to Fed. R. Civ. P. 12(b)(2), a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). The plaintiff bears the burden to show that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

## IV.   **ARGUMENT**

### A.   **Plaintiffs Have Failed to State a Claim for Trademark Infringement and Common Law Trademark Infringement**

#### 1.   **Plaintiffs have failed to state a claim for federal trademark infringement under the Lanham Act**

To establish trademark infringement under the Lanham Act for either a registered mark under 15 U.S.C. § 1114, or an unregistered mark under 15 U.S.C. § 1125(a), the plaintiff must demonstrate that (1) the plaintiff has a valid and legally protectable mark; (2) the plaintiff owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000). Common law trademark rights are not automatically awarded to a fictional place, character, or other element of an entertainment entity. *Viacom Int'l, Inc. v. IJR Capital Investments, LLC*, 891 F.3d 178 (5th Cir. 2018). For common law trademark rights to be awarded to an element of an entertainment entity, the element of the entertainment entity must be used to indicate origin because the purpose of

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

trademark law is to "prevent competitors from copying a source-identifying mark." *Id.* The burden of proof in infringement and owning common law trademark rights rests with the plaintiff. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). There can be no infringement of an invalid mark." *Id.* "All common law and registration rights" rest on the use-based rule of "first-in-time, first-in-right." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:1 (5th ed. 2022 Update) (hereinafter "MCCARTHY ON TRADEMARKS"). "Registration constitutes 'prima facie evidence' of the mark's validity." *Iancu v. Brunetti*, 139 U.S. 2294, 2297 (2019) (quoting 15 U.S.C. § 1115(a)); it provides "'constructive notice of the registrant's claim of ownership,' which forecloses some defenses in infringement actions...". *Id.*. "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC, Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

Plaintiffs have the burden of proving they have common law rights to any mark and have failed to meet their burden. *Tie Tech Inc.*, 296 at 783. Plaintiffs have failed to properly plead the elements required to claim common law rights as either a prior in-commerce user or an element of an entertainment entity, which is the basis for Plaintiffs' FAC. Dkt. No. 23 *et seq.* Defendant JKMG is the owner of the federally registered trademark DUNDER MIFFLIN. Dkt. No. 23 ¶ 74 (FAC), RJN Ex. A-1. Defendant JKMG is the owner of the federally registered trademark DILLON FOOTBALL. *Id.* ¶¶ 81, 84, RJN Ex. A-2. Defendant JKMG's trademark registrations are presumed valid and Plaintiff has the burden of proving invalidity. *Iancu*, 139 U.S. at 2297. Plaintiffs do not have either mark federally registered for any goods or services. Dkt. No. 23 ¶ 94. Plaintiffs have applied for federal trademark registration for DUNDER MIFFLIN but not for any of the FNL marks

11

(e.g. DILLON FOOTBALL).  *Id.* ¶¶ 50, 91; RJN Ex. A-3.  Plaintiffs claim common law trademark rights to DUNDER MIFFLIN and FNL marks for two reasons: 1) selling merchandise that displays the mark in an ornamental fashion across the front of apparel, merchandise, products, services, and themed experiences related to the television series *The Office* (Dkt. No. 23 ¶ 94) for DUNDER MIFFLIN and selling merchandise that displays the mark in an ornamental fashion across the front of apparel for the FNL marks (*Id.* ¶¶ 50, 85); and 2) use as an element of an entertainment entity (*Id.* ¶¶ 1).

Plaintiffs have not met their burden and have failed to plead sufficient facts to support the claims summarized above.  This honorable Court can look to Plaintiffs' FAC for proof that Plaintiffs are not using either of the marks in a proper manner to have common law trademark rights for apparel, merchandise, products, services and themed experiences.  To have trademark rights, a user must use the mark so that it functions as a mark.  *Sengoku Works Ltd.*, 96 F.3d at 1219; U.S. Patent & Trademark Office, U.S. Dep't of Commerce, Trademark Manual of Examining Procedure § 1201 (Jul. 2022) [hereinafter TMEP].  The use cannot be ornamental or merely descriptive and must indicate the source of the goods or services.  *Id.*  Plaintiffs provided photographs of a t-shirt and a tote bag in their FAC as evidence of use of DUNDER MIFFLIN for merchandise.  Dkt. 23 ¶ 31.  The hang tag shown in the photos displays "THE SHOP AT NBC STUDIOS" at the top of the tag, in color, along with the NBC peacock logo.  *Id.*  A barcode is shown in the middle of the tag, and below the barcode is a color description for the product.  *Id.*  Below the color description are the words "THE OFFICE DUNDER MIFFL" and "DUNDER MIFFLIN TOTE," respectively.  *Id.*  These product tags do not evidence that Plaintiffs are using DUNDER MIFFLIN as the source of the goods.  The source identifier shown on these tags is clearly "THE SHOP AT NBC STUDIOS" emblazoned across the top of the tag with the NBC peacock logo next to the words.

12

The small print descriptors containing the words "THE OFFICE DUNDER MIFFL" (the alleged mark being truncated and not fully spelled out) and "DUNDER MIFFLIN TOTE," serve as product descriptions similar to the color description on both tags reading "navy." This area of a product tag is typically information that mirrors what would be printed on a customer's receipt and is merely descriptive of the item purchased. Even if the descriptors did rise to the level of trademark use, which they do not, the mark would be "THE OFFICE DUNDER MIFFL" brand t-shirts and the tote would be "DUNDER MIFFLIN TOTE" brand totes.

Plaintiffs provide a side-by-side comparison of their use and Defendants' alleged use of the DUNDER MIFFLIN mark. Dkt. No. 23 ¶ 79. Plaintiffs' pled use is ornamental and does not give rise to trademark rights. TMEP § 1201. The United States Patent and Trademark Office provides examples of ornamental use:

- **A quote prominently displayed across the front of a t-shirt, such as "The Pen is Mightier than the Sword."** Most purchasers would perceive the quote as a decoration, and would not think that it identifies the manufacturer of the t-shirts (the source of the t-shirts could be Hanes® or Champion®, for example, as shown by the neck-tag).
- **A logo on the front of a hat.** The logo is associated with an organization, like a sports team, which did not manufacture the hat.
- Ornamental Refusal and How to Overcome this Refusal", United States Patent and Trademark Office - An Agency of the Department of Commerce (2022), https://www.uspto.gov/trademarks/laws/ornamental-refusal-and-how-overcome-refusal (last visited Oct 18, 2022).

Plaintiffs' use of DUNDER MIFFLIN on the t-shirt, ball cap, and coffee mug is purely ornamental when compared with the list above and does not rise to use that indicates a source identifier. *Id.* Defendant JKMG's federally registered and valid trademark words DUNDER MIFFLIN are decoratively displayed across the front of Plaintiffs' merchandise, which is ornamental use, and none of the merchandise has a tag, label, or packaging to displays the words in a fashion to be a source indicator. *Id.* The source indicator on these items is "THE SHOPS AT NBC STUDIOS" and

13

not DUNDER MIFFLIN.   Plaintiffs do not have common law rights for using DUNDER MIFFLIN for merchandise because they are not using the mark as a source identifier.   Defendants could not be infringing any of Plaintiffs' trademark rights because they have none for prior in-commerce use. *Tie Tech, Inc.*, 296 at 783.

The barcodes shown in these photographs are not registered with any nationally recognized barcode databases, such as https://www.barcodelookup.com/. Searching for Plaintiffs' t-shirt code 400012142932 yielded a result for Eddie Bauer's Cabin Fleece Throw (blanket).   RJN Ex. D-1.   Searching for Plaintiffs' tote code 488881041457 yielded no results.   RJN Ex. D-2.   The lack of the bar code being registered with a national bar code database evidences that these barcodes are simply internal barcodes used by Plaintiffs within their only physical location, which is in New York, NY.   RJN Ex B-5. The tags shown are not used to sell goods nationally and can only potentially evidence Plaintiffs' sales in the state of New York.   (Defendants will assume, though not admit, that these barcodes are internal and not fabricated for the purposes of this Motion).

Plaintiffs do have an online store through which they sell THE SHOPS AT NBC STUDIOS merchandise that can be accessed through their domain https://www.theshopatnbcstudios.com/.   This website redirects a consumer to www.nbcstore.com to purchase THE SHOPS AT NBC STUDIOS brand merchandise. (RJN Exs. B-1 through B-4)   It is well settled in case law that selling online does not automatically provide national common law rights to any mark.

Nothing on Plaintiffs' www.nbcstore.com website immediately takes you to anything using the words DUNDER MIFFLIN as a brand or trademark.   From the www.nbcstore.com home page, a web user must navigate to the "shop by show" section, select "THE OFFICE," and the scroll to find relevant listings.   (RJN Ex. B-1). The products listings on www.nbcstore.com show merely ornamental use of the purported mark by splashing DUNDER MIFFLIN across the front of t-shirts,

14

1   sweatshirts, and the like.  (RJN Ex. B-2). When zooming in on the necklines of those

2   shirts, it is clear that they are branded "THE OFFICE." (RJN Ex. B-3). Plaintiffs are

3   using two different trademarks to sell merchandise having Defendant JMKG's

4   federally registered trademark emblazoned across the front of said merchandise:

5   THE SHOPS AT NBC STUDIOS and THE OFFICE.

6          According to The Wayback Machine (www.archive.org), the first capture of

7   the www.nbcstore.com THE OFFICE collection of products webpage that sells

8   merchandise was in 2020.  (RJN Ex. C).  The archival tool found nothing prior to

9   2020. It is hard to believe that The Wayback Machine would not have captured an

10  image of Plaintiffs' website prior to 2020 if they were selling THE OFFICE

11  collection merchandise at least as early as 2007.  Without providing evidence that

12  Plaintiffs were "first in time," they cannot be "first in right." MCARTHY ON

13  TRADEMARKS.  Defendant JKMG is first in time, first in right, and owns federal

14  registrations to said marks.

15         If Plaintiffs were using DUNDER MIFFLIN as the trademark for the

16  merchandise, the collection would be named DUNDER MIFFLIN and not THE

17  OFFICE.  There is no information in the public record or in Plaintiffs' FAC that

18  supports their claim of trademark common law rights that predates Defendants

19  JKMG's first date of use of January 09, 2007, sworn to in its original DUNDER

20  MIFFLIN trademark application under penalty of perjury.  It is plainly obvious that

21  Plaintiffs' common law marks are THE SHOPS AT NBC STUDIOS and THE

22  OFFICE, and not DUNDER MIFFLIN, for said merchandise as can be seen in their

23  FAC.

24         Plaintiffs' FAC contains the same deficiencies for their common law

25  trademark claims for the FNL marks.  Plaintiffs provide pictures of use of their

26  alleged FNL marks and a side-by-side comparison of their use with Defendants' use.

27  Dkt. No. 23 ¶ 51-53, 86.  In the photos, the words DILLON PANTHERS and EAST

28

15

DILLON FOOTBALL are displayed across the front of the t-shirt in an ornamental fashion and not in any way that rises to the level of a source indicator for the goods.

Finally, under the third element required to show trademark infringement under the Lanham Act, there can be no likelihood of confusion caused by Defendant JKMG's use of its own DUNDER MIFFLIN and DILLON FOOTBALL registered marks with Plaintiffs alleged common law rights for sales in commerce.  Plaintiffs are not using the marks as a source identifier and have no common law rights to it.  There is no likelihood of confusion when there is no infringement.  There is no infringement because Plaintiffs have no common law trademark rights to the DUNDER MIFFLIN or FNL marks.

Turning to using the marks as a source identifier based on it allegedly being an element of an entertainment entity, Plaintiffs have failed to establish proper use for this type of common law trademark right as well.

Common law trademark rights are not automatically awarded to a fictional place, character, or other element of an entertainment entity.  *Viacom Int'l, Inc.*, 891 at 178.  For common law trademark rights to be awarded to an element of an entertainment entity, the element of the entertainment entity must be used to indicate origin because the purpose of trademark law is to "prevent competitors from copying a source-identifying mark."  *Id.*  The burden of proof in infringement and owning common law trademark rights rests with the plaintiff.  *Tie Tech, Inc.*, 296 at 783 (9th Cir. 2002).

Plaintiffs allege that the "Dunder Mifflin name and stylized logo are recurring features of the sets, props, and wardrobe used in the show and appear in every episode of *The Office* as illustrated below" and then provide a chart comprising stills from the show and Season and Episode information. Dkt. No. 23 ¶ 20.  The chart does not comprise stills from every episode of the show.  For instance, the chart only contains stills from Season 1, Episodes 3 and 5.  Stills from Season 1, Episodes 1, 2,

16

and 4 are missing.  The still provided for Season 1, Episode 5, and Season 3 Episode 13 do not comprise a legible display of the words DUNDER MIFFLIN.  The stills provided for Season 2, Episode 9 and 20, Season 6, Episode 11, and more, do not display the words DUNDER MIFFLIN in their entirety and therefore cannot function as use of the mark. To obtain trademark rights to an element of an entertainment entity, the element must be "regularly" featured. *Viacom Int'l, Inc.*, 891 at 178.  If an element occasionally appears, even in a successful television series, "the indication-of-origin requirement may not be met." *Id.*  Plaintiffs have not met their burden of showing that any DUNDER MIFFLIN element that exists in its *The Office* series appears enough times in a manner that indicates DUNDER MIFFLIN is origin of a specific product or service.  *Id.* The stills illustrate that the words are used in almost a subliminal manner, being hidden by people and things on the set, being in a small font, etc.  Plaintiffs also failed to provide the number of minutes or hours the words are displayed compared to the total airtime of the show, or provide consumer surveys, as Viacom had to do to prove it achieved a common law trademark to *Krusty Krab. Id. et seq*. Plaintiffs do not have a common law trademark right to the words DUNDER MIFFLIN as an element of an entertainment entity.

Plaintiffs claim Defendants' federally registered trademarks have created a false designation of origin.  *Id.* ¶¶ 6.  Plaintiffs assert that the words DUNDER MIFFLIN originated from a UK TV show, and that Plaintiffs acquired the rights to the show in the US. *Id.* ¶¶ 22-23.  Plaintiffs assert that this is the origin of the words and therefore their alleged common law element of an entertainment entity trademark rights.  *Id. et seq.* "The phrase 'origin of goods' in the Lanham Act is incapable of connoting the person or entity that originated the ideas that 'goods' embody or contain."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003).  In *Dastar Corp.,* the U.S. Supreme Court held that "[t]he consumer typically does not care about such origination, and § 43(a) should not be stretched

17

to cover matters that are of no consequence to purchasers." *Id.* at 38.  Even if it is true that the words DUNDER MIFFLIN originated in the UK based on a show, and Plaintiffs purchased the right to that show in the US, this does not afford them any trademark rights because of where the name originated.  Justice Scalia ruled that "[b]ecause we conclude that Dastar was the 'origin' of the products it sold as its own, respondents cannot prevail on their Lanham Act claim." *Id.*  Defendants respectfully request that this honorable Court also find that Plaintiffs cannot prevail on their Lanham Act claim.

### 2. Plaintiffs have failed to state a claim for common law trademark infringement under California law

To state a claim of trademark infringement under California common law, a plaintiff need allege only (1) their prior use of the trademark, and (2) the likelihood of the infringing mark being confused with their mark.  *Wood v. Apodaca*, 375 F.Supp.2d 942, 947-48 (N.D.Cal.2005). See also, *Juan Pollo Fran., Inc. v. B & K Pollo Enterprises*, Inc., EDCV132010JGBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) .

As stated above, Plaintiffs fail to properly allege their prior use of their purported trademark by providing pictures of non-use in their FAC.  Dkt. N. 23 ¶ 31, 51-53.  Plaintiffs have also failed to provide sufficient proof of likelihood of confusion between JKMG's registered DUNDER MIFFLIN and DILLON FOOTBALL brands and Plaintiffs' purported trademark.

Plaintiffs have not met their burden for stating a prima facie case of either federal trademark infringement under the Lanham Act or common law trademark infringement under the laws of California.  Plaintiffs have not pled sufficient facts to show they have common law rights to the words DUNDER MIFFLIN or DILLION FOOTBALL for actual use in commerce or an element of an

18

1   entertainment entity.  Defendant JKMG owns federal trademark registrations for
2   both marks an those registrations are presumed valid.  For the foregoing reasons, this
3   action should be dismissed for failure to state a claim upon which relief can be
4   granted.

**B.   This Honorable Court Lacks Personal Jurisdiction Over the Defendants**

7       A defendant can raise lack of personal jurisdiction as a defense by motion.
8   Fed. R. Civ. P. (12)(b)(2).  "Although the defendant is the moving party on a motion
9   to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of
10  establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d
11  1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary hearing, the plaintiff
12  need only make 'a prima facie showing of jurisdictional facts to withstand the
13  motion to dismiss.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,
14  1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th
15  Cir. 2006)).  A court may consider the pleadings and any declarations submitted by
16  the parties when deciding a motion to dismiss for lack of personal jurisdiction.  *Data
17  Disc. Inc.*, 557 at 1285.  Courts typically examine whether such jurisdiction satisfies
18  the 'requirements of the applicable state long-arm statute' and 'comport[s] with
19  federal due process when determining if it has personal jurisdiction over a
20  nonresident defendant.  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th
21  Cir. 2011) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir.
22  1994)).  "Because California permits the exercise of personal jurisdiction to the full
23  extent permitted by due process, [courts] need only determine whether jurisdiction
24  over [a defendant] comports with due process."  *Id.* (internal quotations omitted).
25  "For due process to be satisfied, a defendant, if not present in the forum, must have
26  'minimum contacts' with the forum state such that the assertion of jurisdiction 'does

27
28
19

1   not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*,

2   453 F.3d at 1155 (quoting *Int'l Shoe Co. v. State of Wash.*, *Office of Unemp't Comp.*

3   *& Placement*, 326 U.S. 310, 316 (1945)).

4        To exercise jurisdiction over out-of-state defendants, courts typically must

5   have specific jurisdiction, or "case-linked" jurisdiction, which requires a

6   "relationship among the defendant, the forum, and the litigation" that arises out of

7   contacts that the "defendant himself creates with the forum." *Walden v. Fiore*, 571

8   S. Ct. 277, 284 (2014).  A court can exercise specific jurisdiction only when "the

9   defendant's suit-related conduct . . . create[s] a substantial connection with the forum

10  State." *Id.*  The Ninth Circuit applies a three-pronged test for assessing whether the

11  necessary relationship is present: (1) "the defendant must either purposefully direct

12  his activities toward the forum or purposefully avail himself of the privileges of

13  conducting activities in the forum"; (2) "the claim must be one which arises out of

14  or relates to the defendant's forum-related activities"; and (3) "the exercise of

15  jurisdiction must comport with fair play and substantial justice, i.e. it must be

16  reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th

17  Cir. 2017); see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-476 (1985).

18       Before the Supreme Court of the United States articulated the foregoing

19  jurisdictional framework in *Walden*, courts analyzing jurisdiction over website

20  operators typically used an "interactivity" test that considers the degree of interaction

21  between a website and its users.  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.

22  Supp. 1119 (W.D. Pa. 1997).  The *Zippo* court held that, where a website does

23  business over the internet or contracts with residents of a foreign jurisdiction, the

24  exercise of jurisdiction over the website is proper.  *Id.* at 1124.  By contrast, the

25  *Zippo* court held that "passive" websites, or those that merely post information that

26  is accessible to out-of-forum viewers, are not subject to jurisdiction in the forums in

27  which users access them. *Zippo Mfg. Co.*, 952 at 1119.  For websites in the "middle

28

20

ground," or those where users can exchange information with the host computer, the court examined "the level of interactivity and commercial nature of the exchange of information" that occurs on the site to determine whether exercising jurisdiction would be proper. *Id.*

Plaintiffs plead that none of the Defendants are located in California.  Dkt. No. 23 ¶ 17-19.  Therefore, Defendants must have made minimum contact with California for this honorable Court to have personal jurisdiction over them. *Pebble Beach*, 453 F.3d at 1155.  Defendants have not made the required minimum contacts with California for this honorable Court to have personal jurisdiction over them.

Plaintiffs allege Defendants' conduct targeted California when they engaged in: 1) selling products comprising Defendant JKMG's registered mark on-line through Walmart.com and Amazon.com, which are third party ecommerce platforms (*Id.* ¶¶ 8); 2) Defendant JKMG registering trademarks for DUNDER MIFFLIN and DILLON FOOTBALL with the United States Patent Office (*Id.* ¶¶ 9); 3) settlement negotiations with NBCUniversal: ADV/NBCUniversal, the only named party in a Cease and Desist received by only Defendant JKMG (*Id.*); and 4) enforcing Defendant JKMG's federally registered trademarks against infringers on Ebay and Amazon, and at least one infringer is allegedly based in California (*Id.*).

None of the conduct alleged by Plaintiffs and summarized above, or any of Defendants' conduct creates minimum contacts with California.  Plaintiffs have not established a prima facie case that Defendants purposefully availed themselves of the privilege of conducing activities in California.

### 1.   Defendants have not targeted advertising or content specifically towards California

In the *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), the court concluded that an out-of-state website operator, Brand Technologies, was subject to personal jurisdiction in California where it managed a

21

website devoted to celebrity gossip. *Id.* The court held that Brand Technologies "expressly aimed" its conduct at the forum because the website contained "a specific focus on the California-centered celebrity and entertainment industries." *Id.* at 1230. By contrast, in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), a case in which the court held that it could not exercise jurisdiction over a foreign website operator, the court stated that "the market for adult content is global," as evidenced by the fact that 80% of the viewers of the website at issue were outside the United States. *Id.*

The website in *AMA Multimedia* did not maintain a specific focus on the United States, the court concluded, it did not "expressly aim" its web activities there. *Id.* Additionally, the court ruled that finding jurisdiction based on location-based advertising would result in the website operator being subject to jurisdiction anywhere its site was accessible. *Id.* The court explained that such targeting meant that "[the operator of the website's] geo-located advertisements...are always directed at the forum"(emphasis in original). *Id.* "If such geo-located advertisements constituted express aiming," the court held, "[the operator of the website] could be said to expressly aim at any forum in which a user views the website" (emphasis in original). *Id.* The court concluded that such a finding would run afoul of jurisdictional and due process principles. *Id.*

Plaintiffs' allege in their FAC that "JKM[G] and Gooder's conduct aimed at and regularly taking place in the State of California also includes, but is not limited to, targeting and soliciting sales of their infringing merchandise from California residents by operating interactive online stores that offer shipping to California, selling infringing merchandise in the State of California through their online stores and through Walmart.com and Amazon.com, and otherwise infringing NBCU's trademarks in the State of California." Dkt. No. 23 ¶ 8.

22

1   Defendant JKMG (nor do the other Defendants) does not expressly target
2   advertisements to or solicit sales of its products from the State of California. See
3   Talbert Decl. ¶ 14.  Plaintiffs allege that Defendants operate interactive websites
4   www.gooderdeals.com, www.goodergifts.com, and www.gooderlabs.com and sold
5   goods comprising Defendant JKMG's federally registered trademarks through said
6   websites.  Dkt. No. 23 ¶ 78.  Defendant Gooder operated www.goodergifts.com and
7   www.gooderdeals.com as test sites, stopped operating them on or about 2017 and
8   2020 respectively.    See Talbert Decl. ¶ 10.    Defendant Gooder operated
9   www.gooderlabs.com but never sold any goods through the website as it is an "about
10  us" type of website and has the ability to collect payments.  See Talbert Decl. ¶ 12.
11  Even so, Plaintiffs cannot secure jurisdiction in California based solely on the
12  Defendants' operation of a website.  *AMA Multimedia, LLC*, 970 *et seq*.  The law is
13  settled that a defendant does not have sufficient minimum contacts with a forum
14  state just because its website is accessible there."  *Id.*  Even websites with greater
15  levels of interactivity than the website at issue here, do not provide a basis for
16  jurisdiction in a particular state when they do not target the state specifically.  *Id.*

17  Defendant JKMG sells its products online through multiple third-party
18  ecommerce platforms, e.g., Amazon.com, that are accessible to any individual in the
19  United States.  Just as in *AMA Multimedia*, the websites that Defendant JKMG lists
20  its products for sale on do not "expressly aim" their web activities to California.
21  Even if purchasers were from California, minimum contacts with California are not
22  created by those sales.  If this were the case, personal jurisdiction over Defendant
23  JKMG would be proper in every state in the United States, and such a finding would
24  destroy the entire public policy behind requiring minimum contacts with a forum to
25  establish personal jurisdiction along with due process rights.  *AMA Multimedia*, 970
26  et seq.

27
28
23

Unlike in *Mavrix*, Defendant JKMG's content on its third-party hosted ecommerce websites does not relate to anything specifically within the State of California. *Mavrix Photo, Inc.*, 647 at 1218. It does not comment on celebrity engagements, Hollywood-related matters, or the state of California's national parks. *Id.* Its reach to California-based consumers is incidental because California residents can access these third-party hosted ecommerce websites via the internet. Plaintiffs' claims are insufficient to show minimum contacts in the forum state.

Under the *Zippo* test, Defendant JKMG's conduct would fall under the "middle ground" category on the sliding scale. *Zippo Mfg. Co.*, 952 at 1119. Residents of California are part of the consumers that can purchase Defendant JKMG's products through the third party hosted ecommerce websites. However, Defendant JKMG does not own or operate the third-party ecommerce stores through which its products are listed. They serve as third-party marketplaces for purchasers to be able to access and buy Defendant JKMG's products, and anyone anywhere can access those websites.

Defendants conduct fails the first two prongs of the Ninth Circuit's three-pronged test for assessing whether the necessary relationship is present for the court to exercise personal jurisdiction over a defendant: 1) Defendants neither purposefully directed their activities toward the forum state, and 2) Defendants did not purposefully avail themselves of the privileges of conducting activities in the forum.

Plaintiffs' allegations that Defendants, including Defendant JKMG, intentionally engaged in forum-related activities are not grounded in facts that create minimum contacts with California. Exercising personal jurisdiction over the defendant, would not comport with fair play and substantial justice.

24

### 2. Federally Registering a Trademark Does not Create Minimum Contacts with the Forum of An Alleged Prior Common Law User

No case law exists that supports federally registering a trademark with the U.S. Patent and Trademark Office located in Alexandria, VA, would establish minimum contacts with the forum state of an alleged prior common law user. Such a ruling would destroy the public policy behind requiring minimum contacts for establishing personal jurisdiction over a non-resident business or individual. It would also violate due process rights, as explained above. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 *et seq.* (2016).

### 3. Settlement Negotiations Do Not Create Minimum Contacts for the Exercise of Personal Jurisdiction

Multiple jurisdictions have held that settlement negotiations and accompanying correspondence do not suffice to create sufficient contact for the exercise of personal jurisdiction. *In re Shipowners Litigation*, 361 N.W.2d 112 (Minn.App. 1985) (citing *Washington Sci. Indus., Inc. v. Polan Indus., Inc.*, 302 F.Supp. 1354, 1358 (D.Minn. 1969). The court in *In re Shipowners* found that to allow personal jurisdiction to attach when the defendants came to the forum state at the request of the plaintiff to discuss a possible settlement of their contract difference would amount to a form of civil entrapment. *Id.* at 115; *Smith Architectural Metals, LLC v. Am. Railing Sys., Inc.*, 698 S.E.2d 752, 756 (Ct. App. N.C. 2010) ("[I]f every offer to compromise and promote peace is used as a contact to establish personal jurisdiction in this State over the party who presents it, "many settlements would be prevented, and unnecessary litigation would be produced and prolonged."" *Id.* (citing *Hammond Packing Co. v. Dickey*, 183 F.977, 978 (8th Cir. 1911)).

In the recent case of *Apple Inc. v. Zipit Wireless, Inc.*, Appeal No. 2021-1760 (Fed. Cir. Apr. 18, 2022, Zipit was subject to specific personal jurisdiction in the

25

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

Northern District of California for purposes of Apple's declaratory judgment action due to minimum contact being established with the forum state on account multiple letters and claim charts being exchanged by the parties with regard to a patent infringement claim, as well Zipit physically travelling to Apple's Offices in California to discuss the infringement accusations. *Id.* Such overt contact is not present in the instant case. Defendant JKMG did not have extensive contact with NBC via communications, nor did any agents of Defendant JKMG travel to California on behalf of Defendant JKMG to discuss settlement negotiations with NBC.

Plaintiffs allege that "[d]efendants directed communications to NBCU in California, threatening to pursue legal action and demanding that NBCU pay a substantial sum to Defendants for a transfer to NBCU of the Defendants' fraudulent registration of Universal Television's own common law DUNDER MIFFLIN mark. Dkt. 23 ¶ 4. Plaintiffs further allege that Defendants also "demanded that NBC grant them substantive rights in Universal Television's DUNDER MIFFLIN mark to which they were not entitled." *Id.* This is a gross mischaracterization of what actually transpired in the referenced communications. Additionally, the foregoing allegations raised by Plaintiffs are riddled with conclusory language and not much else. Defendants engaged in settlement negotiations that are entirely protected by FRE 408, and will therefore not address the particularities of those communications. All statements made by Defendant JKMG were for the purpose of settlement. However, Defendant JKMG made no demands or threats in those protected communications. Defendants emphatically draw attention to Plaintiffs misappropriating information shared under FRE408. Making references to the content of those protected settlement communications is a direct violation of FRE 408 and an underhanded tactic to make false allegations about Defendant JKMG

26

while knowing that such communications cannot be entered into evidence as proof of what Plaintiffs are alleging.

The settlement discussions conducted under FRE 408 do not constitute "purposeful availment" for the purposes of exercising personal jurisdiction over the Defendants.

### 4. Enforcing Defendant JKMG's Federally Registered Trademarks Against Infringers in California Do Not Create Minimum Contacts Required for Personal Jurisdiction

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 at 1122. Plaintiffs allege that because Defendant JKMG enforced its federally registered and valid trademarks against a person in California, it has made minimum contacts with California, thereby availing itself to personal jurisdiction in California. The U.S. Supreme Court has ruled this cannot be so. *Id.* Defendants respectfully request that this honorable Court dismiss this action for at least lack of personal jurisdiction. The proper jurisdiction would be a federal court in Delaware because both Plaintiffs and Defendant JKMG are registered entities in that jurisdiction.

### C. Plaintiffs' Claims are Time Barred by the Doctrine of Laches

The Ninth Circuit has held that because the Lanham Act expressly authorizes laches as a defense and does not contain a statute of limitations provision, the concerns addressed by the Supreme Court in its *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) and *SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017) decisions do not apply to Lanham Act claims. Thus, laches remains available as an equitable defense in trademark infringement and cancellation claims.

27

The equitable doctrine of laches serves to protect parties who may be prejudiced by the unreasonable delay of a plaintiff in making his legal claim. Laches prevents a plaintiff from unreasonably postponing the assertion of a legal claim when material conditions change, witnesses or evidence are lost, or the defendant changes his position as a result of the delay, such that allowing the claims to proceed would be unjust to the defendant.  Put simply, laches prevents laintiffs from exercising a lack of diligence in bringing a claim.

### 1. Plaintiffs Had Constructive Notice of JKMG's Claim of Ownership of the DUNDER MIFFLIN Trademark Since its Publication and Subsequent Registration in 2017

Plaintiffs have lacked diligence in bringing this action.  In *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, No. 17-55325 (9th Cir. 2018), Cosmetics Warriors Limited ("CWL") petitioned the TTAB in 2015 to cancel Pinkette's 2010 registration of the LUSH trademark for its clothing line after CWL's LUSH trademark registration for clothing was rejected.  *Id.*  After reviewing additional evidence regarding laches, the district court issued an oral decision holding that laches barred CWL's claims and entered judgment for Pinkette.  *Id.*  On appeal, CWL argued that laches cannot bar its claims, and relied on *Perella v. Metro-Goldwin-Mayer, Inc.* (involving the Copyright Act) and *SCA Hygiene Products*, 137 at 954 (involving the Patent Act), which held that laches could not bar infringement claims brought within the statute of limitations provided by the Copyright Act and the Patent Act.  *Id.*  The Ninth Circuit distinguished these cases, reasoning that the concern in those cases — laches overriding a statute of limitations — did not apply. *Id.*

First, the Ninth Circuit assessed CWL's delay by looking to whether the most analogous statute of limitation had expired. If it had, then there would be a strong presumption in favor of laches. The Ninth Circuit found that there was a strong presumption in favor of laches because CWL did not bring its claim within

28

California's four-year statute of limitations for trademark infringement claims, the most analogous state statute of limitations. Second, citing Ninth Circuit precedent in *E-Sys., Inc. v. Monitek, Inc.*, the panel also found that the equity of applying laches weighed in favor of *Pinkette*. The E-Systems factors are (1) "strength and value of trademark rights asserted"; (2) "plaintiff's diligence in enforcing mark"; (3) "harm to senior user if relief denied"; (4) "good faith ignorance by junior user"; (5) "competition between senior and junior users"; and (6) "extent of harm suffered by junior user because of senior user's delay." The Ninth Circuit stated that since Pinkette's LUSH mark was registered in July 2010, the registration effectively put CWL on constructive notice of Pinkette's claim to ownership. See 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof."). *Id.*

The facts in the present case are analogous to those in *Pinkette*. In the present case, due to the Lanham Act not stating a statute of limitations for bringing infringement actions, the courts in the Ninth Circuit have historically looked to the most analogous statute of limitation. Here, that would be California's statute of limitations: 4 years from the time that Plaintiffs knew or should have known of an alleged infringement. As per *Pinkette* and 15 U.S.C. § 1072, Plaintiffs were on constructive notice of both of Defendants' JKMG's registered trademarks from the date it published in the USPTO's *Official Gazette*, which was in 2017. (RJN Ex. A-1-A-2). Plaintiffs would have had to have brought this action by 2021, to assert claims to both DILLON FOOTBALL and DUNDER MIFFLIN.

Pursuant to the first step of the two-step process laid out in *Pinkette*, Plaintiffs did not bring their claim within California's four-year statute of limitations for trademark infringement claims, the most analogous state statute of limitations.

Applying the second step of the process laid out in *Pinkette*, which utilizes Ninth Circuit precedent from and application of factors from *E-Systems*, Plaintiffs

29

do not have a strong mark as they do not have common law or federal rights to the Defendant JKMG's federally registered DUNDER MIFFLIN and DILLON FOOTBALL trademarks; Plaintiffs have not been diligent in enforcing their purported mark because Plaintiffs should have known about their claims no later than when Defendant JKMG's trademarks were issued for the trademarks in 2017, about five years before this action was filed by Plaintiffs; Defendant JKMG has acted in good faith; and Defendant JKMG has been harmed by Plaintiffs' delay in bringing these actions.

### 2. Plaintiffs' Unreasonable Delay in Bringing Their Action Has Unduly Prejudiced Defendants

Plaintiffs did not file their petition for cancellation for Defendant JKMG's DUNDER MIFFLIN trademark registration with the TTAB until Friday, July 1, 2022, three calendar days (including a weekend and the July 4, 2022, holiday on Monday) before the deadline for Defendant JKMG to file its Combined Declarations under Section 8 & 15 of the Trademark Act. Plaintiffs waited until the very last second to act and have effectively bar Defendant JKMG from attaining incontestability with a mark it is has used properly and consistently for the past five years.  Plaintiffs were put on constructive notice about both of Defendant JKMG's trademark registrations in 2017. (RJN Exs. A-1, A-2).

Plaintiffs' significant tardiness in asserting their alleged rights should not subsequently harm Defendants' JKMG's ability to retain its proper and appropriately obtained trademark registration for DUNDER MIFFLIN. Had Plaintiffs been diligent in asserting and enforcing the rights they believe they have, it would be reasonable to believe they would not have waited until the proverbial last minute to file a cancellation proceeding. Plaintiffs' actions have unduly prejudiced Defendant JKMG both in this civil suit as well as in Defendant JKMG's pursuit to obtain the incontestability status it has justly achieved over the course of the past five years.

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

### D.   Plaintiffs Improperly Name Defendants Gooder Labs, LLC and Kenneth Talbert in Their Action

Plaintiffs name Gooder Labs, LLC and Kenneth Talbert as Party-Defendants to the action. Under Fed. R. Civ. P. 21, "On motion or on its own, the court may at any time, on just terms, add or drop a party." *Id.*

The correct defendant and party-in-interest is JKMG.  Defendant Talbert was at all times and instances of occurrence acting as an agent of JKMG, a limited liability company organized under the state laws of Delaware and is accordingly not personally liable for any alleged actions as an individual.  Dkt. No. 23 ¶ 17-18; Talbert Decl. ¶ 2-3.  Gooder has no ownership interest or any other such interest in the trademarks at issue in this case.  Further, JKMG indemnified Gooder against these types of actions.  See Talbert Decl. ¶ 15, Ex. A.  Both Talbert and Gooder were therefore improperly joined as parties in this matter.

If this Court decides not to grant Defendants' Motion to Dismiss, in the alternative, Defendants respectfully request that Defendants Talbert and Gooder be dismissed as parties from the matter.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs have failed to state a claim for which relief can be granted, this honorable Court lacks personal jurisdiction over Defendants, and the Plaintiffs' claims are time barred by the doctrine of laches. Plaintiffs have failed to make a prima facie case against Defendants.  Defendants respectfully request this court to dismiss all claims alleged against Defendants with prejudice as a matter of law, and granting such other and further relief as this court deems just and proper, including awarding attorneys' fees, if appropriate, if this Motion is granted, in whole or in part. In the alternative, if this court denies Defendants' Motion to Dismiss, Defendants respectfully request that the court dismiss Defendants Gooder Labs, LLC and Kenneth Talbert as parties to this case.

31

Dated:  October 21, 2022

BRAUN IP LAW, LLC

By:  /s/Jeanette M. Braun
Jeanette M. Braun

Pro Hac Vice Admission
IL Bar No. 6332483
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
(773) 504-4036
jmbraun@brauniplaw.com

Jordanna Thigpen
Thigpen Legal, P.C.
9595 Wilshire Blvd. Suite 961
Beverly Hills, CA 90212
310-210-7491
jt@thigpenlegal.com

Attorneys for Defendants
Jay Kennette Media Group LLC,
Gooder Labs, LLC, and
Kenneth Talbert

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR

CERTIFICATION

I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated:  October 21, 2022                    BRAUN IP LAW, LLC

                                    By:  /s/Jeanette M. Braun
                                         Jeanette M. Braun

                                         Pro Hac Vice Admission
                                         IL Bar No. 6332483
                                         Braun IP Law, LLC
                                         1600 W. Lake Street, Suite 103B
                                         Addison, IL 60101
                                         (773) 504-4036
                                         jmbraun@brauniplaw.com

                                         Jordanna Thigpen
                                         Thigpen Legal, P.C.
                                         9595 Wilshire Blvd. Suite 961
                                         Beverly Hills, CA 90212
                                         310-210-7491
                                         jt@thigpenlegal.com

                                         Attorneys for Defendants
                                         Jay Kennette Media Group LLC,
                                         Gooder Labs, LLC, and
                                         Kenneth Talbert

CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS; CORRECTED AMENDED
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-04541-SB-JPR