# EXHIBIT A

for Declaration of Kenneth Talbert

# JAY KENNETTE MEDIA GROUP, LLC

A Delaware Limited Liability Company

## LICENSING AGREEMENT
### Contract: #14458 Gooder Labs

**THIS AGREEMENT** is made on **March 30, 2018** by and between **Jay Kennette Media Group, LLC**, having its principal place of business at 16192 Coastal Highway, Lewes, DE 19958 (hereinafter "**Licensor**") with **Gooder Labs LLC**, having its principal place of business at 1348 Milligan hwy, Johnson City, TN 37601, USA in (hereinafter "**Licensee**"), for the purpose of licensing the following Image(s) and Brand(s), whose copyrights and trademarks belong to the Licensor, for use as outlined herein.

1.  **IMAGES**: The following Images by the Licensor(s) listed are hereby licensed, on an **Exclusive image basis**, according to the terms and conditions as set forth below.

    **Licensor's Image**
    See attached Schedule A

    **TRADEMARKS:** The following Trademarks by the Licensor(s) listed are hereby licensed, on an **Exclusive usage basis**, according to the terms and conditions as set forth below.

    | Trademark | USPTO Registration Number | Registration Certificate |
    |---|---|---|
    | Dunder Mifflin | 5235217 | See attached Schedule B |

    Licensee must inform Licensor, in writing, of any changes or modifications to the titles of the artist images as referenced above.

2.  **LICENSED PRODUCT**: This Agreement explicitly covers the adaptation of the above original Image(s) and Trademark(s) to the following product category (hereinafter "Licensed Product") as well as gives the Licensee implicit rights to any reproductions in any other product medium upon approval by Licensor.

    **Licensed Product**
    Ceramic tile murals, graphic prints, calendars, coffee cups, car tags, mouse pads, dye sublimation t-shirts, puzzles, wallets, purses, backpacks, tote bags, dye sublimation heat transfers, key chains, coasters, phone cases, business card holders, compact makeup mirrors, clocks, pillowcases, towels, car seat covers

3.  **TERM**: This **ten-year** Agreement is effective from the date above written and shall expire on **December 31, 2028** (hereinafter "Term"). Licensee may renew this Agreement, for an identical term, by written notice and agreement by both parties, due prior to the end of the initial Term. After the Agreement has expired, Licensee may sell off any remaining inventory of Licensed Product for a period of six (6) months subject to the continuing obligation to pay royalties and provide royalty statements as provided herein.

4.  **PAYMENT:** (a) Licensee agrees to pay Licensor a royalty equal to five percent (5%) of Licensee's net sales from the sale of each Licensed Product. "Net Sales" shall be defined as gross sales less quantity discounts and returns and separately listed applicable taxes and shipping and handling costs. No deductions from any royalty payable by Licensee shall be made for uncollectible accounts or for other costs of any kind. **Upon execution of this Agreement, Licensee agrees to pay to Licensor a non-refundable advance payment equal to $500, which will be credited against future royalties.** All advance and royalty payments are to be paid in United States Dollars. Royalty payments shall be payable by Licensee within thirty (30) days following the end of each calendar quarter. All rights under this Agreement shall become effective only upon full execution of the Agreement and payment of advance monies. **Licensee further agrees to pay any applicable Bank and Wire Transfer Fees.**

**(b)** Licensee agrees to pay Licensor a one and one-half percent (1.5%) finance charge per month on any delinquent payments. Payments will be deemed delinquent if Licensor does not receive payments within 15 days of when payment is due.

**5.    PERIODIC STATEMENTS**: Promptly on the 30th day following the end of each calendar quarter, Licensee shall furnish to Licensor complete and accurate statements, certified to be accurate by Licensee, or if a corporation, by an officer of Licensee, showing the number, description and gross sales price, itemized deductions from gross sales price, and net sales price of each Licensed Product distributed and/or sold by Licensee during the preceding calendar quarter together with any returns made during the preceding calendar quarter. Such statements shall be furnished to Licensor whether or not any of the Licensed Products have been sold during the calendar quarter in which such statements are due. Receipt or acceptance by Licensor of any of the statements furnished pursuant to this Agreement or any sums paid hereunder shall not preclude Licensor from questioning the correctness thereof at any time, and in the event that any inconsistencies or mistakes are discovered in such statements or payments, they shall immediately be rectified and the appropriate payments made by Licensee.

**6.    TERRITORY**: Licensor grants Licensee rights to the Image(s) and Trademark(s), for the Licensed Product, for the Term of this Agreement only in the following territories: **United States of America**

**7.    COPYRIGHT / TRADEMARK**: (a) Licensee must place one of the following notices of Licensor on each Licensed Product: "**© Jay Kennette Media Group, LLC**" and/or "**®Jay Kennette Media Group, LLC**". In the event the Licensed Product is marketed in any packaging bearing the Image(s) or Trademark(s), where practical to do so, the appropriate notice shall also appear on said packaging. This requirement is not valid if technical limitations of the printing medium prevent appropriate display of the notice. Failure of Licensor to enforce this provision shall not be deemed a waiver of Licensor's rights nor a release of Licensee's obligations. Licensee will not take any action that would alienate the copyright or trademark of Licensor.

**(b)** Licensor grants to Licensee the right to use Licensor's name and demographic information in connection with the creation, reproduction, promotion and sales of Licensed Product.

**(c)** Nothing contained in this Agreement will be construed as an assignment or grant to Licensee of any right, title or interest in or to the Image(s), Trademark(s), or any intellectual property rights therein, it being understood that all rights relating thereto are reserved by Licensor except for the license granted hereunder and then only as specifically and expressly provided in this Agreement. The Licensee agrees that at the time of termination, or expiration of this Agreement, The Licensee will assign, transfer and convey to the Licensor all rights granted to the Licensee hereunder.

**8.    CREATIVE APPROVALS**: Licensee agrees to produce the Licensed Product(s) according to its current quality standards, and Licensor has the right to verify that these standards are met. Licensor will have final quality and creative approval of all Licensed Product, promotional or advertising materials, packaging, hangtags, labels and any other materials prepared in connection with Licensed Product. Licensee agrees to submit samples, mock ups or jpegs thereof for approval by Licensor prior to their manufacture and sale by Licensee.

**9.    RIGHT TO AUDIT**: Licensee agrees to keep full and accurate books of accounts relating to the manufacture and sale of Licensed Product under this Agreement. Licensor, by its duly appointed agent, shall have the right to examine such books during normal business hours and upon not less than five (5) days prior written notice. Should a discrepancy of greater than five percent (5%) be discovered, Licensee shall reimburse Licensor for the cost of such examination. Should there be a discrepancy of greater than ten percent (10%), Licensor will have the right to terminate this Agreement in addition to all other rights and remedies contained herein or available at law.

**10.    TERMINATION**: (a) Licensee will manufacture, promote and distribute all Licensed Product throughout the Term of this Agreement. If Licensee fails to do so, Licensor may terminate this Agreement on sixty (60) days advance notice.

**(b)** In the event of a material breach of any of the provisions of this Agreement by the Licensee, and said material breach is not cured within thirty (30) days of notice thereof, or in the event a petition for the relief under Bankruptcy Code is

filed by the Licensee, or the Licensee becomes insolvent or is otherwise unable to fulfill its obligations under this Agreement, the Licensor may terminate this Agreement and the Licensee will immediately discontinue all new creation and promotion of the Licensed Product. Neither the Licensee nor its receivers, representatives, trustees, agents, administrators, successors and/or assigns will have any right to sell, exploit or in any way deal with or deal in the Licensed Product, or any carton, packaging or wrapping material, advertising, promotional or display material pertaining to the Licensed Product.

(c) In the event the License granted hereunder is terminated, in accordance with the provisions of Article 10(a) or (b), all payments not yet paid to Licensor will become immediately due and payable to Licensor.

11. **SAMPLES:** Licensee shall provide to Licensor, at no charge, 1 of each Licensed Product.

12. **RIGHT TO PURCHASE:** Licensor shall have the right, subject to availability, to purchase the Licensed Product directly from Licensee at an amount equal to Licensee's distributor pricing. No royalties will be paid on such purchases or on any samples provided at no charge.

13. **INDEMNIFICATION:** Licensee shall be liable for, and indemnify and hold harmless Licensor, from any losses, damages, claims and expenses arising out of a breach of any obligation or representation of this Agreement by the Licensee, or any liability related to the manufacturing, sales, consumer use or purchases of the Licensed Product. To the extent that the Licensor seeks enforcement of this Agreement, or otherwise seeks recovery of damages or other legal remedy (in equity or at law) due to Licensee's breach of this Agreement, the Licensee shall be liable for payment of any and all reasonable legal fees, costs and expenses incurred by the Licensor as a result of pursuing such activities. The Licensee may be required to provide proof of a current product liability insurance policy to Licensor upon execution of this Agreement, and must notify Licensor if the policy expires or changes. If the Licensee brings an action or proceeding against any third person for wrongful use of the Licensor's name, likeness, or Images, or any misappropriation matter, or unfair competition related hereto, the Licensor will assist the Licensee in any manner reasonably requested in any such action or proceeding. The expenses for such action or proceeding will be borne exclusively by the Licensee and any recovery shall be retained by Licensee. Licensor shall indemnify, defend and hold harmless Licensee from and against any and all liability and damages, attorney's fees and out of pocket expenses from any allegations, claims, litigation, or other actions against Licensee arising directly or indirectly from a breach or alleged breach of Licensor's representations and warranties.

14. **REPRESENTATIONS AND WARRANTIES:** As licensing agent, the Licensor hereby warrants and represents to the Licensee that it has the legal right to license the Images to the Licensee for their reproduction on the Licensed Product. Licensor warrants and represents to the Licensee that all Images and Trademarks licensed to the Licensee hereunder were created by the Licensor and are exclusively owned by the Licensor who holds all rights, title and interest in and to such Images and Trademarks, including, without limitation, all intellectual property rights associated therewith.

15. **MISCELLANEOUS:** (a) All notices shall be given in writing sent by Certified U. S. Mail, Postage Prepaid, Return Receipt Requested, to the addresses indicated herein below. The delivery by any party to the other of a telecopy of facsimile signature to this Agreement, or any notice hereunder, shall have the same effect as the delivery or an original signature; provided, however, that the party thereafter shall promptly deliver an original signature page to the other (although any failure or delay in the delivery of an original signature shall not vitiate or impair the legally binding effect of a telecopy or facsimile signature).

(b) In the event that any of the provisions of this Agreement are deemed to be invalid or unenforceable, to the extent that there are no resulting material changes in the economic benefits of the parties under this Agreement, the same shall be deemed severable from the remainder of this Agreement and shall not cause the invalidity or unenforceability of this Agreement. If such provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of, or the scope or breadth, permitted by law.

(c) This Agreement will bind and inure to the benefit of the parties, their legal representatives and successors in interest. The Licensee will not have the right to assign this Agreement and will at all times continue to be obligated to the

Licensor for the performance of services hereunder. The Licensor may transfer or assign this Agreement and the rights and obligations contained herein.

(d) Any controversy, claim or dispute arising out of or in relation to this Agreement, or the breach thereof, will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any arbitration hearing shall be held in a place approximately equidistant between the parties and any arbitration award may subsequently be files in a court of appropriate jurisdiction for enforcement. No provision of this licensing Agreement is to be interpreted for or against any party because that party, or such party's legal representative, drafted such provision.

(e) This Agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged in this Agreement. No representations, oral or otherwise, express or implied, other than those contained herein, have been made by any party.

(f) Facsimile signatures and signatures sent via portable document format (PDF) shall be considered as effective as an original document. If a Facsimile or PDF File is utilized, the entire document must be included in the transmission.

16. **JURISDICTION:** This Agreement shall be governed and construed according to the laws of the State of Delaware. Except as required by Law, or upon agreement between both the Licensor and Licensee, both parties hereby agree to keep confidential the terms of this Agreement and this obligation will survive the terms of this Agreement. This Agreement is not binding unless signed by an officer or other authorized member of both Licensor and Licensee.

### ACKNOWLEDGMENT OF ARBITRATION

The undersigned understands that this Agreement contains an agreement to arbitrate. After signing this document, the parties understand that they will not be able to bring a lawsuit concerning any dispute that may arise which is covered by the arbitration agreement, unless it involves a question of constitutional or civil rights. Instead, the parties agree to submit any such dispute to an impartial arbitrator.

IN WITNESS WHEREOF, the undersigned hereby understand and agree to all points as outlined in this binding contract:

**LICENSOR:**
Jay Kennette Media Group, LLC
16192 Coastal Highway
Lewes, DE 19958
By: Coleson Wilson
_____ Date: 3-30-2018
Authorized Representative

**LICENSEE:**
Gooder Labs LLC
1348 Milligan hwy
Johnson City, TN 37601
By: Kenneth Talbert
_____ Date: 3/30/2018
Authorized Representative

# Schedule A

# DUNDER MIFFLIN, INC PAPER COMPANY

**Schedule B**

# United States of America
### United States Patent and Trademark Office

# Dunder Mifflin

| | |
|---|---|
| **Reg. No. 5,235,217** | JAY KENNETTE MEDIA GROUP LLC (DELAWARE LIMITED LIABILITY COMPANY) |
| **Registered Jul. 04, 2017** | 16192 COASTAL HIGHWAY |
| | JKMG LLC |
| **Int. Cl.: 25** | LEWES, DE 19958 |
| **Trademark** | CLASS 25: Hoodies; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Graphic T-shirts |
| **Principal Register** | FIRST USE 1-9-2007; IN COMMERCE 1-9-2007 |
| | THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR |
| | SER. NO. 87-076,381, FILED 06-18-2016 |
| | ELLEN J PERKINS, EXAMINING ATTORNEY |



Joseph Matal

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office